# United States

# For the Southern District Court of Florida

MIAMI-DADE, FLORIDA

Janvier Villars

On behalf of Property Owners Wanting Equal Rights

PETITIONERS/Appellants

vs.

EX-Directors: Mr. Shaul Michael, Mr. Walter Restrepo, Ms. Norma Torres, Mr. Yuri Zamoshchik, Ms. Magda Pineda, Ms. Mariluce De Souza, Mr. Osvaldo Fructuoso, Mr. Aleksejs Nikitins and Ms. Flor Garuz. Plus Attorneys conspiring with Katzman Chandler P.A., Mr. Leigh Katzman, Mr. Justin Smith, Ms. Mary Ann Chandler, Mr. Ramon Abadin, Mr. Russell Landy, Damian & Valori LLP., and their CONSPIRATORS. et. al.

**In Re:** Illegal Representation of Buckley Towers Condominium in Case: 2021-017383-CA-01

RESPONDENTS/Appellees

→ EMERGENCY ←

## PETITION FOR WRIT OF PROHIBITION

Pursuant to 42 USC §1983, 42 USC §1985, 28 USC § 2106,

Under FedR.CivPro 60(d)(1)&(3) and 60(b), FRAP 8, and 5 U.S. Code § 706,

28 USC §1331, §1335(b), §1343, U.S. Const. Art.I, Art.III, and the 14th Amendment.

**NOTICE IS GIVEN** that Mr. Janvier Villars, Petitioner/Appellant, and on behalf of Property Owners Wanting Equal Rights over their privacy, association, and their private property, plea the Southern District Federal Court for an emergency relief.

# APPENDIX

|  | Page |
|---|---|
| **Brief Petition for Prohibition Cover Page** | 1 |
| **Appendix** | |
| I. The Issue | 1 |
| II. Introduction | 1 |
| III. Jurisdiction - Under 5 USC Sec. 706 | 3 |
| IV. Legal Argument - For judge disqualification | 4 |
| V. The Extraordinary Circumstances and Facts | 4 |
| VI. Judicial Discretion for Tabling and Mooting To Deprive Liberty and Property without Due Process | 7 |
| VII. Free to Manipulate Law through Docket and Doctrines | 9 |
| VIII. Miscarriage of Law - Under Rule 12(b)(4),(5),(6) & (7) | 12 |
| IX. To Coerce on POWER - Involuntary Servitude and Peonage | |
| X. Which begs from this court for De Novo Review | 16 |
| XI. A Plea for Equitable Justice | 17 |
| THE THREE QUESTIONS OF LAW | 18 |
| Mr. Villars Plea on behalf of his community | 19 |
| Affidavit Declaration of Good Faith and Honesty | 19 |
| The Reasoning for this Emergency Motion | 19 |
| **Table of Authorities** | 24 |
| **Appendix of Exhibits of pertaining motions and orders** | 27 |
| **Memorandum of Laws [references only]** | |

## I.  THE ISSUE

CAUSE by the trial judge proceeding without Jurisdiction and after being disqualified. For abusing the court discretion and doctrines. Obstructing Due Process. By disregarding civil procedures. Denying discovery and hearings. Denying adjudication on any merit that contradicts his decisions. Thereby, impeding the petitioners from appealing them.  As can it be observed by reviewing the docket. (Appx_X1)

The petitioners plead for an emergency disposition for this Writ of Prohibition. Because of an upcoming Court hearing of June 21, 2022.(Appx_X1b) Intended to further displace Mr. Villars and the 500+ Adverse Parties[1] in an unduly and perpetual  irreparable harm.  At ushering a permanent Constitutional deprivation through a court controlled Association board elections and thereby a puppet board of directors.

## II. INTRODUCTION

The petition of Writ of Prohibition originates from the nonfinal orders in a frivolous suit. Where the trial court Judge Carlos Guzman ('Judge') in collusion with Respondents' attorneys Katzman Chandler, P.A.('KC') collaborated in this swindle receivership. Knowingly the court lacked Jurisdiction, it lacked injury-in-fact, lawful right to represent Buckley Towers Association as plaintiff, and proof of imminent danger or

---

[1] "When dealing with a preliminary injunction [complaint], the **'adverse party'** means the party adversely affected by the injunction, not the opponent in the underlying action." _Parker v. Ryan_, 960 F.2d 543, 545 (5th Cir.1992). **Fed.R.Civ.Pro. 1.620 "(a) Notice.** The provisions of rule 1.610 [Injunctions] as to notice shall apply to applications for the appointment of receivers." The Enterprise failed to 1.610 (1)(B) certify to have made efforts to notify all adverse parties or why it was not needed. Rather 1.610 (2) didn't afford Reasonable Notice to all Adverse Parties.

fraud. Nonetheless, rushing the immediate deprivation of privacy, property rights, immunities and interests of a private homestead association and its membership.

Through a lawsuit filed by board Ex-Directors and Katzman Chandler P.A, ('the Enterprise'). <u>Unlawfully</u> representing Buckley Towers ('Association'). Originally pleading for a preliminary injunction against Mr. Villars alone.  But, just 22 hours before the first hearing (Appx_X2), they Subsequently Plead for Receivership → against ALL of the 500+ private homeowners. Depriving all Adverse Parties/ 500+ owners of 30-days Notice, Service of Process, and right to contest the merits in court, before and after ordering this Receivership against their homesteads.

Directly conflicting with Fla.Rule Fed.R.Civ.Pro. 1.620 On Receivership "(a) Notice. The provisions of rule 1.610 [Injunctions] as to notice shall apply to applications for the appointment of receivers." Rule 1.610 (2)(C) Scope "shall be binding on the parties to the action, and on those persons <u>in active concert or participation</u> with them <u>who receive actual notice of the injunction</u>."

Yet procuring this Order for Involuntary Servitude, shy of 24 hours after filing the motion. By the Judge suppressing FS90.105, FS90.201, Rule 1.140(b) and litigation. To avoid addressing the detrimental facts. Here proven to leave the Court without Jurisdiction.

> "Whenever a delay in an administrative adjudication significantly or deliberately interferes with a party's capacity to prepare or to present his case, the right to due process is violated." _Gillette v. New York State Liquor Authority_, 149 A.D.2d 927 (N.Y. App. Div. 4th Dep't 1989).
>
> Yet, here repeatedly proven as a typical "[p]attern or practice and based on the same legal theory." _Ault v. Walt Disney World Co_., 692 F.3d 1212, 1216 (11th Cir. 2012).

Later, the Judge collaborated with his Court's Receiver, Mr. Abadin. In securing a

Stay Order. To further Moot Mr. Villars' pleas for litigation against the Enterprise's original

and receivership claims. As well as to deny his pleas for discovery, hearings and reliefs.

So, when Mr. Villars civilly challenged this illegal taking; by exercising his 1st

Amendment Rights, the Judge Judicially SLAPP[2] him with a Contempt Order -Sanctions.

Permanently prohibiting all owners from petitioning, assembling, or mitigating the harm.

---

"Furthermore, the federal court holds jurisdiction where immunities under [42 U.S.C.] sec. 1983
on the claims against circuit court judges is a question of law."
*Bennet* v. *Parker*, 898 F.2d 1530, 1532(11th Cir. 1990)."
Because "The judicial Power [of the United States] shall extend to all Cases, in Law and Equity,
arising under this Constitution [and] the Laws of the United States…" U.S. Const. Art.III §2.
 "We review questions of constitutional law de novo."

### III.  JURISDICTION Under 5 U.S. Code § 706

This court has jurisdiction to issue writ of Prohibition under Art. V Sec. 3(b)(4) of the
Florida Constitution, to "issue writs of prohibition to courts and commissions in causes
within the jurisdiction of the supreme court to review."
Pursuant to Fed.Rule Appellate Procedure 9.130(3)(D) To terminate Receivership.
 *Kentner v. City of Sanibel*, 750 F.3d 1274, 1278 (11th Cir. 2014), cert. denied, 135 S.Ct. 950
 (2015). **"Fraud that prevents the functioning of the judicial process does not have to be**

---

[2] See Appx_X3. Conflicting with Florida Art. V, §21 - Prohibiting Agency Deference:  "The
new amendment [to the Florida Constitution] helps level the playing field between the
government and its citizens and similarly reaffirms Chief Justice John Marshall's later
proclamation in Marbury v. Madison that it is "emphatically the province and duty of the
judicial department to say what the law is."      Article titled: The Demise Of Agency
Deference. By the Florida Bar Journal Vol. 94, No. 1  January/February 2020.

brought within any specific period of time." <u>Hazel-atlas Glass Co.</u> v. <u>Hartford-Empire</u> Co., 322 U.S. 238, 64 S.C. 997, 88 L.Ed. 1250(1944); <u>DeClaire</u> v. <u>Yohanan,</u> 453 So.2d 375(Fla. 1984).

## IV.  LEGAL ARGUMENT
### <u>On the Disqualification of a biased Judge</u>  (Appx_X4)
In addition to the sworn oaths, affidavits of fear of unfair trial.

"The test for determining the legal sufficiency of a motion for disqualification is whether the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial." <u>Brofman v. Florida Hearing Care Center, Inc.</u>, 703 So. 2d 1191, 1192 (Fla.4th DCA 1997); accord, <u>Michaud-Berger v. Hurley</u>, 607 So. 2d 441, 446 (Fla. 4th DCA 1992) (a party seeking to disqualify a judge need only to show a "well-founded fear of prejudice on the party of the trial judge")

**Rule 2.160 of the Florida rules of Judicial Administration** provides that "[t]the judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency for the motion and shall not pass on the truth of the facts alleged. IF the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. IF any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall take issue with the motion."

"[i]f a judge's comment could "reasonably be interpreted" to reflect a bias or prejudice against a party, disqualification is mandatory." <u>Sholtz v. Houser</u>, 657 So.2d 950, 951 (Fla. 5th DCA 1995) (circumstantial evidence of prejudice or bias is sufficient to require disqualification, even if there is an equally cogent contrary explanation).

## V.  The EXTRAORDINARY CIRCUMSTANCES AND FACTS

The Enterprise originally filed the suit to enjoin (Appx_X4b), <u>as an individual</u>, the Six-month-in-elected President, Mr. Villars. Based on false debt claims, for not sharing his president/ chief officer powers with the then vice-presidents, and for *administration fraud -*

4

altho lacking of particularity pleading. So to strip him of his Director insurance defense, to harm his clean reputation, but covertly, to deter the membership participation in court.

But, for well over a month, BEFORE that first hearing, this Enterprise had been extorting Mr. Villars. Slandering him and threatening him. To have him surrender his Presidency to them. So, when that failed, they retaliated. Interrupting all Association operations. Illegally claiming authority over the Association. Then, replacing him from President in Miami Official Records. To have the bank freeze the Association's accounts.

The Wrongful-Conduct Rule "bars a claim if a plaintiff must rely on his or her own illegal conduct for recovery, [and] stems from the sound public policy that 'courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct.'" *Varela v Spanski*, 329 Mich App 58, 81 (2019), quoting *Orzel v Scott Drug Co*, 449 Mich 550, 559 (1995).

Thus, Intentionally causing irreparable harm. At sabotaging the Association operations and commercial relations. Intended to have the Association Owners and their renters (1500 residents) suffer, from the lack of upkeep and cleaning, without night security, pest control services, and elevator maintenance.  So the Enterprise can then use that harm, to justify their last-minute Subsequent Pleading for a Receivership.

"When determining whether an action is malicious, the Court need not look only to the complaint before it, but may also look to the [Respondents] prior litigious conduct." *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996)

Which they procured, within 24 hours of filing their Motion. By depriving ALL Property Owners Wanting Equal Rights (POWER), of a full and fair Due Process.  With the help of the Judge. First, by disregarding the Enterprise's Wrongful actions. Then accepting as true the Enterprise (previously proven false) claims; while denying Mr. Villars litigation

5

of those claims. Then by discarding the Insufficiency of Process and the Required Joinder of all Indispensable Parties. Reasonably foreseeable to cause, on the UNnotified Indispensable Parties, constitutional harms. Thus carelessly forcing this class to incur double and otherwise inconsistent financial obligations. Despite Rule 19 clearly states *"(A) in that person's absence, the court **cannot** accord complete relief among existing parties."* Thus intentionally impeding Due Process on 500+ citizens. *See* Rule 60(d)(2)and 60(d)(3).

Therefore, the Judge took over these private entities' privacy and liberties SOLELY based on the 'court's broad discretion', in 'equity powers', as 'Sound Decision,' in 'good faith' and of course, 'for the best interests of the association' Judicial Doctrines.

Even after, Mr. Villars' evidence, recorded four days before the first hearing, was proven undisputable. As a matter of fact and law. As it certified the Ex-Directors never had legal standing or injury-in-fact. Committed fraud on the Court, at unlawfully representing the Association as 'Plaintiff'. And extrinsic fraud, at misrepresenting the Kaufman Supra Equitable Estoppel (Appx_X6), because it voids all their claims. Including the EX-directors' "Authority Controversy" claim.  Leaving the Judge without jurisdiction over the Association and Mr. Villars → Ab initio. Pleaded as of 10/21 to Set Aside (Appx_X6b)

"The requirement that jurisdiction be established as a threshold matter... is 'inflexible and without exception'"*Mansfield, C.L.M.R. Co v. Swan*, 111 U.S. 379, 382 (1884)); for "[j]urisidiction is power to declare the law," and "[w]ithout jurisdiction the court cannot proceed at all in any case,'" 523 U.S., at 94 (quoting *Ex Parte McCardle*, 7 wall, 506, 514 (1869)). Personal jurisdiction, too, is "an essential element of the jurisdiction of a district---court," without which the court is "powerless to proceed in an adjudication." *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937) Fed.Rule Civ.Proc. 12(h)(3) "Whenever it appears... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

**Thus, the Order for Contempt against Mr. Villars → Enforced on Every Owner.**

For him upholding his dignity against this State's seizure. For civilly challenging the overbreadth Receivership order. (App_X7) By exercising his 'guaranteed' 1st Amendment Rights. As necessary to mitigate the prejudicial financial hardship imposed on POWER.

"In the context of the Fourth Amendment, a seizure of property occurs whenever there is "some meaningful interference with an individual's possessory interest in that property."
*Sodal v. Cook County*, 506 U.S. 56, 61 (1992)

"[Where] Even an indirect infringement on associational rights is impermissible and subject to the closest scrutiny." Id.; *Healy v. James*, 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972).

## VI.  Judicial - DISCRETION for Tabling and Mooting Litigation: To Deprive Liberty and Property without Due Process - Judicially

This case began on July 16, 2021. - For Injunctive Relief - But the Judge immediately 'tabled' the litigation of Mr. Villars merits. To immediately afford the Enterprise last minute plea relief for Receivership. Using the Judge 'inherit broad discretion'.

"[when] evidence has been suppressed, concealed, or falsified" is a claim of intrinsic fraud"
*Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1546., *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634    "In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause." *Fair v. Tampa Electric Co*., 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946) as stated in Black's Law Dictionary 595 (rev. 5th ed. 1979).

Where, instead of permitting, a preliminary evidentiary hearing, or mandate for an Arbitration; the Judge imposed a permanent confiscatory and oppressive order. On the whole community. Using his court 'discretion' to deny the pleaded Equitable Declaratory relief.  Judicially avoiding the Enterprise's claims of authority, privileges and rights (as

7

EX-directors[3]) from being addressed prudently, pursuant FS 86.011. Moreover, refusing to allow the Board Treasurer and the remaining five directors, still qualified and within their right, to hold the authority over the Association during the proceedings. Available adequate remedies that are congruent with laws and bylaws - unlike this Receivership.

Rather, the Judge decided to impose an UNconsented conveyance Receivership Order.  Followed up with a second Order appointment. Taxing even more[4] the Adverse parties.  While placing a Stay (gag) Order. (Appx_X8) Depriving them of their right of a court hearing. Barring litigation on the merits or on the intentions for this receivership.

"A violation of the due process guarantee of notice and opportunity to be heard renders a judgment void." _Curbelo v. Ulman_ 571 So.2d 445 (Fla. 1990); _Ryan's Furniture Exch., Inc. v. McNair_, 120 Fla.109, So 483, 487 (1993); _Shields_, 528 So.2d at 968; _Niki Unlimited v. Servers of Greater Miam_i, 483 So.2d 46, 48 (Fla.3rd DCA 1986).

Mr. Villars has continuously exhausted pleadings for adjudication with his 29 filed motions: e.g. Show Cause (ECF86 ), For DJ on the Receivership Order (ECF 90) ... → Pleads that remain UNCONTESTED- avoiding adjudication. Despite Rule 55(a).

"Where [trial] court obstinately refuses to adjudicate a matter properly before it, a court of appeal may issue the writ to correct 'unauthorized action of the court obstructing the appeal'. _Will v Calvert Fire Ins. Co._  437 U.S. 655, 666-67, 98 S.Ct. 2552, 57 L.Ed. 504 (1978)

---

[3] See Appx_8b.  The Association covenant- three absentees to board meetings in a year automatic disqualification clause.  A restrictive covenant on the 17 board directors. For intentional breach of fiduciary duties to the Association. Absentees recorded in Zoom board meeting video and minutes.
[4] On Oct. 8, 2021- The Judge also denied post-deprivation Due Process. At ordering, a second Receiver- Mr. Abadin. Without allowing Proper Notification or participation in Court. While imposing on POWER an additional $600 per hour Receiver fee. That is, an additional taxation of $900 + $650+$550 p/hr. legal fees. A significant unduly financial impact.

## **VII.  FREE TO MANIPULATE LAW THRU THE DOCKET AND DOCTRINES**

Judge Guzman, advocating through his court Receiver, chose to deprive the Association and POWER of proper due process. (A) By treating his Receivership Swindle as an immediate Issue Preclusion. (B) Then Refusing to comply with Rule FS 90.201 Judicial Notice, on statutory Laws and the Stare Decisis. (C) To deprive Mr. Villars of his absolute defenses. Afforded under the Association Equitable Estoppel, the Kaufman, Supra. (D) To afford the Enterprise their plead Receivership/ Sanctuary. To protect them from having to defend their false claims. While the Judge affords their pleaded removal of Mr. Villars.

(E)Then having the Enterprise and his Receiver chant over every hearing "the judge has made his decision."  So to avoid being recorded denying Mr. Villars pleas in court.

(F) Furthermore, suppressing established state laws. At disregarding laches under FS 718.112(2)(d)(4)(c) "challenge to the election process must be commenced within 60 days." Because it voids the Enterprise's elections claim. To disqualify Mr. Villars as the elected President. A claim also not supported in the bylaws.

(G)Whereby granting the Stay. The Judge condoned his Receiver's concealment of material facts; which proves wrong their rushed Receivership. Including the illegal representation of the Association, lack of injury-in-fact and lack of cause of action.

(H) Deceitful strategies, collaborated with Katzman Chandler P.A.. (I) **Ulteriorly. To preclude** the litigation of the Enterprise's false claims. (J) So his Receiver, Mr. Abadin

9

can reassert those → exact false claims  as his legal facts of 'Good Cause.'  To Justify their plea Order of Stay[5].

(K) An order justified with the 'tabled' merits. Which Mr. Villars was precluded from proving false, thus precluding him from challenging the 'neutral' Receiver's  "Good Cause".  (L) Thus barring him from proving the Receiver's claims to be in Bad Faith, absolutely false and in conspiracy. (M) So the Judge could agree with his Receiver at claiming, "the Receiver[ship] has mooted the underlying [authority] dispute"

(N) Rather in Overt furtherance of fraud. Hence neither of the parties had filed for an appeal on that Non-Final Order. Nor was there any other court case adjudicating the material issues, to preempt this gag order.  - Ulteriorly - to moot their  misrepresentation of 'Authority Dispute.'    Which remains the usurpation of the Association from Mr. Villars. The duly elected Board President and Chief Officer of the Association.

(Ñ) All While this Court Receiver failed to provide the Court with Statutory Matter Jurisdiction. At Reporting the Association was never in any actual risk of irreparable harm, at risk of life or loss of property, diminution of value, embezzlement or being defrauded by Mr. Villars. (O) Thus, proving the Court lacked authority to intrude in the Association private matters and in POWER's privacy and personal property interests.

---

[5] Fed. R.Civ.Pro 62(c) Stay Of An Injunction, Receivership. Order. "Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction or receivership."

(P) Where after six months of this **Unwarranted Seizure**. Mr. Abadin **Searched and** couldn't find nor Report (Appx_X11) any clear or imminent debatable or speculative public disaster, that only with their Receivership or state intervention could be avoided. (Q) To Justify their illegal taking of privacy, of this nonprofit corporation. (R) Thus, unreasonably placing a Substantial Negative Economic Impact on the Association membership. (S) While the Judge provides the Enterprise with a judicial Sanctuary.

(T) Concluding with the Judicial SLAPP[6] -Sanction Contempt Order. (U)Prohibiting ALL owners from opposing this involuntary Servitude. (V) Ordering Mr. Villars' to close his international commercial website powerinunion.com. To impede him from assisting property owners, who reside in other states and countries, exercise their right to protect their investments in Florida or to plead for government grievances. (W) Depriving of their liberty, to be democratically represented in their Association, by their elected president.

(X) Yet, more significant is that, this Court Contempt Order serves to further oppress and intimidate this Class into a subclass. (Y) UNDESERVING of their vested privileges, immunities under the 1st Amendment Right. Prohibited from contesting this intrusion on their Privacy and Personal Property. (Z) Coercing POWER to surrender to this seizure. - Judicially Depriving of all remedies at law. See 42 U.S.C. §1983 and §1985.

---

[6] **S**trategic **L**awsuits **A**gainst **P**ublic **P**articipation FS 718.1224 "[p]rotected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." "[a]bstention is generally inappropriate when First Amendment rights are at stake"; _Citizens United v. FEC_, 558 U.S. 310, 340 (2010)

### VIII.  A TRUE MISCARRIAGE OF JUSTICE. See Rule 12(b)(4),(5),(6) & (7)
**With a Receivership - Made possible - only  through a conspired-court swindle.**

By the Judge '**tabling**' the litigation of the Merits.  Then, by  judicially inducing a Receivership 'for the best interest of the Association.' Dissuading, any challenge against it, in the hearing. By contending, to be only "*temporary, for 45-60 days*" "*To get a Receiver Report*" for the Court.  But, after that first hearing, with Katzman Chandler P.A. ('KC'), bait and switch it to an  "<u>Adjudicated Order</u>" → for as long as the Judge arbitrarily decides.

Ruled, after "*considered the evidence submitted, and being otherwise fully advised on the premises*" on the Merits that the Enterprise couldn't prevail against. So deliberately accepting the Enterprise last minute switch. Disregarding their insufficient process, and Service of Process, Want of causation, and to join indispensable parties. To afford the relief that the Judge enjoys 'broad discretion' and was determined to afford - immediately.

**To Impose it as an Issue Preclusion of detrimental reliance.**  To deny all discovery or hearings of material evidence that contradicts this Receivership. Afoul FS 90.501. "[n]o person in a legal proceeding has a privilege to(2)Refuse to disclose any matter."

**SO, Knowing of wanting of Causation, Legal Standing, or Subject Matter Jurisdiction Judge Guzman Divested** and penalized innocent Common persons. Proving the Judge was determined, as an adversary of Mr. Villars, to immediately and permanently deprive him of his privacy, property interests, privileges, immunities. *See* 28 USC §1343.

"Malice denotes that condition of mind manifested by intentionally doing a wrongful act without just cause or excuse." <u>*State v. Burlison*</u>, 255 Neb. 190 (Neb. 1998) See e.g. 28 U.S.C.

12

§455 "(a) which his impartiality might reasonably be questioned and (b) (1)Where [the Judge] has a personal bias or prejudice concerning a party."

Aided by his Receiver's attorney Mr. Landy, the Judge constantly disgraced Mr. Villars from his presidency with court innuendos of untrustworthiness and ineptitude. Judicially declaring him unable to do what the Association bylaws and the State Law vested on him to do, as President of the Association[7]. Thus, harming his Reputation in his Community. Intended to outcast him, by harming the trust he had built. By his undisputable good deeds and devotion to his community.

Where, "harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages – and for that reason, more likely to be found 'irreparable.'" *Curves Int'l, Inc. v. Fox, C.A.* No. 12-12250-RGS at *3 (D. Mass. May 9, 2013), citing *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989).

### IX. <u>TO COERCE ON POWER - A Covert Involuntary Servitude and Peonage</u>

Disguised as an 'Emergency' Receivership. Due to the Association inherited calamity, the debt to service providers and the Association debt with the bank[8]. Along with the Enterprise Wrongful acts; which caused further deprivation of Association services.

**Association private issues that did not afford the Court with any Jurisdiction[9]**

---

[7] In Enterprise complaint. ECF 2 Page 110 and 111 Appx_X13 Powers and Duties of the President.

[8] Service providers debts were being paid by the Association, with Mr. Villars due diligence. The bank debt was properly paid upto July 2021; prior to this usurpation. Therefore, prior to their wrongful actions the bank did not have a reason or intention to file an interpleader case against the Association or to freeze the Association accounts. See Section 1990 and 5526, Rev. Stat on peonage for debt.

[9] "Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." *Dillon v. Dillon*, 187 P 27

Where at reviewing the Enterprise' claims.  A) The Association Governing Docs and the State Laws does not support them as causation. Rather within vested powers on Mr. Villars as President and Chief Officer. B) Therefore lacking Cause of Action ab initio.

C) Where if any of their claims may have been valid; the FS 718.1255 affords only the DBPR with jurisdiction to redress them. D) However, because the Association has the Kaufman Supra (ex-post facto law) immunity. Pursuant to the 14th Amendment Privileges and Immunities Clause. Its vested Substantive Rights cannot be impaired by any New law.

E) Including the FS 714 a.k.a. the Receivership Act. Which clearly forbids its application on homestead owners[10]. Moreover, it also pre-requires a 30-days Proper Notice and opportunity to all adverse parties to contest the claims.  Which the Enterprise failed to afford the court. And "The court may not add to the statute … to confirm to an assumed intent that is not apparent in its language" *Lesher, Supra* 52 Cal.3d at 543, 277 Cal.Rptr 1.

Proving the Enterprise[11] unlawfully represented the Association in court.  As the Association covenants, laws running with the land, does not vest on any one owner, including directors, a right to transfer other owners' property interests without prior proper due process and their signed consent.  Or to place them in a conveyance without complying with the Statute of Fraud requirements. Opposed to common law and statutory reasoning. As the Association was not in Foreclosure, nor in Bankruptcy, nor liquidating

---

[10] FS 714.04 "(e)Personal property of an individual which is used primarily for personal, family, or household purposes."

[11] FS 718.112 "being an owner of the association does not afford legal right to represent the association". FS 718.111(7) "718.114, no association may acquire, convey, lease, or mortgage association real property except in the manner provided in the declaration."

its assets. Not in any imminent danger of loss of life or property. Therefore, wanting or 'Properness' and 'Necessity'. Thus lacking Statutory Matter jurisdiction ab initio.

Nonetheless, the Judge Ordered POWER to pay whatever the Receiver chose to collect. First to pay for the Receiver's law firm's ~$100K monthly dues[12]. Then with the residual, to pay for the Association's upkeep, services, and pending debt. Thereby, the Judge has directly contradicted established state laws[13] and Contractual procedures[14].

Intentionally abusing authority, by wrongfully assuming unwavering tyrannical powers, by relying on the Receivership common law[15] . Which restricts the nullification of Receivership to that State Court's discretion alone.

HOWEVER, this court must consider the statutes of fraud exception. Rule 60. Where this Receivership was procured without jurisdiction and through conspired fraud on the court.

---

[12] On Oct. 8, 2021- The Judge also denied post-deprivation Due Process. At ordering, a second Receiver, Mr. Abadin. Taxing on POWER an additional $600 per hour Receiver fee. That is, an additional taxation of $900 + $650+$550 p/hr. legal fees. A significant undue impact.

[13] FS 718.116(g)(3) "Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment." ALSO: (10) "The funds collected pursuant to a special assessment shall be used only for the specific purpose or purposes set forth in such notice."

[14] See Covenant Immunity on any New fiscal obligations. See 'Borrow' in Appx_X13.
[15] "Equitable Receiverships are a creation of common law, which the Supreme Court has stated should be reserved for cases involving (1) fraud, (2)self-dealing, or (3) waste." [In Expressio Unius Est Exclusio Alterius] - _Granada Lakes Villa Condominium Ass'n. Inc. v. Metro-Dade Investments Co_. 125 So. 3d 756, 759 (Fla. 2013).

To coerce innocent state citizens into servitude, threatened with court sanctions. Here proven with the Court Order for Contempt. For assembling, petitioning, and informing fellow owners on this Judicial Abuse. Thereby infringing "The Right of [this class of] people, to be secure in their persons, houses, papers and effects against unreasonable ... seizures" *See* U.S. Fourth Amendment.

## X.  Which begs from this Federal Court for a De Novo Review

"A judgment is void only if the court that rendered it lacked jurisdiction ... or acted in a manner inconsistent with Due Process of Law." *Williams v New Orleans Public Serv*., Inc., 728 F.2d 730, 735 (5th Cir. 1984) (quoting Wright, Miller and Kane, Federal Practices and Procedures Section(s) 2862 (1973))

For deliberately disregarding the Status Quo Jurisprudence. Designed to prevent lawsuits from harming the Association's operations and obligations to the membership at large. Arbitrarily preferring to deprive POWER of essential operations. Thus, endangering the health and life of ALL Association residents. By failing to provide the Association with e.g. night security, pest control or elevator mechanical upkeep.

Condoning such deprivations, under the Receiver's excuse"lack of sufficient funds." While he increased 200% the Association dues, without allowing a vote. Proving as fraud, the commonly used doctrine and enforcement, 'for the best interest of the Association'.

At penalizing POWER with undue financial hardship. Which, Mr. Villars, while presiding as president, proved such extra taxation to be unnecessary. To recuperate the Association, to pay for all those services, and to pass the 40 yr. & 50 yr. certifications.

Where it's understandable why illicit Enterprises law firms like Katzman Chandler P.A. and Damian & Valori LLP. suppressed the Mathews Balancing Test and flung their deceitfully run Business Judgment Rule Doctrine.  Whereas an 'unbiased' Judge and his 'neutral' Receiver's → Overt Indifference departs from the principles of Police Policy.

Proving these Legal Doctrines ARE Judicially used:  NOT to serve Public Justice. → But *to serve the* Rule of *Man*.  To allow the organized-white-collar-crime to flourish.

### XI.  A Plea For Equitable Justice.

Because this community was taken by fraudulent means; with false claims, illegal representation of the Association and without any type of justification. Florida property owners proven innocent of any type of crime. Yet permanently coerced into a servitude and conveyance. Being deprived of health and life preventive measures.  Thus, receiving NOTHING in exchange to justify the unduly legal costs, and devaluation of their property.

So it would not only be proper, but reasonable to expect for this Federal court to prohibit the trial judge and his receiver from continuing disgracing the integrity of the courts, violating established laws, and depriving 500+ property owners of the privacy and property rights guaranteed by the U.S. Constitution. By prohibiting the Judge and the court Receiver from presiding without having jurisdiction. Pursuant to 42 USC §1986.

"Notwithstanding that a generalized injury that all citizens share is insufficient to confer standing, where a plaintiff alleges that the defendant's action injures him in "a concrete and personal way," "it does not matter how many [other] persons have [also] been injured. . . . [W]here a harm is concrete, though widely shared, the Court has found injury in fact." *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 517, 522 (2007).

## THREE QUESTIONS OF LAW

## Of significant JURISPRUDENCE ESTABLISHING POWER.

**Considering...**

**42 USC §1985(2)** "[i]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws..."

**Under frivolity review**, "[t]he complaint's factual allegations must be accepted as true." _Waldman v. Conway_, 871 F.3d 1283, 1289 (11th Cir. 2017).

**Fed.R.Civ.Pro. 55** "(a)Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

**Fed.R.Civ.Pro. 56** "After the movant has met his burden, the burden of production shifts to the nonmoving party" "must do more than simply showing there is some metaphysical doubt as to the material facts." _Matsushita electronics Ind. Co. v. Zenith Radio Corp._, 475 U.S. 574, 586 (1986)

1)     How can two of three Federal Judges legitimize - in law or in iniquity - the aforementioned Deprivation of privacy and Constitutional Rights without due process?

2)     IF this court condones the aforementioned, to provide sanctuary, would it be logical, for the common men not see this as a violation of Equal protection under the law?

3)     At condoning this unwarranted seizure - by some special judicial powers - is this court in fact officially stating: "Any entity, from anywhere in the world, who can 'get' trial judges to table and moot litigation indefinitely, may take without due process privacy, Constitutional Rights and property in the United States."?

### WHEREFORE

POWER has suffered Irreparable injury "[that] cannot be undone through monetary remedies." _Deerfield Medical Center v. City of Deerfield Beach_, 661 F.2d at 338, _Spiegel v. City of Houston_, 636 F.2d 997 (5th Cir. 1981). Thereby, "[t]his case falls within the "established state procedure" exception described in _Parratt_. So that the _Parratt_ analysis concerning the adequacy of post-deprivation remedies is simply inapplicable." _Rittenhouse v. DeKalb County_ 764 F.2d 1451 (11th Cir. 1985).

18

## THEREFORE MR VILLARS AND ON BEHALF OF HIS COMMUNITY:

Pleas this honorable court to Terminate the trial judge Receivership. Under Fed.R.App 9.130(3)(D) For lack of Jurisdiction. Effective ab initio. Hence their concealment over their Association activities may leave POWER with unforeseeable harm. Costing the Association additional legal fees and irreparable damages. Thus inducing insolvency.

"On direct appeal, a court of appeals has Broad Authority to "modify, vacate, set aside or reverse" an order of a district court, and it may direct such further action on remand "as may be just under the circumstances." 28 USC § 2106

## AFFIDAVIT DECLARATION OF GOOD FAITH AND HONESTY

I, Janvier Villars, as the duly elected Board President, and on behalf of Property Owners Wanting Equal Rights in their Association and with their personal property, hereby declare every averment, claim, statement to be 100% true. To be considered as fact or to be challenged with evidence of otherwise by the Respondents/Appellees. Any discrepancy found in this pleading is not intended with ulterior motives, nor to cause delay, cost, or frustration to any adverse party or the court. Everything written here has been per my personal knowledge, experience, and through my personal battles seeking equal justice.

### The Reasoning for this Emergency

Is due to the further actions taken by the trial Judge. Who without having jurisdiction and refusing his disqualification intends to continue influencing the Association. Adversary to Mr. Villars' interests. At forcing, for the first time, an 'Election Committee'. *"The creation of the advisory board is within the Receiver's powers."* (Appx_X2¶8). Basically, to control who will be disqualified per his discretion, to place a puppet board. Where pursuant to this private Association covenants, the State has no authority to do so.

Unreasonably, after permitting the Enterprise supporters blame Mr. Villars for the Receivership, its undue financial hardship and the suffering endured for the lack of services. While, prohibiting Mr. Villars from defending against those false accusations.

19

Thus intending to also swindle an 'election committee' composed of those owners who covertly support the Receivership swindle. So the Judge, the Receiver and the Enterprise can make sure Mr. Villars is not only outcast but possibly sued again by their newly controlled board of directors. By keeping KC as the Association attorney. So he can continue harassing and suing Mr. Villars into silence. And foreclose on his property. Under any unjust claim. As proven to be condoned and collaborated with the trial judge.

But more importantly, this attempt to control the Association runs afoul to the harmed property owners' 152 petitions for governmental grievance. See Appx_X20.

"[p]rohibition is available only where there is a clear and legal right, and only a court- cases where judicial authority is challenged - acts or threatens to act either without jurisdiction or in excess of its authorized powers" *Matter of Holtzman v. Goldman* 71 NY2d 564, 569. See *Matter of Rush v. Mordue*, 68 NY2d 348, 252.

Where the trial court not finding any legal claim against Mr. Villars, the fair and just relief is the Status Quo Ante. As the Association covenants provide, the vacancies in the board "shall be filled by the remaining directors". A substantive vested right that Mr. Villars expects as his property interest and to be enforced by the court for being a restrictive covenant[16]. Especially where the Kaufman, Supra protects such substantive privileges from being impaired by any subsequent FS711 amendments.

"After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions."

---

[16] See Appx_X20b. "Property owners have a right in equity to enforce restrictive covenants." See, e.g. *Mains Farms Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 815, 854 P.2d 1072 (1993). *Ronberg v. Smith*, 132 Wn. 345, 249, 232 P.283 (1925).

/s/ Janvier Villars

Janvier Villars, pro se

1301 NE Miami Gardens Drv, 322

Miami, FL 33179

(786) 609-1269

Under oath I hereby state all the aforementioned to be true. That I have complied to the best of my abilities as a common man, with the State and Federal Rules of Civil Procedures. That this document is well under the maximum word count. At 5730 total words and within the 12 point size.

STATE OF FLORIDA  ss
COUNTY OF MIAMI-DADE
BEFORE ME, an officer duly authorized under the laws of the State of Florida to administer oaths and take acknowledgements, personally appeared before me, Mr. Janvier Villars, known to be the individual described in and who executed the foregoing instrument, and acknowledged before me this _____ day of September 2019, who produced, as identification:

_____ BY: _____ Florida Driver License No. V462-420-72-285-0 _____

NOTARY PUBLIC No.                    HUMBERTO L BOGANI   of the State of Florida          My
Commission expires                   Commission # GG 240082
                                     Expires November 19, 2022
                                     Bonded Thru Budget Notary Services

### CERTIFICATE OF NOTIFICATION

To all parties involved via the trial court electronic system §3B constitutes consent to receive service electronically pursuant to Fed. R. Civ. P. 5(b)(2)(E). To all Buckley Towers property owners as Adverse Parties via email or postings around the Association property. Or by individual note to those who Mr. Villars does not have the current emails.

21

## TABLE OF AUTHORITIES

Found on
Brief Page

Parker v. Ryan, 960 F.2d 543, 545 (5th Cir.1992)
On the definition of "Adverse Parties" in a proceeding.                                    1

Gillette v. New York State Liquor Authority, 149 A.D.2d 927 (N.Y. App. Div. 4th
Dep't 1989)                                                                                2
Over violations of Due Process.

Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012)                         2
Over violations of Due Process.

Bennet v. Parker, 898 F.2d 1530, 1532(11th Cir. 1990).
Over Federal jurisdiction under Sec. 1983                                                   3

Kentner v. City of Sanibel, 750 F.3d 1274, 1278 (11th Cir. 2014), cert. denied, 135 S.
Ct. 950 (2015).
Over fraud that impedes judicial process lacks statue of limitation.                        3

Amendment to the Florida Constitution Art. V, §21
Prohibiting Agency Deference                                                               3

Brofman v. Florida Hearing Care Center, Inc., 703 So. 2d 1191, 1192 (Fla.4th DCA
1997)
Over the disqualification of a trial judge

Michaud-Berger v. Hurley, 607 So. 2d 441, 446 (Fla. 4th DCA 1992)
Over the disqualification of a trial judge                                                 4

Sholtz v. Houser, 657 So.2d 950, 951 (Fla. 5th DCA 1995)
Over Reasonable interpreted circumstantial evidence to recuse                              4

Varela v Spanski, 329 Mich App 58, 81 (2019), quoting Orzel v Scott Drug Co, 449
Mich 550, 559 (1995).
Regarding the Wrongful Conduct Rule a.k.a. Unclean Hands Doctrine                          5

Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996)
Regarding Malicious actions to be considered by this Federal Court                         5

Mansfield, C.L.M.R. Co v. Swan, 111 U.S. 379, 382 (1884))
Over Matter Jurisdiction threshold "inflexible and without exception"                     6

Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)
Over the court being powerless to proceed without Jurisdiction.                                6

Sodal v. Cook County, 506 U.S. 56, 61 (1992)
Referring to the Constitution Fourth Amendment - Seizure of property                           7

Healy v. James, 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972).
Over indirect pairments on association rights being impermissible                              7

Buesa v. City of Los Angeles (2009) 177 Cal.App.4th 1537, 1546., Kachig v. Boothe
(1971) 22 Cal.App.3d 626, 634
Regarding Fraud on the Court by Intrinsic Fraud                                                 7

Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946) as stated in
Black's Law Dictionary 595 (rev. 5th ed. 1979
Regarding Extrisic Fraud                                                                        7

Curbelo v. Ulman 571 So.2d 445 (Fla. 1990); Ryan's Furniture Exch., Inc. v. McNair, 120
Fla.109, So 483, 487 (1993); Shields, 528 So.2d at 968; Niki Unlimited v. Servers of Greater
Miami, 483 So.2d 46, 48 (Fla.3rd DCA 1986).
On violations of due process                                                                    8

State v. Burlison, 255 Neb. 190 (Neb. 1998) See e.g. 28 U.S.C. §455
On Malice manifested through wrongful acts without just cause.                                 12

Curves Int'l, Inc. v. Fox, C.A. No. 12-12250-RGS at *3 (D. Mass. May 9, 2013),
citing K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989)
Regarding causing harm to goodwill considered ireperable damages.                              13

Dillon v. Dillon, 187 P 27
On the tribunal lacking jurisdiction voids its proceedings                                     13

Lesher, Supra 52 Cal.3d at 543, 277 Cal.Rptr 1.
Limiting the Court to assume alternative intent on a clearly written law                       14

Granada Lakes Villa Condominium Ass'n. Inc. v. Metro-Dade Investments Co. 125
So. 3d 756, 759 (Fla. 2013).
Receiverships on associations being limited to specific circumstances.                         15

Williams v New Orleans Public Serv., Inc., 728 F.2d 730, 735 (5th Cir. 1984) (quoting
Wright, Miller and Kane, Federal Practices and Procedures Section(s) 2862 (1973))

Regarding judgments rendered without jurisdiction being void.                              16

Massachusetts v. Environmental Protection Agency, 549 U.S. 497, 517, 522 (2007).
Finding injury regardless of how many may claim injury.                                    17

Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017)
Under Frivolity Review allegations must be considered as true.                             18

Matsushita electronics Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
On the shift of burden on production to properly dispute the movant claims.                18

Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d at 338, Spiegel v. City
of Houston, 636 F.2d 997 (5th Cir. 1981)
Regarding irreperable damages.                                                             18

Rittenhouse v. DeKalb County 764 F.2d 1451 (11th Cir. 1985).
Regarding post-deprivation beeing inapplicable.                                            18

Mains Farms Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 815, 854 P.2d 1072
(1993). Ronberg v. Smith, 132 Wn. 345, 249, 232 P.283 (1925).
Affording property owners with an equity right over the Association covenants               20

**EXHIBIT APPENDIX for trial case 2021 - 017383 APPEAL**

|  | Appx_X Exhibit |
|---|---|
| Docket with Detail Explanation of entries. | 1 |
| Motion for court Hearing June 21, 2022 | 1b |
| Illicit Enterprise last minute Motion for Receivership and the immediately granted relief. | 2 |
| SLAPP Cause - Court Contempt Sanctions | 3 |
| Motion for Disqualification of Judge Carlos Guzman | 4 |
| The illicit Enterprise Original Complaint for Injunction | 4b |
| Kaufman Language, Supra "As amended from time to time" Herein included with the Association 1st Declaration & bylaw pages. | 6 |
| Mr. Villars Motion to Set Aside Receivership based on Rule 1.540 | 6b |
| Order Granting Motion for Stay Without permitting adverse parties Notification or Court Participation | 8 |
| Buckley Towers 1991 Amendment 3-strikes disqualification Which left the Enterprise without authority to represent the Association Recorded by the Enterprise Complaint Page 26 of Ass'n Covenants | 8b |
| The Court Receiver only 'Quaterly Report' after eight months | 11 |
| The Association vested powers to the elected president. Pages 110-114 on the Enterprise Complaint. | 13 |
| The Association immunity and privilege over new contractual obligations On Page 110 of Exhibit 13. Paragraph titled "Borrow" | 13 |
| Sample of 152 petitions for government grievence filed by POWER | 20 |
| Vacancies to be filled by the remaining directors Pursuant to the Restrictive Association Covenants Pg. 107 of Complaint | 20b |

EXHIBIT
X1

Trial Court
Docket
As of
May 11, 2022

**COURT DOCKET for Case 2021-017383 - From July 16, 2021 TO May 11, 2022**

**This is how, through a Judge broad discretion over his court (docket, innocent citizens are OPENLY deprived of Due Process.**

| Number | Date | Docket Entry | By | GRANTED? | Comments |
|---|---|---|---|---|---|
| 111 | 06/21/2022 | Motion Calendar | | | MOTION TO APPROVE ADVISORY BOARD ELECTION PROCEDURES |
| 110 | 05/02/2022 | Notice of Hearing: | Receiver | YES | ON JUNE 21, 2021 AT 10:00 A.M. [Without confer on time or date with the Defendant Mr. Villars] |
| 110 | 04/27/2022 | Motion: | Mr. Villars | | MOTION TO APPROVE ADVISORY BOARD ELECTION PROCEDURES |
| 109 | 04/26/2022 | Order: | 3rd DCA | | 3RD DCA ORDER DISMISSING APPEAL. Trial court sent it to the wrong court. See Notice ECF 107. |
| 108 | 04/01/2022 | Receipt: | Court | | RECEIPT#:3070221 AMT PAID $108.00 for Notice of Appeal |
| 107 | 03/31/2022 | Notice of Appeal | Mr. Villars | | Notifying interest to appeal to the Southern District Federal Court. |
| 106 | 03/21/2022 | Response: | Mr. Villars | NO | MOTION TO CONSIDER MOTIONS BASED WRITTEN SUBMISSION WITHOUT A HEARING |
| 104 | 03/17/2022 | Amended Motion | Mr. Villars | NO | MOTION FOR STAY ON THE ORDER OF CONTEMPT |
| 105 | 03/16/2022 | Amended Motion | Mr. Villars | | repeated |
| 103 | 03/11/2022 | Motion to Disqualify | Mr. Villars | NO | Motion to Disqualify Judge Carlos Guzman and for Declaratory Relief on the Receivership Order |
| 102 | 03/10/2022 | Order: | Judge | | ON RECEIVER'S ORDER APPROVING AND AUTHORIZING PAYMENT OF FEES AND EXPENSES. |
| 101 | 03/09/2022 | Motion: | Mr. Villars | NO | FOR CLASS ACTION CERTIFICATION |
| 100 | 03/08/2022 | Notice: | Mr. Villars | NO | OF REQUEST FOR COURT TO CONSIDER MOTIONS BASED ON WRITTEN SUBMISSION, ETC. |
| 99 | 03/03/2022 | Order: | Judge | YES | ORDER FOR CIVIL CONTEMPT. |
| 98 | 03/02/2022 | Objection: | Mr. Villars | NO | MOTION TO SET ASIDE TO OPPRESIVE COURT ORDERS FOR VIOLATING CONSTITUTIONAL RIGHTS |
| 97 | 03/01/2022 | Special Sets | Mr. Villars | NO | SHOW CAUSE HEARING - Refused by the Judge at the hearing. |
| 96 | 02/28/2022 | Exhibit List | Mr. Villars | | 152 Petitions for Government grievance |
| 95 | 02/28/2022 | Exhibit List | Mr. Villars | | 152 Petitions for Government grievance |
| 94 | 02/28/2022 | Motion: | Receiver | YES | [netral received] OPPOSE THE ORDER OF SHOW CAUSE AS CONTENT OF COURT and MOTION TO GRANT JURY TRIAL |
| | 02/24/2022 | Motion for Relief from J... | Judge | YES | GRANTING RECEIVERS MOTION FOR ORDER TO SHOW CAUSE. |
| | 02/23/2022 | Special Sets | Receiver | YES | EMERGENCY MOTION TO SHOW CAUSE AND JUDICIAL NOTICES FS 90.203 |
| 92 | 02/22/2022 | Special Sets | Receiver | NO | RECEIVERS URGENT MOTION FOR ORDER TO SHOW CAUSE AGAINST DEFENDANT, JANVIER VILLARS. |
| 91 | 02/22/2022 | Motion to Strike | Mr. Villars | NO | (EMERGENCY MTN FOR DECLARATORY RELIEF) 03-01-2022 AT 2:45 PM, IN ROOM VIRTUAL COURTROOM. |
| 90 | 02/22/2022 | Motion to Strike | Mr. Villars | NO | Motion Striking the Enterprise false claims. |
| 93 | 02/21/2022 | Motion: | Mr. Villars | NO | RECEIVER S APPLICATION FOR ORDER AUTHORIZING PAYMENT OF FEES AND EXPENSES |
| | 02/21/2022 | Notice: | Receiver | YES | [neutral receiver advocating for the Judge denying discovery] TO DEFENDANT S DISCOVERY REQUEST |
| 88 | 02/21/2022 | Objection: | Receiver | YES | RECEIVERS FIRST (AND ONLY) 'QUARTERLY' REPORT. [Directly violating Receiver Act requirements at not copying with reports] |
| 89 | 02/18/2022 | Notice: | Receiver | | 02-24-2022 AT 12:30 PM, IN ROOM VIRTUAL COURTROOM. |
| | 02/18/2022 | Notice: | Receiver | | To Show Cause and for Judicial Notices requested |
| 87 | 02/17/2022 | Notice of Htg Special Ap | Mr. Villars | NO | 02-24-2022 AT 12:15 PM, IN ROOM VIRTUAL COURTROOM. |
| 86 | 02/17/2022 | Emergency Motion | Court | | 02-24-2022 AT 12:15PM VIA ZOOM |
| 85 | 02/17/2022 | Notice of Htg Special App | Mr. Villars | NO | FEBRUARY 24, 2022 AT 12:15PM VIA ZOOM |
| 84 | 02/16/2022 | Amended Notice of Hearing | Mr. Villars | | FOR JUDICIAL NOTICE, ETC. |
| 83 | 02/15/2022 | Motion: | Mr. Villars | NO | For Admission and Interrogatories on the ExDirectors legal support on their claims of authority and claims against Mr. Villars. |
| 82 | 02/08/2022 | Request for Production | Mr. Villars | NO | [neutral receiver gagging defendant] ON RECEIVERS MOTION TO STAY, IS GRANTED |
| 80 | 02/07/2022 | Order: | Receiver | YES | FOR HEARING OF MR. VILLARS SHOW CAUSE FROM THE RECEIVER MOTION [While Mr. Villars motions were denied of litigation] |
| 79 | 02/05/2022 | Motion: | Receiver | YES | FEBRUARY 18, 2022 at 11:10 AM |
| 81 | 02/04/2022 | Motion for Extension of Time | | | |
| 78 | 02/03/2022 | Amended Notice of Hearing | | | |
| 75 | 02/03/2022 | Motion to Show Cause | Mr. Villars | NO | MR. VILLARS ANSWER CLAIMS OPPOSING THE RECEIVERS MOTION TO STAY |
| 77 | 02/02/2022 | Special Sets | Mr. Villars | NO | FEBRUARY 18, 2022 at 11:30 AM |
| 76 | 02/02/2022 | Special Sets | Mr. Villars | | Disregarded by the Judge and his enterprise. |
| 74 | 02/02/2022 | Memorandum of Law | Mr. Villars | | Disregarded by the Judge and the enterprise. |
| 74 | 02/02/2022 | Notice of Htg Special Appt | Mr. Villars | | © 03-2022 AT 1:30 P.M. IN ROOM VIRTUAL COURTROOM. |
| 73 | 01/18/2022 | Motion for Extension of Time | | | |

| # | Date | Document | Party | Y/N | Description |
|---|------|----------|-------|-----|-------------|
| 72 | 01/11/2022 | Motion: | Mr. Villars | NO | FOR JUDICIAL NOTICE |
| 71 | 01/10/2022 | Notice of Hrg. Special Appt | | | 02:1X-2022 AT 11:30 AM, IN ROOM VIRTUAL COURTROOM. |
| 70 | 12/31/2021 | Response to Motion | Receiver | YES | MR. VILLARS ANSWER OPPOSING THE STAY AND MOTION FOR HEARING ON THE PRIOR PLEADINGS BY MR. VILLARS |
| 69 | 12/30/2021 | Motion to Stay | | NO | Motion for Stay based on the Enterprise false claims |
| 68 | 12/21/2021 | Letter of Correspondence | Mr. Villars | | Disregarded by the Judge. |
| 67 | 12/21/2021 | Notice of Filing: | Receiver | | DOCUMENTS DISSEMINATED AT BUCKLEY TOWERS BY MR. JANVIER VILLARS |
| 66 | 11/22/2021 | Notice: | Receiver | | INITIAL REPORT |
| 65 | 11/17/2021 | Order of ... Arbitration | Judge | | GRANTING FORMER RECEIVERS MOTION TO APPROVE, AWARD AND AUTHORIZE THE RELEASE OF PAYMENT ... |
| | 11/17/2021 | Order of Withdrawal as Attorney of | Judge | | |
| | 11/17/2021 | Order Setting CM Deadline | Court | | |
| 62 | 11/10/2021 | Appendix: | Mr. Villars | | |
| 61 | 11/10/2021 | Memorandum of Law | Mr. Villars | | FOR JUDGMENT ON THE PLEADINGS, ETC. |
| 60 | 11/10/2021 | Motion: | Mr. Villars | NO | FORMER RECEIVERS MOTION TO APPROVE, AWARD AND AUTHORIZE THE RELEASE OF PAYMENT OF FORMER RECEIVERS |
| | 11/08/2021 | Motion Calendar | Court | | |
| | 11/04/2021 | Notice of Hearing | | | NOVEMBER 8, 2021 AT 10:00AM |
| 59 | 11/03/2021 | Notice of Appearance | | | |
| 57 | 10/29/2021 | Letter of Correspondence | Mr. Villars | YES | Addressing the Judge prejudicial practices - Disregarded by the Judge |
| 56 | 10/28/2021 | Order: | Receiver | YES | ON MOTION TO APPROVE ADDITIONAL SIGNATORY ON RECEIVERSHIP ACCOUNTS IS GRANTED. |
| | 10/27/2021 | Notice: | Receiver | | RECEIVERS OATH |
| | 10/25/2021 | Motion Calendar | Court | | MOTION TO WITHDRAW AS COUNSEL |
| | 10/25/2021 | Notice of Filing | Mr. Shir | | DEFENDANTS FILING EXHIBIT "A" |
| | 10/25/2021 | Notice: | Mr. Shir | | NOTICE OF CHANGING LIEN |
| 52 | 10/22/2021 | Objection: | Receiver | NO | TO FORMER RECEIVER S MOTION TO APPROVE, AWARD, AND AUTHORIZE THE RELEASE OF PAYMENT |
| 51 | 10/22/2021 | Motion: | Receiver | YES | TO APPROVE ADDITIONAL SIGNATORY ON RECEIVERSHIP ACCOUNTS |
| 50 | 10/21/2021 | Motion to Show Cause | Mr. Villars | YES | For Judge Jurisdiction and Motion Dismissal with Prejudice |
| 49 | 10/21/2021 | Motion to Set Aside Def... | Mr. Villars | NO | Motion to set aside unlawful receivership order and to compel discovery pleaded. |
| 48 | 10/21/2021 | Motion to Set Aside Def | Receiver | YES | TO APPROVE ADDITIONAL SIGNATORY ON RECEIVERSHIP ACCOUNTS |
| | 10/21/2021 | Notice of Hearing: | | | OCTOBER 25, 2021 @ 10:00 AM |
| | 10/18/2021 | Notice of Hearing: | | | NOVEMBER 8, 2021 @ 10:00 AM |
| | 10/18/2021 | Notice: | | | RECEIVER S BOND |
| 44 | 10/15/2021 | Notice of Filing: | | YES | FORMER RECEIVER S MOTION TO APPROVE |
| | 10/14/2021 | Notice of Appearance | | | |
| 42 | 10/13/2021 | Notice: | Mr. Shir | | NOTICE OF RETAINING LIEN - For being denied payment by the Receiver. |
| 40 | 10/11/2021 | Motion to Withdraw | Mr. Shir | | AS COUNSEL FOR DEFENDANT |
| 39 | 10/11/2021 | Notice of Hearing: | Court | | 10-25-2021 |
| | 10/08/2021 | Notice of Appearance | | | |
| 38 | 10/08/2021 | Order Appointing Receiv | Judge | YES | SUCCESSOR RECEIVER |
| 37 | 09/28/2021 | Affidavit of: | Mr. Villars | NO | Declaration by Mr. Villars on all the illegal practices procured by the Enterprise prior to hearing. |
| 36 | 09/22/2021 | Emergency Motion | Mr. Shir | NO | TO REMOVE MR. LEIGH HOFFMAN AS RECEIVER TO EITHER HOLD AN EVIDENTIARY HEARING FOR THE NECESSITY |
| | 09/22/2021 | Special Sets | | | EMERGENCY MOTION TO COMPEL SANCTIONS AND FOR CONTEMPT AGAINST DEFENDANT. |
| 35 | 09/21/2021 | Notice of Filing: | Mr. Shir | | Association DECLARATION RECORDED NOV. 26, 1990 - Automatic disqualification of directors for missing three board meetings. |
| 34 | 09/20/2021 | Emergency Motion | Mr. Shir | NO | TO DISCHARGE RECEIVER AND DETERMINE ACTUAL NECESSITY FOR THE RECEIVER BASED ON THE VERIFIED EMERGENCY MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND RESPONSE TO RECEIVER'S EMERGENCY MOTION |
| 33 | 09/20/2021 | Notice of Filing: | | | OATH OF RECEIVER |
| | 09/17/2021 | Notice of Hearing | | | 22ND DAY OF SEPTEMBER, 2021, AT 10:00 AM |
| | 09/17/2021 | Notice of Hearing | | | ON 09-22-2021 AT 10AM VIA ZOOM |
| | 09/17/2021 | Emergency Motion | | | TO COMPEL AND MOTION FOR SANCTIONS |
| | 09/17/2021 | Notice of Filing | | | OF FILING RECEIVING BOND |
| | 09/14/2021 | Notice of Filing | | | |
| 28 | 09/13/2021 | Motion: | Mr. Shir | NO | Case Management Conference |
| | | | | | CMC - Which the court Judge then refused to enforce on the Receiver the Discovery deadlines. TO REQUIRE RECEIVER TO PROVIDE INFORMATION. TO OVERRIDE CHOICE OF KATZMAN CHANDLER AS COUNSEL FOR ASSOCIATION |

| # | Date | Description | Entity | YES/NO | Details |
|---|------|-------------|--------|--------|---------|
| 27 | 09/13/2021 | Notice: | | | OF APPEARANCE, RECEIVER, LEIGH HOFFMAN, CPM |
| 26 | 09/13/2021 | Notice of Appearance: | | | |
| 25 | 09/09/2021 | Motion: | Mr. Shir | NO | TO SET PLAINTIFF'S TEMPORARY INJUNCTION HEARING |
| 24 | 08/31/2021 | Motion to Dismiss | Mr. Shir | YES | Parties: Guy M Shir, Villars Janvier |
| 23 | 08/30/2021 | Motion for Extension of | Mr. Shir | YES | Parties: Guy M Shir, Villars Janvier |
| 22 | 08/30/2021 | Order: | Judge | YES | APPOINTING RECEIVER (GRANTED), LEIGH HOFFMAN. |
| 21 | 08/26/2021 | Objection: | Mr. Shir | NO | TO PROPOSED ORDER BY "ROGUE" GROUP ASSERTING CONTROL AND AUTHORITY OVER THE ASSOCIATION |
| 20 | 08/24/2021 | Order Setting the Initial Case Management Conference | | | DATE/TIME: 09-14-2021 AT 11:30 AM, VIRTUAL COURTROOM. |
| 19 | 08/23/2021 | Special Sets | | | VERIFIED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION RELIEF |
| 18 | 08/23/2021 | Motion to Appoint Receiver | Enterprise | YES | 22 hours before the hearing and w/out process of service on the community, |
| 17 | 08/18/2021 | Response: | Enterprise | YES | False claims and misrepresentation of Florida Statues. See 91 for every detail. |
| 16 | 08/13/2021 | Objection: | Mr. Shir | NO | TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| 15 | 08/06/2021 | Notice of Appearance | | | |
| 14 | 08/06/2021 | Notice of Reg Special Appt | | | |
| 13 | 08/03/2021 | Notice of Unavailability/absence | | | 08-24-2021 AT 11:15 AM, IN ROOM VIRTUAL COURTROOM. |
| 12 | 07/28/2021 | Service Returned | | | Parties: Villars Janvier |
| 11 | 07/28/2021 | Emergency Motion | | | Service Returned |
| 10 | 07/28/2021 | Notice of Filing: | | | TO CONTINUE AUGUST 2, 2021 HEARING |
| 9 | 07/28/2021 | Notice of Filing: | | | ATTACHED SUBJECT LINE REMINDER OF EMERGENCY COMMUNITY AND BOARD MEETING TONIGHT 7PM BY ZOOM |
| 8 | 07/26/2021 | Notice of Hearing: | | | AUGUST 2, 2021 AT 12:15 PM |
| 7 | 07/26/2021 | 20 Day Summons Issued | | | EMAIL AND LETTER |
| 6 | 07/22/2021 | ESummons 20 Day Issued | | | AUGUST 2, 2021 AT 12:15 PM |
| 5 | 07/22/2021 | Notice of Hearing | | | RE: INDEX # 4 Parties: Villars Janvier |
| 4 | 07/21/2021 | Emergency Motion | | | AUGUST 2, 2021 AT 12:15 PM |
| 3 | 07/20/2021 | Receipt: | | | FOR PRELIMINARY INJUNCTIVE RELIEF |
| 2 | 07/19/2021 | Receipt: | | | RECEIPT# 3000279 AMT PAID $10.00 NAME: SMITH, JUSTIN 6409 CONGRESS AVE STE 100 HSBC FL 33487 COMMENT: |
| 1 | 07/16/2021 | Complaint | Enterprise | | RECEIPT# 3000278 AMT PAID $401.00 NAME: SMITH, JUSTIN 6409 CONGRESS AVE STE 100 HSBC FL 33487 COMMENT: |
| 2 | 07/16/2021 | Civil Cover Sheet - Claim | Enterprise | | (W) 20 Day (P) Summons (Sub) Received |

EXHIBIT
X1b

Motion for court
Hearing for
June 21, 2022

Filing # 148497531 E-Filed 04/27/2022 02:05:09 PM

IN THE CIRCUIT COURT FOR THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS
CONDOMINIUM, INC., a                      CASE NO. 2021-017383-CA-01
Florida not-for-profit corporation

      Plaintiff,

v.

JANVIER VILLARS,

      Defendant.
_____/

## RECEIVER'S MOTION TO APPROVE
## ADVISORY BOARD ELECTION PROCEDURES

Ramon Abadin, in his capacity as the Court-appointed Receiver for Buckley Towers Condominium, Inc. ("the Receiver"), moves for the Court to approve advisory board of directors election procedures, and in support states:

1.     On October 8, 2021, the Court entered its Order Appointing Successor Receiver (the "Appointment Order"), which appointed Mr. Abadin as Receiver over Buckley Towers Condominium, Inc. (the "Association").

2.     Among other things, the Court appointed the Receiver as the sole board member of the Association's board of directors with full powers to act for the Association until the receivership is no longer necessary. *See* Appointment Order at ¶ 23.

3.     The Court also appointed the Receiver to conduct the Association's operations for the benefit of the creditors and unit owners of the Association. *Id* at ¶ 11.

4.     While the Appointment Order provides that the Receiver is in full control of the Association, the Receiver deems it appropriate and beneficial to the Association to create an advisory board of unit owners, elected by the unit owners pursuant to the provisions of the

Association's governing documents and chapter 718, Florida Statutes to provide unit owners the ability to elect representatives to represent their views and concerns to the Receiver.

5.     This advisory board will also have the added benefit of making communications between the unit owners and the Receiver more efficient, reducing the Receiver's costs and fees, and expediting the Receiver's duties.

6.     The proposed election of the advisory board would follow all rules of notice and procedures required by Florida law and the Association's governing documents.

7.     Most importantly, the board, properly elected in compliance with the bylaws and chapter 718, will provide for an elected board of directors to assume control of the Association upon the Receiver's discharge and facilitate an efficient transfer of control of the Association.

8.     The creation of the advisory board is within the Receiver's powers.    The Appointment Order designates the Receiver as the Association's sole board member and charges him with full powers to act for the Association until the Association can be properly returned to the management of the owners. *See* Appointment Order at ¶ 1.  Further, the Receiver possesses all powers and privileges of the Association and any officer or director of the Association.  *Id.* And, the Court had charged the Receiver to hold "an election of a new board of directors" for when the receivership terminates. *Id* at ¶ 23.

9.     The Receiver seeks Court approval of the procedures so that there will be no question of the board of directors' authority during the period of the Receiver's service and upon the Receiver's discharge.  And, absent the election of such a board, the Receiver will have nobody to turn the Association over to upon the completion of his duties and will have to wait up to 90 days for an election to take place in order to turn over Association control upon discharge, incurring further fees and costs for the cash strapped Association.

2

10.     The recommended transition proposed within the authority of the Receiver will solely ease the transition of the Association back to the unit owners and thus stands to serve solely as a benefit to the unit owners and the Association. Further, the proposed advisory board will have no negative effect on the financial situation of the Association and could in no way prejudice any party with interest in the effectuation of the Receiver's current duties as sole director on behalf of the Association.

11.     Accordingly, the Receiver requests this Court approve the Receiver's proposed election of an advisory board, as set forth in the proposed order attached as **Exhibit A**.

WHEREFORE, the Receiver respectfully requests the Court permit the Receiver to hold and oversee an election of an advisory board and grant such other relief this Court deems just and proper.

Respectfully submitted,

DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Primary: rlandy@dvllp.com
Secondary: snichols@dvllp.com
Secondary: jflores@dvllp.com

By:/s/  Russell Landy
        Russell Landy
        Florida Bar No. 44417
        Shana Nichols
        Florida Bar No. 1024090

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via an automatic email generated by the Florida Courts E-Filing Portal to those parties of record, on this 27 day of April 2022.

_/s/ Russell Landy_____
Russell Landy

# EXHIBIT
# X2

# Illicit Enterprise
# last minute
# Motion for
# Receivership

Filing # 133243907 E-Filed 08/23/2021 06:04:05 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.,
a Florida not-for-profit corporation,

        Plaintiff,

v.                                  CASE NO.: 2021-017383-CA-01

JANVIER VILLARS,

        Defendant.

_____

### PLAINTIFF, BUCKLEY TOWERS CONDOMINIUM, INC'S MOTION FOR APPOINTMENT OF RECEIVER

       Plaintiff, Buckley Towers Condominium, Inc. ("Buckley Towers" or the "Association"), by and through its undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.620 and the Court's inherent equitable authority, moves for the entry of an emergency order appointing a receiver to manage the affairs of Buckley Towers, and states as follows:

### INTRODUCTION AND UNDERLYING FACTS

1. Buckley Towers filed the instant matter on July 16, 2021, seeking preliminary and permanent injunctive relief against Defendant, Janvier Villars ("Defendant" or "Villars"), for interfering with the operations of the Association and unilaterally holding himself out as the President, Registered Agent, property manager, and absolute decision-making authority on behalf of Buckley Towers.

2. In that same vein, Buckley Towers filed its Verified Emergency Motion for Preliminary Injunctive Relief (the "Emergency Motion") seeking the Court's intervention to enjoin Defendant from acting on behalf of the Association.

3. Buckley Towers originally obtained a hearing date for the Emergency Motion on August 2, 2021.

4. However, the August 2nd hearing was canceled due to a conflict on the Court's calendar and the issues underlying the request for emergency injunctive relief have grown exponentially due to Defendant's continued actions.

5. The Association was unable to obtain another hearing date on the Emergency Motion until August 24th due to Defendant obtaining personal counsel, opposing counsel's objection to the emergency hearing, and opposing counsel's demand for a minimum two-hour hearing.

6. In the time since the filing of the instant case, Buckley Towers has been sued by its bank, City National Bank of Florida ("CNB") due to Defendant's rogue activities. *See City National Bank of Florida v. Buckley Towers Condominium, Inc., et al.*, Miami-Dade County Circuit Case No. 2021-018531-CA-01 (the "Interpleader Action").

7. Specifically, in seizing control of the Association, Defendant unilaterally entered into contracts on behalf of the Association and demanded payment for such contracts, among other purported invoices and expenses.

8. Defendant will not provide the majority of the Association's Board of Directors with proof contract, invoices, accounting, or anything else to justify payments he requested from CNB.

9. As a result of the dispute between Defendant and the Board majority, CNB froze the Association's bank accounts **and no bills and invoices are currently being paid**.

10. CNB has filed in the Interpleader Action a Motion for Authorization for Payments/Disbursements (the "Motion for Authorization") requesting the appointment of a third party to manage the financials of the Association. A copy of

the Motion for Authorization is attached hereto as Exhibit "A," and the Association hereby requests judicial notice of same.

11. Additionally, Florida Lemark Corporation ("FLC") has filed a Motion to Intervene in the Interpleader Action due to CNB holding funds it alleged to be owed to FLC and subject to the pending matter of *Florida Lemark Corporation v. Buckley Towers Condominium, Inc.*, Miami-Dade County Circuit Case No. 2019-6775-CA-01. A copy of the Motion to Intervene is attached hereto as Exhibit "B," and the Association hereby requests judicial notice same.

12. Buckley Towers maintains multiple bank accounts with CNB that are subject to the CNB Deposit Agreement effective July 1, 2018.

13. Buckley Towers is the borrower on a 3.5 million dollar loan (the "Loan") for which CNB is the lender.

14. Evidencing the loan agreement among the parties, a Collateral Assignment of Right to Collect Assessments and Assignment of Lien Rights (the "Collateral Assignment") executed by Buckley Towers assigning its rights to CNB was recorded in the Miami-Dade County Official Records Book 29657, at Page 3422. A copy of the recorded Collateral Assignment is attached hereto as Exhibit "C."

15. Also evidencing the loan agreement, an Assignment of Leases and Rents (the "Assignment of Leases") executed by Buckley Towers assigning its right to CNB was recorded in the Miami-Dade County Official Records Book 29657, at Page 3431. A copy of the recorded Assignment of Leases is attached hereto as Exhibit "D."

16. The bank accounts maintained by Buckley Towers with CNB are used to make monthly payments to CNB to pay back the loan.

17. The insurance premium comes due on or before August 31, 2021, and if it is not paid, Buckley Towers, the home of more than five hundred families, *will have no insurance*.

18. Moreover, Buckley Towers is in the process of completing forty (40) and fifty (50) year recertification of its buildings.

19. The failure to complete recertification could pose life and safety threats to the residents of Buckley Towers, and in light of the tragedy at Champlain Towers South Condominium in Surfside, Florida, the only prudent response to ensure completion of the recertification process and the payments required, is the appointment of a receiver.

20. The Court must remove the poison; Defendant cannot be permitted to hold Buckley Towers hostage, place the Association's property at risk of waste and destruction, and put the Association at risk of being uninsured in the middle of hurricane season.

21. CNB's Motion for Authorization is insufficient; with Defendant's ongoing, unrelenting intrusion in the operation and management of the Association, it is impossible to merely appoint a third party to manage the financial affairs—an all-encompassing receiver is necessary to ensure an end to Defendant's meddling.

22. Due to the escalating, worsening conditions of the Buckley Towers community on a daily basis and at the hands of Defendant, the majority of the Board of Directors of Buckley Towers, in the best interests of the community, has made the difficult decision that the appointment of a neutral third party to operate Buckley Towers is necessary to put an end to the turmoil and get the community back on its feet.

23. Accordingly, with no other remedy to cure the community of ongoing strife, the majority of the Board is willing to fall on the sword and uphold its duty to stabilize and better the community by moving for the appointment of a receiver.

24. For the health, safety, and welfare of the residents and owners of Buckley Towers, the Association moves this Court for emergency order appointing a receiver.

### ARGUMENT

Given the present facts, the appointment of a receiver is not only prudent, but is a necessity to ensure Buckley Towers' viability; secure the proper payment of the Association's legitimate vendors, contractors, and staff; conduct a proper accounting and management of the Association; and protect the safety and welfare of the Buckley Towers community from one person's unilateral meddling in the affairs and operations of the Association.

By definition, a receiver is "[a] disinterested person appointed by a court, or by a corporation or other person, for the protection or collection of property that is the subject of diverse claims." *Granada Lakes Villas Condo. Ass'n v. Metro-Dade Invs. Co.*, 125 So. 3d 756, 758 (Fla. 2013) (quoting *Black's Law Dictionary* 1383 (9th ed. 2009)). **Florida law is clear that a court retains the inherent equitable authority to appoint a receiver where, in the sound discretion of the court, the facts and circumstances of the particular case warrant receivership.** *Id.*at 758; *Ins. Mgmt., Inc. v. McLeod*, 194 So. 2d 16, 17 (Fla. 3d DCA 1966); *see also Lehman v. Trust Co. of Am.*, 49 So. 502, 503-04 (Fla. 1909); *Edenfield v. Crisp*, 186 So. 2d 545, 549 (Fla. 2d DCA 1966).

Florida Rule of Civil Procedure 1.620 permits the Court to appoint a receiver with or without notice to the adverse parties. The moving party must establish a substantial likelihood it will succeed on the merits at trial and that there is no adequate remedy at law. Fla. R. Civ. P.

1.620; *Phillips v. Greene*, 994 So. 2d 371 (Fla. 3d DCA 2008).  Moreover, courts, in their sound discretion, look to three requirements to establish that appointment of a receiver is appropriate: (1) the moving party has clear legal title to or a lien or other right in the subject property; (2) receivership is necessary to prevent fraud or self-dealing, or keep the property from being lost, removed, or destroyed; and (3) there is no alternative remedy that adequately protects the property. *See Granada Lakes*, 125 So. 3d at 759; *Apalachicola N. R. Co. v. Sommers*, 85 So. 361 (Fla. 1920); *Recarey v. Rader*, 320 So. 2d 28 (Fla. 3d DCA 1975).

Here, the Association establishes all three (3) requirements and, accordingly, the Court should immediately, appoint a receiver upon an emergency basis.

I.      **The Association Has a Clear, Undisputed Interest in the Buckley Towers Condominium Property.**

It should go without saying, but Buckley Towers, has clear title in the Association property.  The Association retains title to all common areas of the buildings forming the condominium, as well as retains the responsibility for the maintenance and operation of the community.  Furthermore, Buckley Towers retains title to six (6) units in the community.  As such, the Association has a clear interest in the property to warrant its request for the appointment of a receiver.

II.     **Receivership Is Necessary to Prevent Fraud, Self-Dealing and Loss and/or Destruction of the Property.**

Receivership is necessary to protect the condominium buildings and property.  Given the dysfunction within Buckley Towers—largely at the hands of Defendant—the age of the building, the nature of the Loan extended for construction and repairs to the condominium buildings, the pending suits against Buckley Towers, and the Association's unpaid invoices—including the rapidly looming insurance premium—there is a legitimate need to ensure the property is

safeguarded from fraud, self-dealing and loss or destruction. The inability of the membership to distinguish who may properly act on behalf of the Association—again, at the hands of defendant—coupled with Defendant's ongoing assertions that he has sole control and decision-making authority over Buckley Towers is not only concerning, but *dangerous*. Receivership is necessary to put in place a neutral third party to complete a proper accounting, ensure all necessary structural repairs are completed, and collect assessments to properly fund the Association to pay back the Loan, ensure payment of all properly-retained vendors, and avoid additional legal action against the Association.

In *McLeod*, the Third District Court of Appeals affirmed the lower court's determination to appoint a receiver where corporate stockholders were unable to agree how to operate their business. *Ins. Mgmt., Inc. v. McLeod*, 194 So. 2d 16, 18 (Fla. 3d DCA 1966). There, the appellate court noted, "It is conceded that there was disharmony between the corporations' two equal stockholders; that these two fifty per cent stockholders were deadlocked over the operation of their insurance agency business, and that they could not agree on the election of a board of directors." *Id.* Relying upon the lower court's sound discretion and a finding that a failure to post a bond pursuant to sections 608.28 and 608.29 was not a fatal flaw to the appointment itself, the appellate court affirmed the appointment of the receiver. *Id.*

The facts in the instant matter are analogous to *McLeod*: Defendant refuses to work with or compromise with the Board majority (notwithstanding that the Association disputes that Villars is **not** a member of the Board). In *McLeod*, there was at least no dispute regarding who the shareholders were and who could make decisions on behalf of the corporation; the issue was the inability of the shareholders to reach a decision. Here, the facts go a step further: not only are there no clear decisions and directives from Buckley Towers because of Defendant's

continued interference, unit owners, residents, prospective unit owners and residents, vendors, and contracted parties, i.e., CNB, have no way to determine who is permitted to act on behalf of Buckley Towers given the ongoing conflict. If the mere stalemate in *McLeod* was sufficient to appoint a receiver, the chaos at Buckley Towers compels the appointment of a receiver.

Additionally, in the wake of the Champlain Towers South Condominium tragedy and the recent evacuation of Crestview Towers Condominium due to the alleged failure to complete the forty (40) year recertification process, Buckley Towers' need to proceed with completing the recertification of its buildings is a haunting concern. The Association must similarly carry insurance, which has been put at risk by Defendant's interference. The dysfunction created by Villars can only be remedied by a receiver who can ensure completion of the recertification process without his, or anyone else's, meddling. Protection of the property from waste or destruction will secure the collateral on the Loan, and furthermore, will protect the safety, welfare, and homes of the residents of Buckley Towers.

Finally, given that Villars is holding himself out as the President, Registered Agent, property manager, and otherwise the sole person making decisions on behalf of Buckley Towers, the situation is rife with concerns of fraud and self-dealing.

**III.**    **There Is No Alternative Remedy to Receivership that Adequately Protects the Property.**

Villars has made it clear that he is unwilling to work with others and relinquish any power he may have or previously had, leaving no alternative but to appoint a receiver. While the Board majority had hoped to resolve this matter through a preliminary injunction against Defendant, that remedy is no longer adequate. The situation at Buckley Towers is getting worse by the day, hour, and minute. Buckley Towers is the precarious and detrimental position where it simply cannot function so long as Villars impugns his will for a community of more than five

hundred (500) units.   While the Association remains at an inoperative standstill, the condominium property securing the Loan is subject to waste and destruction.  The only manner in which to get Buckley Towers on track is to appoint a neutral third-party receiver to oversee the operations of the Association.

Buckley Towers is no stranger to the appointment of a receiver.  Because the Association refused to comply with court orders in the past, the Third District Court of Appeals imposed a receiver to ensure Buckley Towers made court-ordered payments to a leaseholder at the time. *See Buckley Towers Condo., Inc. v. Buchwald*, 340 So. 2d 1206 (Fla. 3d DCA 1976). Unfortunately, dysfunction appears to permeate the community necessitating the need for a receiver once again.

## IV.     The Association Proposes That the Court Appoint Leigh Hoffman, CPM, as the Receiver for Buckley Towers.

To aid the Court in the appointment of a receiver, the Association proposes the appointment of Leigh Hoffman, CPM, to serve as the receiver due to his vast knowledge of the operations of condominium associations as the president, owner, and CEO of Alliance Property Systems; his designation as a Certified Property Manager, and his prior experience serving as a receiver.  For the Court's reference, please find a copy of Mr. Hoffman's resume attached hereto as Exhibit "E."

## CONCLUSION

A receiver is necessary to protect the property of Buckley Towers that secures the loan issued by CNB to Buckley Towers, ensure the proper collection of assessments, ensure the safety of the buildings, and protect the residents and unit owners' rights to the quiet enjoyment of their homes.  Given the dysfunction and interruption to the operation of Buckley Towers, there is no other viable option but the appointment of a receiver.

Page **9** of **11**

**WHEREFORE**, Plaintiff, Buckley Towers Condominium, Inc., hereby moves the Court for an Order appointing a receiver to manage all affairs of Buckley Towers including acting as the Board of Directors for the Association, the completion of a full accounting, ensuring the payment of all proper vendors and utilities, collecting assessments from unit owners, ensuring compliance with all applicable building codes and recertification requirements, protecting the condominium property from waste and destruction, ensuring timely monthly payments on the Loan; order the appointed receiver to notify the Buckley Towers membership of his or her appointment within ten (10) days after appointment; order that Defendant, Janvier Villars, and all other members of the Board of Directors turn over all books and records of the Association within five (5) days; order that Defendant, Janvier Villars, not interfere with the duties of the receiver; and grant such other and further relief the Court deems just and proper.

**I CERTIFY** that a copy hereof has been furnished, pursuant to Fla. R. Jud. Admin. 2.516, to the addressees on the attached service list this 23rd day of August, 2021.

> Katzman Chandler
> 6535 Nova Drive, Suite 109
> Davie, FL 33317
> Phone: (954) 486-7774
> Telefax: (954) 486-7782
>
>
> BY: */s/ Justin M. Smith*
> Justin M. Smith, Esq.
> Florida Bar No.: 112738
> Primary email address:  JSmith@KatzmanChandler.com
> Secondary email address: pleadings@katzmanchandler.com



Filing # 133689902 E-Filed 08/30/2021 04:33:15 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2021-017383-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**Buckley Towers Condominium, Inc.**
Plaintiff(s)

vs.

**Janvier Villars**
Defendant(s)

_____/

## ORDER APPOINTING RECEIVER

**THIS CAUSE** having come before the Court on August 24, 2021, on Plaintiff's Motion for
Appointment of Receiver (the "Motion"), and the Court having heard the argument of counsel,
considered the evidence submitted, and being otherwise fully advised on the premises, it is
hereby **ORDERED AND ADJUDGED**:

1. <u>Appointment</u>.  Plaintiff's Motion is GRANTED.  Leigh Hoffman, CPM, as President,
   CEO, and Owner of Alliance Property Systems, whose address is 8751 W.
   Broward Blvd, Suite 400, Plantation, Florida 33324, is appointed the Receiver of
   Buckley Towers Condominium, Inc. ("Buckley Towers" or the "Association"),
   *effective immediately*, and shall have all powers and remedies granted to a
   Condominium Association pursuant to Chapter 718, Florida Statutes, and to have
   full operational authority of and for the Association in order to: Act as a neutral,
   third party with all the power and authority granted to a board of directors pursuant
   to the Association's Declaration of Condominium, the By-Laws, and the Articles of
   Incorporation, and Florida law.Act with such additional power and authority as
   designated by this Order.Preserve and maximize the Association for the benefit of

its membership and all lienholders.Prevent fraud, self-dealing, waste, and mismanagement of the Association, the Association Property, and the Association finances.

2. <u>Notice</u>. Within ten (10) days of the date of this Order, the Receiver shall provide to all members of the Association written notice of his appointment as receiver.

3. <u>Oath</u>.  Within twenty (20) days of the date of this Order, the Receiver shall file with this Court an Oath of Receiver accepting this appointment and agreeing to discharge faithfully the Receiver's duties and subsequent directives of this Court, and applicable law.

4. <u>Bond</u>.  Within twenty (20) days of the date of this Order, the Receiver shall file proof of the existence of a Fidelity Bond in the amount of $10,000.00 to secure the faithful performance of the Receiver's duties.  The cost of the Fidelity Bond shall be a reimbursable expense of the receivership.

5. <u>Inventory and Periodic Reports</u>. The Receiver shall file with the Court: An inventory under oath of the property coming under the Receiver's control or possession, and of which the Receiver is hereby given custody, within forty-five (45) days of the date of this Order; andA Quarterly Report under oath filed every three (3) months which details the bank account balances, lease revenues, assessments made and collected, and the payment of Association expenses.  The initial Quarterly Report shall be filed with the Court within forty-five (45) days from the entry of this Order.__

6. <u>Possession of Receivership Property</u>. The appointment of the Receiver is effective immediately and such receivership shall continue until further Order of this Court. The Receiver shall take possession and control of the Association and its property.  The Association and its representatives, prior board members and agents, whether purported or actual, shall immediately and forthwith turn over all books and records, including without limitation those records the Association maintains as required under section 718.111(12), Florida Statutes, bank accounts

and statements, accounts receivable and payable, contracts, keys, permits, access to Frontsteps or other platform for communication with the membership, passcodes, computers, software, tangible and intangible property, claims, causes of action, and choses in action ("Receivership Property") within the jurisdiction of this Court.  All persons and entities in possession of any Receivership Property shall forthwith surrender possession to the Receiver, immediately, and in no event later than five (5) days from the date of this Order.  The Receiver shall collect rents, issues, assessments, profits, and revenues from the Receivership Property. The Receiver shall have unfettered access and inspection rights to any accounts, records, documents, files, and computer data, equipment, and systems, in any way related to the Receivership Property.

7. Specific Receivership Duties.  The Receiver shall have broad authority to manage, preserve, protect, and maintain the Receivership Property and the Association. Without limiting the Receiver's general duties in any way, the Receiver shall have at least the following specific duties and responsibilities: To conduct an investigation and review of the Association's outstanding bills and expenses and determine the priority of items to be paid.To retain and hire the services of a property management company of the Receiver's choice, which may include Alliance Property Systems.To manage the financial and business affairs of the Association to ensure payment of all legitimate and/or necessary Association expenses, and ensure safe occupancy and operation of the Association.To enter into leases for vacant units and cancel leases for non-owner occupied units that are delinquent in allotted assessments or otherwise in default, and pursue eviction actions, lien foreclosures, and other legal relief as appropriate;To approve or to disapprove any occupancy or the transfer of ownership of any units, and issue corresponding estoppel certificates;To employ legal counsel or other professionals on behalf of the Receiver or the Association as deemed necessary by and in the

sole discretion of the Receiver. To prepare and file with the Court an inventory and periodic reports.

8. <u>Receiver and Professional Fees</u>.  The professional services provided by the Receiver shall be compensated at the following rates:

| | |
|---|---|
| Receiver | $350 per hour |
| Asset Manager | $200 per hour |
| Receivership Portfolio Manager | $175 per hour |
| Senior Property Management | $175 per hour |
| Assistant Property Manager | $75 per hour |
| Senior Accounting | $175 per hour |
| Accounting | $125 per hour |
| Marketing | $125 per hour |
| Maintenance | $50 - $75 per hour |
| General Administrative | $75 per hour |
| Expert Witness Fee | $350 per hour |

In addition to the compensation and fees as set forth above, the Receiver shall be entitled to reimbursement of reasonable out-of-pocket expenses to the extent that same are reasonably and necessarily incurred by the Receiver to carry out the provisions of this Order.

The Receiver is specifically empowered with the discretion to hire and employ legal

counsel, engineers, contractors, accountants, investigators, and consultants ("Outside Professionals") to furnish legal, accounting, and other advice to the Receiver for such purposes as may be reasonable and necessary during the period of receivership. The Receiver and any Outside Professionals shall be paid on a monthly basis. To be paid on a monthly basis, the Receiver must file a statement of account with the Court, to be approved by the Court within ten (10) days of filing.

9. <u>Priority of Payments</u>. The revenues are to be applied by the Receiver with respect to the items set forth below, generally in the following order of priority in a commercially reasonable manner: To the actual reasonable fees and costs of the Receiver, including, without limiting to the generality of the foregoing, or expenses of the Receivership, all as approved by the Court; andTo the reasonable costs and expenses of operating the condominium, including employee salaries and benefits, the costs of supplies, reasonable and necessary repairs, maintenance, utilities, insurance premiums and other similar current operating expenses of the condominium,.

10. <u>Management of the Condominium</u>. Subject to the terms of this Order, the Receiver is empowered and directed to manage the condominium in his broad discretion, including conserving, protecting, maintaining, and repairing the common elements of the condominium as reasonable prudence dictates, providing for the payment of and making arrangements for necessary repairs and proper maintenance of the common elements of the condominium, conducting inspections and, in general, managing the condominium so that it is operated in accordance with generally accepted practices in the area, to enforce contracts and other agreements with respect to the condominium and to compromise disputes regarding the same, such actions to be taken in the Receiver's name in his capacity as the Receiver for the Association. The Receiver shall have all

powers generally and specifically vested in the Association's Board of Directors, plus any special powers hereby granted pursuant to this Order.

11. <u>Professional Management</u>.  The nature of the operations of a condominium requires the services of a professional management company.  The Association currently lacks professional management, and given the immediate needs of the condominium, the Receiver shall have the authority to negotiate a contract with property manager for a commercially reasonable term with a 60-day termination provision, and automatic termination upon the termination of the receivership.   It is understood that many of the Receiver's duties under this Order shall be delegated by the Receiver to the property manager, subject to the Receiver's oversight and the Receiver being ultimately responsible for the management of the condominium as set forth in this Order.  The Court acknowledges that the Receiver is the president, owner, and CEO of Alliance Property Systems; the Receiver is permitted to hire a property management company of which he is affiliated.  The Receiver shall be named an additional insured on all applicable Association insurance policies for the duration of the receivership.

12. <u>Contracts Entered into by the Receiver</u>.  All instruments or contracts executed by the Receiver shall be entered into on behalf of the Association, and shall indicate that the Receiver is acting solely in his capacity as Receiver of Buckley Towers. The Receiver shall not enter into any lease or other agreement for a term of longer than five (5) years.

13. <u>Existing Contracts</u>.  The Receiver is empowered to honor or terminate existing contracts, and to enter into additional contracts, for goods and services reasonably required for the operation of the condominium, to the extent that the Receiver deems appropriate, except as otherwise specifically prevented by the Court.

14. <u>Expenditures</u>.  The Receiver may make expenditures with respect to the

condominium that are necessary or desirable for its operation, maintenance, and repair, and the amount of each such expenditure shall, at the option of the Receiver, be paid out of current operating revenues.  To the extent it is not in violation of any existing loan, banking, or other existing agreement of the Association, the Receiver may open any additional bank accounts deemed prudent, including but not limited to, a separate Receivership Operating Account, a Receivership Reserve Account, a Security Deposit Account, or a Money Market Account, so long as any such accounts are maintained with a bank whose deposits are FDIC insured.

15. <u>Insufficient Revenues</u>.  In the event the revenues are not sufficient to meet monthly operating expenses, the Receiver may, but is not required to, obtain direction from the Court directing the Receiver as to how revenues should be allocated to cover expenses.  Otherwise, the Receiver is granted broad authority to determine, in his own reasonable opinion or upon advice of Outside Professionals, what expenses must be paid first.  The Court acknowledges there are presently many outstanding invoices and bills requiring payment, and hereby charges the Receiver with determining what expenses are immediately crucial to the health, safety, and wellness of the condominium.  In the event of a shortfall, the Receiver bears no personal responsibility for funding the shortfall; however, the Receiver is permitted to levy special assessments against each condominium unit to cover the expenses of the Association and any expenses under this Order..

16. <u>Availability of Records</u>.  Plaintiff and Defendant, and their agents, servants, employees, owners, managers, affiliates, representatives, and assigns shall promptly make available to the Receiver all books and records of account and records of vendor payables (with aging reports), records of receipts and disbursements, ledgers, journals, check registers, check stubs, checkbooks,

statements of operation, and all other accounting records of any kind or description in their possession or under their control relating to the condominium. Plaintiff and Defendant, and their agents, servants, employees, owners, managers, affiliates, representatives, and assigns shall promptly make available to the Receiver all records relating to legal demands made upon the condominium, any pending lawsuits or arbitration matters against or involving the Association, any pending tenant/purchaser applications, and any other outstand requests made upon the Association.  The Receiver shall be entitled to copy any such document at the expense of the Association.

17. <u>Counsel</u>.  The Receiver is empowered to employ independent legal counsel to provide legal advice to the Receiver for such purposes as may be necessary and appropriate during the period of receivership, including but not limited to initiating such legal proceedings reasonably necessary to assist the Receiver in performing his duties.  The Receiver is also specifically empowered to employ legal counsel on behalf of the Association.

18. <u>No Litigation Without Court Permission</u>.   No individual or entity may sue the Receiver for actions taken in his capacity a Receiver without first obtaining the permission of the Court.

19. <u>Additional Receiver Powers</u>.  The Receiver may, at any time upon prior notice to the parties in this action, apply to the Court for further and other instructions or powers, whenever such instructions or powers may be deemed necessary in order to enable the Receiver to perform properly and legally the duties of the office of the Receiver, to maintain, operate, preserve, and protect the Receivership Property and the members and residents of the Association.

20. <u>No Interference with the Receiver</u>.  Plaintiff and Defendant, along with all other unit owners, tenants, prior Board members, current Board members, purported Board members, and any other parties, acting by, through or under any of the

foregoing persons or entities, and those in concert or participation with them who receive notice of this Order, are hereby enjoined from interfering with the operations of the Association by the Receiver and the Receiver's agents and employees.  All parties receiving notice of this Order are hereby notified that the Receiver has the sole, broad authority to act on behalf of the Association; no other person or persons purports to be an officer or agent of the Association shall have any authority to bind or speak on behalf of the Association unless and until this Order is modified stating otherwise, or dissolved or terminated.  The Court retains the right to hold any party on actual notice of this Order in contempt of court for interfering with or hindering the duties of the Receiver.

21. Termination of Receivership.  The receivership established by this Order shall terminate on such date this Court determines that no just reason or cause for the continuation of the receivership shall exist.  At the time the receivership terminates, the Receiver shall cause an election of a new board of directors to occur and deliver all property of the Association to the newly-elected board of directors, as directed by the Court, including, without limitation, all net proceeds generated by the condominium during the receivership (except such funds at the Court determines to be necessary to wind up the receivership), and all books and records of account, records of receipts and disbursements, ledgers, journals, check registers, check stubs, checkbooks, statement of operation, and all other accounting records of any kind or description relating to the income and receipts and expenditures relating to the condominium.  The Receiver shall turn over all other documents and contracts constituting the official books and records of the Association.

22. Final Accounting.  Within thirty (30) days following the termination of the receivership, the Receiver shall submit his final accounting for approval by the Court and, upon approval thereof, the Receiver may be discharged from office

and his bond cancelled.

23. <u>Cooperation and Assistance</u>.  The offices, board members (whether disputed or undisputed), agents, employees, contractors, servants, and attorneys of the Association and those in active concert or participation with them who receive actual notice of this Order, shall cooperate and assist in the turnover of the Receivership Property.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>30th day of August, 2021</u>.



<u>2021-017383-CA-01 08-30-2021 4:17 PM</u>

Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**

Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**

Guy M Shir, sue@shirlawgroup.com

Guy M Shir, gshir@shirlawgroup.com

Guy M Shir, office@shirlawgroup.com

Justin Michael Smith, Pleadings@KatzmanChandler.com

Justin Michael Smith, JSmith@KatzmanChandler.com

Leigh Hoffman, lhoffman@allpropsys.net

Patrick Dervishi, pdervishi@shirlawgroup.com

Patrick Dervishi, Office@shirlawgroup.com

Patrick Dervishi, sue@shirlawgroup.com

**Physically Served:**

# EXHIBIT
# X3

# SLAPP Cause - Court Contempt Sanctions

Filing # 144966468 E-Filed 03/03/2022 09:27:21 AM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2021-017383-CA-01</u>
SECTION: <u>CA04</u>
JUDGE: <u>Carlos Guzman</u>

**Buckley Towers Condominium, Inc.**
Plaintiff(s)

vs.

**Janvier Villars**
Defendant(s)

_____/

## <u>ORDER OF CIVIL CONTEMPT</u>

THIS CAUSE came before the Court on the March 1, 2022, on the Court's February 24, 2022, Order Granting Receiver's Motion for Order to Show Cause, and the Court, having reviewed the file, the motion papers, taken evidence, and heard argument, orders:

The Court finds by clear and convincing evidence that Janvier Villars has violated the Court's orders in this matter and has interfered with the execution of the duties of the Court-Appointed Receiver. Specifically,

1. The Court finds that Mr. Villars refused to comply with the Court's October 8, 2021, Order Appointing Successor Receiver and prohibiting, *inter alia*, Mr. Villars from interfering with the operations of the Association by the Receiver.

2. The Court's October 8, 2021, Order Appointing Successor Receiver is clear and its requirements are understood by Mr. Villars.

3. The Court further finds that Janvier Villars has the ability to comply with the Court's order.

4. Janvier Villars, has orchestrated a disinformation campaign to interfere with the duties of the Receiver by, including but not limited to: (i) distributing emails to tenants and unit owners alleging fraudulent practices on behalf of the Receiver, (ii) distributing pamphlets, websites, and other materials designed to interfere with the Receiver, (iii) encouraging unit owners to make multiple redundant requests for information, (iv) rallying unit owners to refuse to pay the special assessment and/or to provide documents (which Mr. Villars disseminated) attempting to limit the Receiver's abilities to collect payments for the special assessment, and encouraging residents to place conditions on the Receivership related to the special assessment, and (v) otherwise providing false information designed to interfere with the Receiver and increase the costs to the Association.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Court finds that Janvier Villars is in contempt of court for failure to comply with the Court's Order Appointing Successor Receiver issued on October 8, 2021.

2. Janvier Villars may purge this contempt by doing all of the following: Ceasing and desisting from verbally, in writing, or by electronic means communicating with unit owners, residents, agents of the Association, or any party of interest in any way which would inhibit the execution of the Receiver's duties and/or the business of Buckley Towers Condominium Inc.;Deactivating PowerInUnion.com, within five (5) days of this order; Removing, deactivating, and ceasing to utilize any other similar websites, social media accounts, or internet locations intended to inhibit the execution of the Receiver's duties, and refraining from creating any similar device intended to inhibit the execution of the Receiver's duties;Refraining from holding rallies targeted at inhibiting the execution of the Receiver's duties;Refraining from purporting to act as a member of the Board of Directors of Buckley Towers

Condominium Inc. until further order of the Court; andReimbursing the Receiver for a portion of the expenses, including reasonable attorney's fees, incurred in bringing the February 3, 2022, motion for order to show cause in the amount of $6,500.00, consistent with his ability to pay such reasonable fees.  Mr. Villars shall remit payment within 10 days of the date of this order to Buckley Towers Condominium Inc., c/o Russell Landy, Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>3rd day of March, 2022</u>.

<u>2021-017383-CA-01 03-03-2022 9:20 AM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Chad J. Tamaroff, chad.tamaroff@gmlaw.com
Chad J. Tamaroff, agatha.mctier@gmlaw.com
Guy M Shir, sue@shirlawgroup.com
Guy M Shir, gshir@shirlawgroup.com
Guy M Shir, office@shirlawgroup.com
Janvier Villars Villars, janvier269@gmail.com
Janvier Villars Villars, janvier269@gmail.com
Janvier Villars Villars, janvier269@gmail.com
Justin Michael Smith, Pleadings@KatzmanChandler.com

EXHIBIT
X4

Motion for
Disqualification
of Judge Carlos
Guzman

Filing # 145920817 E-Filed 03/17/2022 02:26:35 PM

IN THE CIRCUIT COURT FOR THE 11TH

JUDICIAL CIRCUIT IN AND FOR

MIAMI-DADE, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.

A Private Non-Profit Corporation and Association

Plaintiff,                                    CASE NO: 2021-017383-CA-01

JANVIER VILLARS

Duly Elected President of Buckley Towers

Defendant

_____/

### Mr. VILLARS' AMENDED MOTION for STAY on the ORDER OF CONTEMPT
**Under RULE 9.310. STAY PENDING REVIEW – per Fla.R.Civ.Pro. 1.190(a)(b) &(c)**
Hereby Notifying this Court of his Intent to Appeal the Order
in Federal Court for Violation of Constitutional Rights under 42 USC §1983 and §1985

### MOTION TO DISQUALIFY JUDGE CARLOS GUZMAN
### FOR LACKING JURISDICTION,  PREJUDICIAL CONDUCT AND
### In Violation of FS 760.37 and 42 U.S. Code § 3617
The claims here asserted are under oath and shall serve as facts of wrongful conduct.

**Comedian** Geroge Carlin best described this Contempt Order; covert **S**trategic **L**egal **A**nti-**P**ublic **P**articipation **cause.** *"When [Mr. Villars] claimed, 'I have a right to my opinion "* the Judge replied, *"I also have a right to my opinion, and my opinion is that you have no right to your opinion."*

<u>**Mr. VILLARS' MOTION for STAY on the ORDER OF CONTEMPT**</u>
**Pursuant to RULE 9.310. STAY PENDING REVIEW**
Mr. Villars moves the court to Stay the Order of Contempt & its Cease and Desist effects.
Hereby Notifying this Court of his Intent to Appeal the Order
in Federal Court for Violation of Constitutional Rights, 42 USC §1983 and §1985

## I.   <u>Procedural and Factual Background</u>

**After the Initial Injunction Complaint, The Subsequent Pleading for Receivership**
was ruled immediately. Without affording any of the 500+ property owners Due Process.
Despite that, it was not scheduled to be heard on the August 24, 2021, hearing, nor
afforded Sufficient Process. As it was <u>filed less than 24 hrs before the hearing</u>. This court
ruled in favor, **by Court Order → to 'table temporarily' the litigation of the Complaint's
merits**. Thereby, obstructing the Affirmative Defense under 1.080(a)insuficiency of process.

Then concurring with the Plaintiff and its Receiver's misapplication of legal doctrines
and case laws.  The Court consented that, (1) the Receivership Order serves now as a res
judicata. As chanted, on every subsequent hearing,[1] *"the judge has made his decision."* To
preclude the litigation of the merits.  (2) Then, to officially bar all future pleads for litigation,
the Judge granted his Receiver's Order for Stay. <u>To also Moot </u>the litigation on Mr. Villars
pending conversion, intrusion to privacy issues, and Jurisdictional Challenge.

Thereby, Judicially denying Mr. Villars' Due Process. Despite FS 90.501 procedural
restrictions, "<u>**no person** </u>**in a legal proceeding has a privilege to** (2)Refuse to disclose
any matter. (3) Refuse to produce any object or writing." As well as, 28 U.S. Code **§ 2072 -
Rules of procedure and evidence,** "(b) Such rules shall not abridge, enlarge or modify
any substantive right. All laws in conflict with such rules shall be of no further force or
effect after such rules have taken effect."

In Fact, executing a Judicially conspired intrinsic fraud on the Court.  At barring Mr.
Villars affirmative defenses under Rule 1.140(2)(b) of lack of sufficiency of Process, and
Service of Process. Denying him of his right to litigate fundamental facts. Because his facts
prove that the Plaintiff lacked standing, injury-in-fact, and intended fraud on the court

---

[1] 9/22/21 Emergency Motion To Compel Sanctions And For Contempt Against Defendant, **2/18/22** Receiver
Motion for Stay [while refusing to include Mr. Villars pleaded hearing for Show Cause], 2/7/22 The Judge
Granted the Order for Stay. Then, Hearing set for 3/1/22 by Mr. Villars pleading for Declaratory Judgment on
the Receivership Order. DJ was denied and ONLY the Receiver Show Cause was permitted by the Judge.

constructed by Katzman Chandler P.A.

→ Whereby <u>adjudicating these facts leaves the court wanting of jurisdiction ab initio</u>.

## <u>Proof of "Wanton disregard for life and property" per FS617.0834</u>

Was made concrete by the Wrongful Conduct acts. Intended, by the 'Plaintiff', (actually ex-directors: "the mob" ) to interfer with the Association operations. At freezing the Association payments to its services providers. To create chaos. To justify the Receivership.

The mob contacted the Association providers and the bank[2]. Alleging that they've legally replaced Mr. Villars. Officially declaring they were holding the authority over the Association, <u>as of June 22, 2021</u>.  The day after the mob voted out Mr. Villars. See ECF 2 pg. 152 'Minutes'.  Despite that neither the Association bylaws nor the state laws provide for the removal of a director, duly elected by the membership, to be removed by nine ex-directors (9 of 500) members. That is, other than by Recall of 51% of the membership agreement or for intentional fiduciary violations and for self-serving acts.

Nonetheless, the mob, to usurp the Association authority, broke into the Adminsitration office and changed the lock. In the middle of the night. Then, instigated a hate group to attack constantly Mr. Villars and Ms. Gringberg. For many following days. Slandering them; claiming that Mr. Villars and Ms. Gringberg were committing illegal acts and possibly defrauding the association of funds. Then, this mob leader changed the Association official records in Sunbiz.org, as of July 2021, several times. In violation of FS817.535. With the help of their law firm Katzman Chandler P.A..

**But for** Ms. Mariluce, the mob leader, communication with the bank[3]; to have the Association accounts frozen. City National Bank of Florida (CNB) wouldn't have filed the interpleader suit against the Association named: *City National Bank of Florida v. Buckley Towers Condominium, Inc., Case No. 2021-018531-CA-01.* Which caused the bank fiasco. Which caused, on the Members to suffer, for almost three months, of no upkeep services.

Ms. Mariluce and her mob disregarded the harm to be caused on the 500+ property owners. Thereby breaching contract and their fiduciary duty. Causing irreparable harm to the Association operations, and it's Commercial Relationship with the service providers.

---

[2] See Exhibit A - Letter and Email from City National Bank dated July 31, 2021
[3] See Exhibit B - Email from Mrs. Mariluce de Souza to City National Bank dated June 30, 2021

Which pursuant to FS617.0834, and the bylaws, also disqualify them as directors for willfully violating loyalty and care, for self-serving purposes. ← Thus precluding legal standing.

On August 30, 2021, the court ruled appointing the person that this mob brought to the hearing for the Judge to appoint as Receiver→ immediately.

Then, on October 8, 2021, the Court changed the Receiver Order appointing Mr. Albani. Again without affording any of the 500+ owners' Due Process. While vesting the Receivers with unconstitutional powers to deprive every owner of liberty and property; of privacy, freedom of expression, assembly, and petition (cause at bar as prima facie). So, without having consent from the actual title holders, coerced in an unvoluntary servitude.

**Whereby court Discretion ALONE**, a State Representative has absolute authority to breach the Association contractual privileges and immunities and Constitutional Rights.

**Fruit of a Court swindled**. Contended to be, *"temporary for 45-days" "to get a report for the court"*. Objected by Mr. Villars prior to its recording[4]. Yet, Ordered to be *" [e]ffective immediately and …shall continue until further Order of this Court."* ECF 38 filed 10/8/21

*"[f]inding that a party who engages in serious misconduct forfeits the right to participate in the proceedings, including the right to defend against opposing party's claims." Metro Dade Cty. v. Martisen, 736 So.2d 794, 795 (Fla.3d DCA 1999)*

## II.     Then Without legal foundation, the Judge Moots pending Legal Issues and Relief.
### To block Mr. Villars' Jurisdictional Challenge on this Court.

The Receiver, acting on behalf of the State of Florida, by this court appointment, procured yet another oppressive Order for Stay on February 7, 2022 ( 2/7/22 ). Thereby Judicially asserting, that the swindled Receivership dissolves all of Mr. Villars' pending reliefs; including for Declaratory relief, and the Jurisdictional Challenge. To impede Mr. Villars from addressing the validity of their claims (see Sibron v. New York, 392 U.S. 40, 55 (1968) quoting United States v. Morgan 346 U.S. 502, 512-13 (1954)). The same claims that this court used to destitute him immediately from his Presidency, and to place the Receivers without affording due process. Thus, Judicially inducing him to accept, **he has no Equal Right of Due Process.** On any of his asserted legal issues and

---

[4] ECF 21 Aug. 30, 2030 Objection to To Proposed Order By "Rogue" Group.

pleaded relief. Which, he filed prior to the Order to Stay. Inter alia, **ECF** (21) Objection To Proposed Order filed BEFORE the Court Order for Receivership.(22) Motion to Dismiss filed 9/9/22 (49) Motion to set aside Order filed 10/21/21 (50) Motion for Order to Show Cause filed 10/21/21 (60) Motion for Judgment on the Pleadings as a Matter of Law 11/10/21. (70) Claims opposing Motion for Stay 12/31/21 (75) Motion to Show Cause 10/21/21 (79) Motion To Compel Receiver To Show Cause Filed 10/21/21 Motion For Jury Trial 2/5/22.

Nonetheless, the Receiver and the Judge, now acting as an interested party, are combating Mr. Villars in court. Contending they have extraordinary authorities of Agency Deference* under the 'inherited equitable power' and 'broad discretion' court DOCTRINES. To disregard the Moot Law limitations specifically subscribed by the Supreme Courts. To freely deprive the owners of Constitutional Due Process rights. *See Fla.Const.Art. V §21.

→ Exposing, in Fact: how their Judicial swindles <u>are indeed</u> *'capable of repetition, yet evading review'* common State Court practices.

### The Receivership team concluded their 'good Cause' contentions, with the ambiguous *'for the best interest of the Court and the Association...' Doctrine*.

Concluding, on their Motion for Stay; as their Best <u>Equitable</u> Solution, that it is, "not *in the best interest of the Association* to engage in expensive litigation." ECF 69 Pg.3. While they, willfully suppress → in Equity - the → less fiscally demanding, non-oppressive, and non-confiscating: Actual equitable solution of a Declaratory Relief.

BUT FOR, the lower courts broad 'discretion to deny' the Supreme Court intentions for Declaratory Reliefs. Which, Pursuant to FS86.011, is to immediately and without further cost on the Association or on the Courts "declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." over "(1) any immunity, power, privilege, or right." Thereby resolving logically and legally the Association authority disputes. Saving the 550+ owners from the unnecessary and unjustified financial hardship, imposed by this court Receivership.

During an unpresidented 7.9% inflation rate and rising.

Referring to Mr. Villars' proffered Supreme Court Equitable Estoppel, known as the Kaufman Supra (ECF 17 pg. 11 Pgph E). Filed on 8/18/2021, four days before the Receivership Order. Which prohibits the retroactive impairment of Association vested

Privileges and Immunity. When this Association declaration lacks the clause *"as amended from time to time"*. See  *Susan Cohn v. The Grand Condo* NC10-430 ECF 76.

Whereby FS90.105, the Court also had the duty to Judicially Notice "the existence of a privilege or the admissibility of evidence" within the Association bylaws, and "shall [have] admit[ed] the proffered evidence when there is prima facie evidence sufficient to support a finding of the preliminary fact,". Such as the mob directors self-inflicted "automatic disqualification" by operation of the Bylaws. For missing three board meetings; thus intentionally breaching contractual duties, for their self serving interests in the Association.

This is Material Evidence. Suppressed by this court, as of Aug. 19, 2021. Because it also → nullifies ab initio the mob's legal claim to remove Mr. Villars, based on **FS718**.112(2)(d)(2) *90-days-debt disqualification* clause. Thereby voiding their alleged authority to represent the Association in court, or to petition for a Receiver on behalf of 500+ owners. Conclusively leaving the court without Jurisdiction ab initio.

"[when] evidence has been suppressed, concealed, or falsified" is a claim of intrinsic fraud; Buesa v. City of Los Angeles (2009) 177 Cal.App.4th 1537, 1546., Kachig v. Boothe (1971) 22 Cal.App.3d 626, 634   "In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause." Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946) as stated in Black's Law Dictionary 595 (rev. 5th ed. 1979).

### III.     IN EQUITY and without causing harm, on any Adverse PARTIES.
### Because neither the mob nor the Receiver can prove
### a legal or equitable right or privilege to deprive Mr. Villars
### of his authority vested by law or contract.

**It's rather a Fraud on the Court**, committed by every person conspiring and assisting the furtherance of this vexatious lawsuit.

Whereby the preponderance of evidence, Mr. Villars has proven as a matter of fact, and law, that the mob lacked injury-in-fact, legal standing to represent Buckley Towers Condominium as Plaintiff, and willfully defrauded the court, concealing material evidence.

Yet, this Court afforded them their pleaded Equitable Relief of a Receivership Order. Whereby the Wrongful Conduct Act Doctrine, the court should've barred the wrongdoers from litigating, and should have denied their equitable relief for causing their own Receivership claims. **But instead, the Judge continues aiding and abetting them**. By denying Mr. Villars litigation of the aforementioned merits. To avoid ruling Mr. Villars claims

as undisputable Facts. Thereby, willfully discarding Florida Rules, Statutory laws, jurisprudence, and Due Process rights. To avoid recognizing that this Court Lacks Jurisdiction over the Subject Matter and over every adverse Party.

→ Thus, proving the Judge has a conflict of interest in this case.

Fla.R.Civ.Pro. 1.1540 and 28a U.S. Code Rule 60. **Relief from Judgment or Order** (b)Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding **for: (3) fraud, misrepresentation, or misconduct by an opposing party;**

## IV.    Mr. Villars was Held In Contempt of the Court Receivership Order
### Receivership Order that the Law of Void Judgment Disqualifies ab initio.
For Failure to afford Due Process and for discarding Rule of Evidence 90.201 (1) DECISIONS, LAWS, RULES... , and the Overbreadth Doctrine.
And for Violating FS 760.37, 42 U.S. Code § 3617

This is a court order of Contempt against Mr. Villars without the Court Receiver having to prove an injury-in-fact. Rather, because a citizen of the state is exercising Constitutional Rights against the State Court oppressive orders. For Standing against the deceitfully confiscated powers over the Association Members' Life, Liberty, and Property.

**Despite that: this Court lacks jurisdiction, lacks proof of a crime or danger to life or property; it is Judicially prohibiting owners from exercising 1st Amendment Rights.** Punishing owners for speaking with fellow members on this illegal taking, for assembling with his community[5] in their privately owned common areas; for petitioning for government grievance[6], and for Mitigating the harm caused. By providing them with an opportunity to exercise their contractual privileges[7] and immunities[8], regardless the State they live in.

Making this Court Contempt Order a prima facie Strategic Legal Against Public Participation (SLAPP) FS718.1224. Which in itself is another 1st Amendment constitutional and FS 760.37 violation. Because it runs afoul to Public Interests. **Basically A SLAPP on the injured parties.** Caused to extend this Under Color of Law oppressive and intimidating

---

[5] Proof of Assembling without causing obstruction whatsoever.  ECF 75 pg. 7 to 13
[6] Proof of Petition for Government Grievance ECF 75 pg. 14
[7] The Association Bylaws Amendendment provides for a Right to Vote on any new obligation over $50K.
[8] Of Self-governance: To decide how they want to resolve their Association fiscal issues. Pg. 18

authority over the 500+ socioeconomic deficient class of property owners. And to completely silence Mr. Villars opposition of this Court swindle Receivership.

### 718.1224 Prohibition Against SLAPP suits reads:

"**(2) A governmental entity, business organization,** or individual in this state **may not file** or cause to be filed **through its** employees or **agents any** lawsuit, **cause of action,** claim, cross-claim, or counterclaim **against a condominium unit owner without merit and solely because such condominium unit owner has exercised the right to instruct his or her representatives or the right to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution."**

**The Receivership Order reads,** See ECF 38 10/8/21

"THIS **CAUSE** having come before the Court, and the Court having heard the argument of counsel, **considered the evidence → submitted,** and being otherwise fully advised on the premises, it is hereby **ORDERED AND ADJUDGED:**

**Transferring private property to Third Party under color of law - without due process**

"[t]o have the full operational authority of and for the Association"

→ "[t]o: act as a neutral, third party"

"[w]ith all the power and authority granted to a board of directors pursuant to the Association's Declaration of Condominium, the By-Laws, and the Articles of Incorporation, and Florida law; Act with such additional power and authority as designated by this Order."

"[AS] Possession of Receivership Property. The appointment of the Receiver is effective immediately and such receivership shall continue until further Order of this Court."

**THAT IS:** Indefinitely. Not affording the adverse parties a right or procedure to reverse it.

"The Receiver shall take possession and control of the Association and its property."

**Where the Cease and Desist Order:**  ECF99:

**Deprives Freedom of Expression:**

At demanding for Mr. Villars "Ceasing and desisting from Verbally, in writing, or by electronic means communicating with unit owners, agents of the Association, or any party of interest in ANY WAY" that they consider obstruction of the Receiver's absolute authority.

**Deprived of Freedom of Press for Public Interest and interstate commerce:**

"Deactivating www.PowerinUnion.com, within (5) days of this order; Removing, deactivating and ceasing to utilize any other similar websites, social media accounts, or internet locations" Thereby Judicially taking Mr. Villars economic support from interstate members. Impeding their right to defend their property investments by the means provided in this website.

**Deprived of Freedom of Assembly and Petition:** "Refrain from holding rallies"

**Extorted under Color of Law:** "Reimbursing the Receiver for 'a portion' of the expenses, including reasonable attorney's fees, incurred in bringing the February 3, 2022 motion for order to show cause in the amount of $6500... within 10 days of the order."

"The Court retains the right to hold any party on actual notice of this Order in contempt of court for interfering with or hindering the duties of the Receiver."

**Florida Civil Rights Act 760.37 Interference, coercion, or intimidation; enforcement by administrative or civil action.**—It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37. administrative or civil action."

**42 U.S. Code § 3617.** Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Where "It is a fundamental doctrine of law that a party [500+ owners] to be affected by a personal judgment must have his day in court, and an opportunity to be heard. _Renaud v. Abbott_, 116 US 277, 29 L Ed 629, 6 S Ct 1194. "Every person   is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests before he is affected by any judicial decision on the question." _Earle v McVeigh_, 91 US 503, 23 L Ed 398. "Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties, _Wahl v. Round Valley Bank_, 38 Ariz. 411, 300 P. 955 (1931); _Tube City Mining & Milling Co. v. Otterson_, 16 Ariz. 305, 146 P. 203 (1914); and _Milliken v. Meyer_, 311 U.S. 457, 61 S.Ct. 339, 85 2d 278 (1940).

**V.    Particularly addressing the 'neutral' Receiver's Motion for STAY over UNlitigated Merits.   Not intending to challenge it again, but to expose the Conspiracy against Mr. Villars.**

At Lawyers, deputies of the court, Lacking any concrete evidence against Mr. Villars of any wrong conduct whatsoever; nor having any proof of the Association in any danger of fraud, illegal sales or embezzlement, or at imminent risk of life or property, moved the court for a Stay. To bar Mr. Villars from proving this case: as a **Judicial abuse of process**.

Having no state or federal law that justifies the illegal taking of private property without due process.  The Receivership team cited, *REWJB Gas Invs. v. Land O'Sun Realty*, 643 So.2d 1107, 1108 (Fla.4th DCA 1994) in support of the judge's broad discretion. To moot Mr. Villars litigation of his merits. Intentionally misrepresenting the legal basis of the REWJB case discretion. That is, "Trial courts have broad discretion in granting or denying stays of subsequently-filed actions." Whereas, their Stay, is to bar the litigation of this case merits.

**The Receiver team Recorded in Court as THEIR facts for 'good cause' to Stay.**

Their best Legal Recommendation = mostly based on the *mob's claims*. Asserting them, as a matter of fact; while having the court deny the litigation of those ⟍ *mob's claims*. Legally contending by Suppressin the preponderance of evidence recorded by Mr. Villars. That, NOW, also goes to prove the Receiver's bad-faith- under-color-of-law scheme.

**These are Under Color of Law attorneys, fabricating facts. To Induce submission of Constitutional and Property Interest. To deprive a litigant's right to defend his case.**

That is "impeding, hindering, obstruction or defeating, in any manner, the due course of justice" "[o]r from testifying to any matter pending therein, freely, fully, and truthfully" "intent[ed] to deny any citizen the equal protection of the laws," or "to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws" so "[t]o influence the verdict",
→ Under Color of Law fraudulent inducement. See 42 USC §1985(2) **Obstructing Justice.**

Among the mob statements, the Receiver reasserted as their 'good cause' facts; claims that Mr. Villars, *(1)*"[u]nilaterally seized control of the Association's management office" *(2)* "Sized control over the collections and crediting of assessments" *(3)* "refused to provide copies of unit ledgers to the members of the association" *(4)*"prevented other board members in good standing from viewing the Association's financial records".

*(1)(2)* FACTS: Mr. Villars established the electronic vote on the Association. To end the Dictatorship practices in Boards. To facilitate owners' right to vote. Regardless of where they are in the world.  In addition, the Association records prove that Mr. Villars

constantly invited the directors and the membership to the administration[9]. Asking everyone to come help resolve the inherited issues. Creating 12 Committees, including the Covenants and Laws Compliance Committee[10]. To serve as the Check and Balance. But the mob refused to participate. Even when the President requested from then Vice-Presidents.

Evidence of this has been available to the Receiver as of day one. Undisputable video and documents proving Mr. Villars worked side by side with the Treasurer Ms. Libe Gringber, and Directors: Mr. Sayed Movla, Ms. Rosa Vicente, Ms. Rebecca Ross, Mr. Andres Jorratt, and Ms. Carmen Gomez. Facts that are proven by Association payments cosigned by Ms. Gringberg, Zoom Board Meeting with their participation and the approval of rental and purchases of units managed and signed by Ms. Ross or Ms. Vicente.

(3) FACTS: Mr. Villars and the Treasurer explained to the membership, in writing, and in the board meetings, that the inherited accounting was a complete mess and unreliable. Which the Receiver reaffirmed in his report and motions. As the reason for him not providing the account standings to every owner in the first months. To avoid collecting false debts or waiving a right to collect on a debt improperly maintained by the DBPR Licensed professional management and accounting companies. Yet, the Receiver reasserted Mr. Villars' diligence and caution in bad faith, to humiliate him and to deem him unworthy of being the elected President. Before reasserting the Bank suit as innuendo.

(4) FACT: All the directors were provided with direct access to the Association Bank accounts link. Which they needed to privately register with the bank to have full access to the Association bank accounts. Not just the reports but to the actual activity of the Association accounts. Yet, from the mob, only Ms. Norma Torres decided to log[11].

Nevertheless, the Receiver used those mob's false statements, to imply fault or negligence on Mr. Villars. To incriminate him on the Bank lawsuit against the Association. As if it was caused, not by the mob misrepresentation of authority over the Association and wrongful conduct acts; → but for Mr. Villars refusing to submit to the mob's extortion. Whereat concealing the mobs' extortion against Mr. Villars, proves the lack of 'neutrality'.

This 'neutral' Receiver team used the herein proven false claims; <u>while concealing substantial evidence that invalidates their fabricated 'facts' claimed as 'good cause'</u>.

---

[9] See Exhibit C - Email to Directors and Members interested in daily reports from the Admnisitration.
[10] See Exhibit D - Committee Commitment Signup Form created and distributed by President Janvier Villars.
[11] See Exhibit E - Email from City National to Libe Gringber, Treasurer of Buckley Towers.

(1)Using the Undue Influence of Color of Law.  (2) To place in bad-light Mr. Villars. As underserving of enjoyment of his privacy free from intrusion and private property interests as vested privilege, in the bylaws. (3) Thereby damaging his reputation; disgracing him in his community. By inducing distrust from the people that elected him. (4)Using the court proceedings to  get an Order for Stay for ulterior motives. (5) To DENY him of all pending pleads for relief and of ruling over his substantial issues. (6) Thus, Fraudulently Constructing a Judicial Order. (7)To enforce Under Color of Law Intrinsic fraud against Mr. Villars and his Association Membership.

> "It's important to note that Ulterior motive or purpose required in an abuse of process can be in the form of a coercion to obtain a collateral advantage that is not properly involved in the proceeding." <u>Nienstedt v. Wetzel</u> 133 Ariz. 348 (Ariz. Ct.App.1982)

## **VI.   Whereby Procedural Law:**

A MOOT Can NOT be maintained; **Whereby the Receveirship PRE-Deprivation** of 500+ owners' privacy, U.S.Const. rights, privileges, and immunities Relief remain in controversy. The case on point would be <u>*Korematsu v. U.S.*</u> Whereby the State's interest improperly outweighed the Life, Liberty, and Property of hundreds of thousands of innocent citizens. As that class of citizens was also considered unworthy of Constitutional freedoms and rights. Immediately Deprived of thier → "Guaranteed 'Equal' Protection Under the Law".

> "*A case is moot when: it presents* **<u>NO actual controversy</u>** *or When the issue ceased to exist.*" <u>Synergy Contr. Grp</u>., Inc. v. Fednat Ins. Co.(Fla.2d DCA 2021), citing Godwin v. State, 593 So.2d 211, 212(Fla. 1992). "So long as concrete, adverse legal interests between the parties continue, a case is not made moot by intervening actions that cast doubt on the practical enforceability of a final judicial order." <u>Chafin v. Chafin</u>, 568 U.S. No. 11-1347, slip op. (2013)

### Under RULE 1.550. EXECUTIONS AND FINAL PROCESS

**(b) Stay.** The court <u>before which an execution or other process</u> **based on a <u>final judgment</u>** is returnable may stay such execution or other process and suspend proceedings thereon for 'good cause' **on motion and notice to** → <u>ALL ADVERSE PARTIES</u> ←

### Under Federal Rule of Civil Procedure 26(c),

A "[c]ourt may stay discovery for 'good cause.'" Fujita v. U.S., 416 Fed. Appx. 400, 402 (5th Cir. 2011). See also, U.S. ex rel. Gonzalez v. Fresenius Medical Care North America, 571 F.Supp.2d 766, 767 (W.D. Tex. 2008) ("A district court has the discretion to stay discovery 'for good

cause shown.' → Good cause may exist when the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay.") → "The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements." U.S. v. Garrett, 571 F.2d 1323, n. 3 (5th Cir. 1978). **NOTE:** Prima facie Merits of Law and Facts are not considered discovery.

→ *Where 'adverse party' means:*

*"When dealing with a preliminary injunction [complaint], the `adverse party' means the party adversely affected by the injunction, not the opponent in the underlying action." Parker v. Ryan, 960 F.2d 543, 545 (5th Cir.1992). B. The Ungars' interest in the forfeitable assets. Also citing Washington V. Fishing Vessel Assn  U.S. Supreme Court. (July 2, 1978)*

**THEREFORE:**

*Mr. Villars pleads for the reliefs listed in page 19 in subsequent specified order.*

---

## MOTION TO DISQUALIFY JUDGE CARLOS GUZMAN
### For having Conflict of Interest in the Case - at having Personal Liability
### When Acting Under Color of Law Without Having Jurisdiction

**28 U.S. Code § 455** - Disqualification of justice, judge, or magistrate judge:

(a)Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)**He shall also disqualify himself in the following circumstances:

(1)Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(5)(iii)Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

**(d)**(4)"financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party.

**(e)** No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b)..., a waiver may

be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

To deny these disqualification averments, the Judge must do so pursuant to Rule 1.110(c) "Denial shall fairly meet the substance of the averments denied". Under Rule 1.120(c) "A denial of performance or occurrence shall be made specifically and with particularity." Thus, the Judge must provide more than conclusions of laws from other cases. He must address the merits at bar, including the court's lack of jurisdiction, obstruction of due process, pre-deprivation of privileges and immunities on all adverse parties, the suppression of litigation over the merits, and of the willful disregard to Supreme Court Decisions, Equitable Relief.

"Due Process Clause protects not only against express judicial improprieties but also against conduct that threatens the 'appearance of justice'" *Aetna Life Ins. Co.*, 475 U.S. at 825, 106 S.C.Ct. 1580. Where it is well settled in the Florida Eleventh Circuit Courts, "conclusion of law unsupported by allegations of ultimate fact is legally insufficient." *Cady v. Chevy Chase Savings and Loan, Inc.*, 528 So 2d 136(Fla. 4th DCA 1988).

Whereby this court swindle Receivership Order *"temporarily for 45-60-days" "To get a report"*; a suspect class of socioeconomically-handicap citizens is judicially coerced into an indefinite servitude and peonage. Procured by obstructing their right of Due Process and then by misapplying legal doctrines to deprive the litigation of such swindle. Here disguised as a Receivership *'in equity'* and of course with the ambiguous, *'for the best interest of the Association'* Doctrine.  See *People v. Fielden, 162 Colo. 574* (Colo. 1967)

Thereby immediately depriving of Liberty and Property interest. Knowingly, this class cannot afford an attorney to appeal the Judge's decision, any time soon. So, he is free to vest any third party with an absolute discretionary power over them. To coerce any amount of payments against them. Using the undue influence of the court. To threaten them into surrendering or be subject to Court Sanctions or at the peril of having their homestead foreclosed by his Receiver. Using the Undue influence of Color of Law intimidating and prohibiting these Victims from challenging his intentions. Thereby wantonly infringing Constitutional Rights and impairing specifically recorded contractual

terms, obligations, and immunities. Which this class was enjoying before the Judge permitted the mob to misrepresent their Association.

"The essence of a conversion is not the acquisition of property but the wrongful deprivation of that property from its true owners." *Yaeger v. Magna Corp.* (In re Magna Corp.), 2005 *Bnkr. LEXIS* 1114 (*Bankr. M.D.N.C.* Mar. 14, 2005).

"It follows, therefore, that mistake, good faith, and due care are ordinarily immaterial and cannot be defenses in an action for conversion." Taylor v. Forte Hotels Int'l, 235 Cal. App.3d 1119(Cal. App.4th Dist. 1991).

Here neither the opposing party nor the court can provide a Legitimate legal or contractual reason to take private property or private citizens' income without due process.

---

**In Prima Facie, the STATE is Judicially Declaring:**

"A litigant can 'get' a judge to provide <u>any relief,</u> discarding the Rule of Law, hundreds of years of jurisprudence, and all Constitutional protections; by 'tabling' or 'mooting' i n d e f i n i t e l y the litigation of the merits. Simply by using the court inherited broad discretion Doctrines."

---

## AFFIDAVIT BY MR. JANVIER VILLARS

Honorable Judge Carlos Guzman, unless you can respond substantially to your conduct against me, I sincerely fear that I will never have a fair trial in this State Court.

Your biased judicial procedures only provide further distrust in the integrity of these courts. I honestly believe your conduct proves to have been, from the beginning, supportive of the mob's and Katzman Chandler's interests. But to be fair to the rest of the adverse 500+ owners, it would be prudent to read directly from you your reasoning:

1.    Please Provide the actual law or equitable power you had to take privacy and property interests without first affording due process to ALL adverse parties.

2.    Please Provide the jurisprudence that supports the ongoing refusal to address the Jurisdictional challenge.

3.    Please Provide the FACT or LAW ( not the conclusion of other cases circumstances) of how a vexatious lawsuit; filed by the wrongdoers, who lack legal or

equity standing  + lack injury-in-fact +  yet assisted by a law firm to conceal fundamental facts, provides the Judge jurisdiction to grant their equitable relief of a Receiver.

4.   Would you please state for the record whether Mr. Villars is correct or incorrect that: this Receivership Order was procured by the Judge contending, it was going to be "temporary for 45 or 60 days" "to get a report for the court".

5.   Please Provide proof where the mob complied with Fla.R.Civ.Pro. 1.140(h), for the Judge to rule on their Subsequent Pleading- Immediately- just 24 hours of being filed.

6.   Please provide the law that affords the Judge' 'Sound Decision' to refuse FS90.105, 201, and 203 Judicial Notices of Material and Detrimental Evidence. Which directly affects this case's fundamental claims of authority over the Association.

7.   Please provide the legal or equitable reasoning for denying EVERY pleading Mr. Villars filed to resolve pending issues while granting, every pleading filed against him.

8.   Please provide the merits for the judge's prejudice, to disgrace Mr. Villars in court hearings. At contending "I think [you are] the only one who has really had trouble" and "history has shown that they [members] don't all agree with you." "They are frustrated with you."

9.   Please Record the Judge's entitlement to deliberately disregard 500+ owners' Contractual vested privileges and immunities, Statutory and Constitutional Rights, and the Supreme Court Decisions that afford his pleaded reliefs.

10.   Please provide the Equitable reasoning for forcing payments on the victims of prior Association fraud and negligence, by forcing a Receivership at ~$1800 per hour (all salaries included). So the Receiver can make the same administrative decisions that the president is duly vested in the Assoc. bylaws, regardless of the circumstances, and without any clearly recorded exception, for him to do for the Association - yet  for free.

11.   **Explain how this swindle Court Receivership is not an Under Color Extortion.** When (1) without this court having any type of jurisdiction over the 500+ property owners. (2) It procured the Receivership Order by depriving the owners of Due Process. (3) To coerce submission to this Receivership Order. (3) Granting the Receiver with absolute

powers over their homesteads interests. (4) Which the owners are duressed to obey and pay the Receivership demanded 'Special' payments; (5) Otherwise risking court sanctions for Contempt or worst be forclosed through its Receiver (6) Even when such 'special' payment conflict with their bylaws immunities and lacked the required FS718.112 process.

12.     Explain how Canon 3B(8). *"In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay,"* does not CONFLICT with the Court Orders impediment of litigation, Receivership costs, and the Judge refusal to address its Jurisdictional challenge.

13.     **IF indeed,** the Judge did not have jurisdiction to act under color of law; to deprive of liberty and property by denying due process, or to deprive Mr. Villars of his privacy and 1st Amendment Rights, would that preclude the Judge "absolute immunity". Thus, placing him personally liable for intended tortious and constitutional impairments.

"However a judicial officer can be held liable for abuse of process IF the officer acts without any jurisdiction and commits the abuse while acting under the pretense of his official capacity" *Osbekoff v. Mallory*, 188 N.W.2d 294 (iowa 1971)

IF the Judge cannot provide a reasonable and legal explanation to each of the averments, that supports his judicial decisions, then it should be considered under Fla.R.Civ.Pro. 1.140(e), that he has been proceeding wanting of jurisdiction.

AS A FACTUAL proof of bias conduct that precludes any possibility of a fair trial. A miscarriage of the rule of law. While it continues to deprive of privacy 500+ Victims.

### AS A JUSTIFIED DISQUALIFICATION of Judge Carlos Guzman.
### Whereas uncertainly of Bias Conduct and Conspiracy still exist…

The following statements are held true until the Judge can provide opposing facts.

1. The Association bylaws of 1969, protect members, under the Kaufman Supra, from impairment of clearly stipulates terms of contractual obligations, privileges, and immunities, by the subsequent Condo Act amendments.

2. The Receiver is a collaboration of BAR Licensed Attorneys ( referred to as **"They"** )

3. They are Trusted State Court deputies serving as neutral with no interest entity.

4. They are Appointed as Court Receiver with Absolute powers over the Association

"Subject to the terms of this Order, the Receiver is empowered and directed to manage the condominium in **his broad discretion**" ECF 38 pg.5 ¶11.

5. By this Receivership Order, the Court is judicially impairing 1st Admd. Right to Petition for Grievance, on any harm caused by this Court Order. "No Litigation Without Court Permission." No individual or entity may sue the Association, or the Receiver for actions taken in his capacity as a Receiver, without first obtaining the permission of the Court." pg. 7 ¶19. See also Overbreadth Doctrine.

6. They have NO direct responsibility to any Member under this Receivership Order. "In the event of a shortfall, the Receiver bears no personal responsibility" pg 6 ¶16

7. They are Vested with sole authority to Impair Contractual Terms and Obligations, to "participate in any legal proceeding by, or on behalf of, **or against the Association or in which the Association or its creditors may have an interest**; sell for cash or otherwise mortgage, deed of trust, chose in action, note contract judgment or decree, stock or debt owed to the Association, **or any property** (real or personal, tangible or intangible)." → without affording due process.

8. Also vested with the authority to alter the Association contractual limitations and of the Members with tenants contracts without due process requirements.

"Existing Contracts. The Receiver is empowered to honor or terminate existing Contracts," pg. 5 ¶ 14
"[c]ancel leases for non-owner [owner rented] occupied units that are delinquent in allotted assessments or otherwise in default, and pursue eviction actions, lien foreclosures, and other legal relief as appropriate."

9. To spend the Association operational funds under his sole discretion.

"Receiver may, but is not required to, obtain direction from the Court directing the Receiver as to how revenues should be allocated to cover expenses." Pg. 6 ¶16

10. So they can hire and fire as they please. Including the mob-placed Association lawfirm **Katzman Chandler, P.A.** Intentionally keeping them. While having proof of **KC**'s wrongful conduct in procuring the Receivership, and intended violations of FS 817.535.

11. They have unrestricted access to ALL Association records, accounts, contracts, all 2021 emails sent, and checks signed by Mr. Villars, on behalf of the Association.

"The Receiver shall have unfettered access and inspection rights to any accounts, records,

documents, files, and computer data, equipment, and systems, in any way related to the Receivership Property." ECF 38 pg. 3

12. Yet, they could not Report any evidence of fraud, negligence, malice, or self-serving activity by Mr. Villars to legitimize the Receivership Servitude against 500+ Victims.

13. Nonetheless, the Judge confiscated private property / homestead's interests, through a court swindle order. Arranged and executed within 24 hours of filing the Motion. "No Interference with the Receiver. Plaintiff and Defendant, along with all other unit owners, tenants, ... and any other parties,... or who receive notice of this Order, are hereby enjoined." pg.8 ¶22 Then, Delivered under every door of the 564 units and posted on the membership mailroom.

14. **"For the Best Interest of the Association."** → Their Salary is the highest priority over paying for the Association operations, urgent repairs, the Association insurance, pending service providers debt, and $3.5 million loan installments.

        "10. Priority of Payments. The revenues are to be applied by the Receiver ... generally **in the following order of priority** in a commercially reasonable manner: [1st] **to the actual reasonable fees and costs of the Receiver, including, without limiting** to the generality of the foregoing the fees and costs of Outside Professionals, or expenses of the Receivership, all as approved by the Court; and [Then] to the reasonable costs and expenses of operating the condominium, including employee salaries and benefits, the costs of supplies, reasonable and necessary repairs, maintenance, utilities, insurance premiums and other similar current operating expenses of the condominium." ECF 38 pg.4

15. **The Receiver salaries ONLY Exists while this Receivership Order remains valid.** Mr. Ramon Albani, Esq., actual **hourly rate is $900 per hour**: ECF 93 pg7 last charge.

| RA | 10/20/2021 | call with unit owner 315W Eli and Ana Ehrenpreis and exchange emails; review emails re developments; review and sign bank | 1.00 | $900.00 |

→ **That is:** "[To] Call with unit owner 315 Eli and Ana Ehrespreis and exchange emails; review emails and re developments; review and sign bank = 1 hr = $900.00"

**PLUS**, the Damian & Valori LLP law firm interests in this swindle Receivership. See Pg 20

| ATTORNEY/PARALEGAL SUMMARY | | | | |
|---|---|---|---|---|
| **Name** | **Initials** | **Hours** | **Rate** | **Amount** |
| Russell Landy | RML | 46.3 | $550.00 | $25,465.00 |
| Manny Ferro | MF | 5.4 | $150.00 | $810.00 |
| Markenson Pierre | MP | 113.4 | $175.00 | $20,025.00 |
| Melanie Damian | MME | 7.0 | $650.00 | $4,550.00 |
| Kenneth Murena | KDM | 0.9 | $500.00 | $250.00 |

**PLUS** the Katzman Chandler P.A. which is concealed but should be around $650 p/hour.

16. An Order w/out defining: "*just reason or cause*" = means it can be for an indefinite time. "The receivership established by this Order shall terminate on such date this Court determines that no just 'reason or cause' for the continuation of the receivership shall exist."ECF 38 p.9 ¶23
Which deprives owners of a legal or equitable mechanism to end this fiscal hardship.

17. There is nothing in the bylaws nor in FS 711, that allows State Courts intervention by Receivership, when it is behind payments or to recover from past fraudulent directors.

**Considering the aforementioned is true, then...**

Why would  BAR Licensed Attorneys Trusted with the State Interest, record in State Court

1. After being "[e]mpowered with the discretion to hire and employ without prior Court approval legal counsel, engineers, contractors, accountants, investigators, agents, and consultants ("Outside Professionals") to furnish legal, accounting, and other advice and services to the Receiver for such purposes as may be reasonable and necessary" and with "[u]nfettered access and inspection rights to any accounts, records, documents, files, and computer data, equipment, and systems, in any way related to the Receivership Property." ECF 38 pg. 4 ¶ 9.
   → **That is,** after having all Association records and with legal aptitude to verify the mob's claims → They decided to reassert them as facts of "good cause" in court.

2. Fabricate *facts* exclusively from the mob's false claims, as their Legal Conclusion.

3. While suppressing Mr. Villars' evidence because it would void their fiscal interests.

4. **But for** the Stay Order, Mr. Villars is blocked from proving Now their claims false.

5. Judicially collaborated → to bar Mr. Villars' Jurisdictional Challenge.

6. While Expecting immunity of disbarment for constantly committing Fraud on the Court.

7. Or for conspiring in this under color of law Deprivation of Constitutional Rights.

**THEREFORE:**

Motion for Stay and Disqualification of Judge Guzman justified with Facts and Laws   19

Mr. Villars pleads for the court Judge Carlos Guzman to Grant:
**1st:** the Motion for Jury Trial for the procurement of a Receivership without Due Process
**2nd:** to Certify the case for Class Action for Constitutional Depravation.
**3rd:** Disqualify the 'neutral' Receivership effective immediately for Fraud on the Court.
**4th:** Recuse himself for having a direct personal interest in the outcome of the case.

I, Janvier Villars, duly swear, under oath, the averments, allegations, and claims are supported by the facts and laws as presented and in Good-faith. Which are 100% true and undisputed as of March 17, 2022. Which ultimately has made me lose all trust in the integrity of the State courts. More specifically, on Judge Carlos Guzman and his Receiver team, Mr. Ramon Albani, Mr. Russell Landy, Ms. Melanie Danian, Mr. Kenneth Murena, and the rest of their legal staff.

**My fear of unfair Judicial treatment to underprivileged citizens IS here materialized.**
The more I learn the law and the truth behind the 'guaranteed equal rights', the more disappointed I am with this State Court.

- For condoning such egregious Judicial abusive and deceitful practices against the hardest working class of the state. People who are not trying get anything for free from the State.  Just  Equal  Treatment → At respecting their Liberty, Life and Property.

- For intentionally permitting law firms like Katzman Chandler and Damian & Valori LLP, to continue their racketeering practices against the class who cannot afford legal defense.

- For Permitting the Judicial system to erode under ambiguous and unchallengeable court doctrines. Which permits Judges liency to one party, at the detriment of the opposing party. Thus allowing fraud on the court to go unpunished. Supporting white-collar crime.

- For penalizing the citizens who do comply with laws, rights and obligations; but wrongfully expect to be "equally protected" under Rule of Law.

Sincerely disappointed with this court-biased conduct,

/s/Janvier Villars
Janvier Villars
Property Owners Elected Board President for Buckley Towers Condominium Association

<u>CERTIFICATE OF NOTIFICATION</u>
To all parties involved via the electronic court system.

# Memorandum of Laws.

## The LAW of VOID JUDGEMENT, ORDER OR RULE

"The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. *Earle v. McVeigh*, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). *Prather v Loyd*, 86 Idaho 45, 382 P2d 910.

"The limitations inherent in the requirements of due process and equal protection of the law extends to judicial as well as political branches of government, so that a judgment may not be rendered in violation of those constitutional limitations and guarantees." *Hanson v Denckla*, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228. "A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. ... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid. **30A Am Jur Judgments " 44, 45.**

"It is a fundamental doctrine of law that a party [500+ owners] to be affected by a personal judgment must have his day in court, and an opportunity to be heard. *Renaud v. Abbott*, 116 US 277, 29 L Ed 629, 6 S Ct 1194.        "Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests before he is affected by any judicial decision on the question." *Earle v McVeigh*, 91 US 503, 23 L Ed 398.

**FS 714.03**   Notice and opportunity for a hearing.— (1)   Except as otherwise provided in subsection (2), the court may issue an order under this chapter only after notice and opportunity for a hearing appropriate under the circumstances.
(2)   The court may issue an order under this chapter without written or oral notice to the adverse party only if:
(a)   It appears from the specific facts shown by affidavit or verified pleading or motion that immediate and irreparable injury, loss, or damage will result to the movant or that waste, dissipation, impairment, or substantial diminution in value will result to the subject real estate before any adverse party can be heard in opposition; and
**FS 714.04**   Scope; exclusions.— (2)   This chapter does not apply to:
(c)   Real property improved by one or two dwelling units which includes the homestead of an individual owner or an affiliate of an individual owner;
(e)   Personal property of an individual which is used primarily for personal, family, or household purposes.
(5)   Unless displaced by a particular provision of this chapter, the principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, supplement this chapter.

## EXHIBITS LIST:

**Exhibit A - Letter and Email from City
National Bank dated July 31, 2021.**                    Pg. 23

**Exhibit B - Email from Mrs. Mariluce de
Souza to City National Bank dated June 30, 2021.**      Pg. 27

**Exhibit C - Email to Directors and Members
interested in daily reports from the Admnisitration.**   Pg. 32

**Exhibit D - Committee Commitment
Signup Form created and distributed
by President Janvier Villars.**                          Pg. 35

**Exhibit E - Email from City National to
Libe Gringber, Treasurer of Buckley Towers.**           Pg. 43

**Exhibit A**
**Letter and Email from City**
**National Bank dated July 31, 2021.**



**City National Bank**
**Bci** FINANCIAL GROUP
P.O. Box 025620
Miami, FL 33102-5620

Diana Carolina de Flores, Esq.
*In-House Counsel*
**Direct Dial: 305-577-7257**
**Facsimile: 305-577-5353**

July 23, 2021

<u>**VIA EMAIL AND U.S. MAIL**</u>

Buckley Towers Condominium Inc.
1321 NE Miami Gardens Drive
Miami, Florida 33179
Janvier Villars at Manager@buckleytowers.com; Janvier269@gmail.com
Mariluce de Souza at Msttours@gmail.com
Aleksejs Nikitins at Speedyal2018@gmail.com

Katzman Chandler, PA
6535 Nova Drive, Suite 109
Fort Lauderdale, FL 3331
Mary Ann Chandler, Esq. at MChandler@KatzmanChandler.com
Leigh C. Katzman, Esq. at LKatzman@KatzmanChandler.com

Shir Law Group, PA
2295 NW Corporate Blvd,
Suite 140 Boca Raton, FL 33431
Guy M. Shir, Esq. at GShir@shirlawgroup.com

Re:     **Conflicting claims to accounts ending in 2006, 4606, 5306, 5235, 6980, and 9024 (the
        "Accounts") in the name of Buckley Towers Condominium, Inc. (the "Association")
        maintained at City National Bank of Florida**

To Whom It May Concern:

        This notice is delivered on behalf of City National Bank of Florida, as successor by merger to
TotalBank ("CNB"). CNB's records reflect that Janvier Villars, Mariluce de Souza, and Aleksejs
Nikitins are currently listed as the authorized signatories on the above referenced Accounts. The
Accounts ending in 2006, 4606, and 5306 were opened June 11, 2015. The Account ending in 5235 was
opened January 16, 2019. The Account ending in 6980 was opened March 10, 2020 and the Account
ending in 9024 was opened June 09, 2020.

        CNB recently received the attached correspondence (the "Demand Letters") described below:
1.  An email from Mariluce de Souza dated June 30, 2021 requesting to eliminate Janvier Villars
    as an authorized signatory on the above referenced Accounts.
2.  An email from Mary Ann Chandler, Esq. dated July 15, 2021 requesting to eliminate Janvier
    Villars as an authorized signatory on the above referenced Accounts and for the only

*24*

Janvier Villars
Mariluce de Souza
Aleksejs Nikitins
Mary Ann Chandler, Esq.
Guy M. Shir, Esq.
July 23, 2021
Page 2 of 3

        authorized signatories on the above referenced Accounts to be reflected as Mariluce de Souza, Aleksejs Nikitins, and Magda Pineda,

3. An email from Janvier Villars dated July 20, 2021 disputing whether Mariluce de Souza or Janvier Villar should be reflected as President of the Association on Sunbiz, the Florida Department of State Division of Corporations website, and providing a list of directors as of July 20, 2021 which do not include Mariluce de Souza, Aleksejs Nikitins, or Magda Pineda.

The Demand Letters include conflicting instructions with regard as to whom should be authorized signatories on the Accounts and granted administrative duties for online banking ePartner access, and who is authorized to act on behalf of the Association.

CNB is merely an innocent stakeholder in this matter and is neither in a position nor under a duty to make a decision between the conflicting parties. CNB will not undertake such a duty and will not act as a judge or referee in the dispute.

CNB's relationship with respect to the Accounts is governed by CNB's Deposit Agreement, effective July 1, 2018 (the "Deposit Agreement"). Section I, paragraph 25.b. states as follows, with emphasis added:

**Conflicts Involving the Account.** If we receive an actual or potential claim from a third party regarding your account, any deposit, transfer, debit, credit or other transaction involving your account, or conflicting instructions or claims from authorized signers, you hereby grant to us full discretion to freeze your account and not honor any further transactions until the claim is resolved, or we may, at our discretion, choose not to pay out any money from your account until we receive consistent instructions from all parties or a court order, all without liability to you. We may also, without liability to you, close the account and issue a check made payable to you and each authorized signer or you and each claimant, as we deem necessary, or we may interplead the funds into court. You agree to reimburse us for any loss, costs or expenses including, without limitation, attorneys' reasonable fees and the costs of litigation (to the extent permitted by law) that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs, or expenses from your account without prior notice to you. This obligation includes any dispute between you and us involving the account and situations where we become involved in any dispute between you and an authorized signer, another joint owner, or a third party claiming an interest in the account. It also includes any situation where you, an authorized signer, another joint owner, or a third party takes action with respect to the account that causes us, in good faith, to seek the advice of counsel, whether or not we actually become involved in a dispute.

Having been informed that a dispute exists in connection with the Accounts and given the conflicting instructions which we have been received from each of you, CNB has elected to invoke the terms of Section 25.b. of the Deposit Agreement and place a hold on the Accounts. Unless CNB receives written specific authorization from all conflicting claimants advising CNB how the funds in the Accounts are to be disbursed by 5:00 p.m. on Friday, July 30, 2021, CNB will commence an interpleader action and let a court of competent jurisdiction resolve the conflicting demands. If such action is necessary, CNB will seek to recover from the funds in the Accounts its reasonable costs and attorney's fees incurred in taking such action as authorized by Section 25.b. of the Deposit Agreement and/or, as applicable, pursuant to common law regarding interpleader.

25

Janvier Villars
Mariluce de Souza
Aleksejs Nikitins
Mary Ann Chandler, Esq.
Guy M. Shir, Esq.
July 23, 2021
Page 3 of 3

Please know that CNB will, of course, immediately recognize any agreement or consistent written instructions it receives from all claimants (such as authorization to continue to pay specific checks, allow specific withdrawals or transactions, joint instruction as to who are the authorized signatories to the Accounts, and who is granted administrative duties for online banking ePartner access, a joint instruction requesting for CNB to retain the account and not interplead the funds, or to close the Accounts and deliver the collected funds on deposit to one of the claimant's attorneys to hold in escrow pending the resolution of the dispute).

As you know, the Association has an outstanding loan in the original principal balance of $3,500,000.00, identified as loan number XXXXXX5060 (the "Loan"). In order to keep the Loan current, CNB will continue to automatically debit Loan payments from the Account ending in 6980, as permitted under the Automatic Loan Transfer Authorization dated 6/11/2015. We also are advised that the Association insurance policies (as required under the Loan documents) are up for renewal. CNB will authorize disbursement from the Accounts for the payment of the required insurance premiums, upon presentment of the applicable invoice(s). Please be reminded that the Association is responsible to maintain all required insurance under the Loan.

Should you have any questions regarding this correspondence, please do not hesitate to contact me at (305) 577-7257 or Lewellyn Kamin at (305) 577-7294.

Very truly yours,

__/s/____*Diana Carolina de Flores*_____
Diana Carolina de Flores
*In-House Counsel*

MC/dcdf
Encl.

*26*

**Exhibit B**
**Email from Mrs. Mariluce de Souza**
**to City National Bank dated June 30, 2021**

On Wed, Jun 30, 2021, 9:45 AM Mariluce de Souza <msttours@gmail.com> wrote:

Hello Mr. Sergio and Mr. Richard,

In light of the latest BOD changes, we need the Bank's cooperation in assisting us to obtain the following information ASAP.  As you can see this is sensitive and needs to be handled with urgency. Javier Villars has been voted off the board with a duly quorum as enclosed with the minutes that were voted on (Monday, June 21st, 2021).

Both myself and Alex need access to on line banking and to eliminate access to Janvier Villars and Libe Grinberg.

Please send me the updated Loan Statement so I can verify we are up to date and what is necessary on my part to pay the monthly obligation on time and from which account this comes out from.  I remember seeing a transfer out of the operating account into another account to cover the Loan payment.  Please share this with me so I can make sure this payment gets to the bank on time to avoid any late charges.  Additionally, need to know the grace period in an effort to make sure the funds are in place to make the payment based on managing Buckley's cash flow.

One of my focuses is verifying through the bank Deposits is that Janvier Villars has made all his payments on time and if he was current at the time of the BOD Elections including to current day, as this would be in serious violation along with all his other conflicts of interest such as and not limited to:

Below is many **conflicts of interest that Janvier Villars has and is beyond puzzling to me. This has already been brought up to the DBPR.  The DBPR has already requested with Janvier Villars to provide answers along with many Document requests, including the below and not limited to:**

- Registered Agent

Enclosures Page 1 of 7
Re: Conflicting claims to accounts ending in 2006, 4606, 5306, 5235, 6980, and 9024
(the "Accounts") in the name of Buckley Towers Condominium, Inc. (the "Association")
maintained at City National Bank of Florida
dated 7/23/21

28

*Liebel  + Intrusion To Privacy*

- BOD President
- Acting as Legal Counsel of Buckley Towers  *L.Ic*
- Janvier is a Plaintiff Suing Buckley Towers with several Lawsuits
- Janvier is a Defendant of Buckley Towers
- Janvier has a Lawsuit against a fellow community member where he is seeking a 1% Ownership in a unit that does not belong to him.
- Janvier has in the past Collected Monies from Buckley's Insurance Companies  *☑*
- Exercised Emergency Powers under the HOA documents
- Solely Controls the Money/Bank Accounts  *FALSE*
- Not allow the Community to Speak  *FALSE*
- Makes up rules as he sees fit  *?*
- There is NO Management Company representing Buckley since Janvier has taken over (he does it all)  Javier is running a one man show!  *FALSE*
- This is just to name a few the list is quite long...

For the record, Janvier recently contracted a lawyer, Robert Kelly about a month and a half ago to represent Janvier and Buckley. Unfortunately, Robert Kelly is a Personal Injury Lawyer not an Association Lawyer and when he saw the minutes of him being taken off the board he resigned immediately in representing Janvier/Buckley.  *FALSE*

# We are currently in communication with The Attorney Mr. Russell Robbins to get his advice and possibly hire his firm.

We desperately need the bank statements for all accounts.

July 1, 2020 - July 31, 2020, and from August 1, 2020 - Dec 31, 2020

and from Jan 1, 2021 - June 30, 2021


Account Numbers:

-2603115306 -

-2603112006-

-2603114606-

-2603110406-

-30000045235-

-30000146980-

Enclosures Page 2 of 7
Re: Conflicting claims to accounts ending in 2006, 4606, 5306, 5235, 6980, and 9024
(the "Accounts") in the name of Buckley Towers Condominium, Inc. (the "Association")
maintained at City National Bank of Florida
dated 7/23/21

2

29

-30000229024-

and from April 1, 2021 - May 30, 2021

In an effort to this email feel free to call me personally to cover any additional details needed.  Once we get past this we will finally have it under control and seek a smooth transition.

We appreciated if that can be sent to us asap. If it is easier avoided sending duplicates from these statements previously sent by you to us.

**NOTE:** We need also a statement from the bank confirming and showing when our names (Mariluce de Souza and Alex Nikitin, more specifically, were added to the online bank access) together with the other members of the board.

Thank you so much for your help as await your prompt response.


Best Regards,


NOTE1: excuse me for the convoluted voice message left on your phone.

NOTE2: Attached 4 files for your reference/records.


Mariluce de Souza- East vice president -

Newly appointed President of Buckley Towers Condominium, INC. as of  June 21, 2021


**Mariluce de Souza - NOTARY PUBLIC & LCAM
MSTTOURS - 305-318-4116 -**

**Below are the 4 links to the files:**   *Florida License while committing FRAUD*

Enclosures Page 3 of 7
Re: Conflicting claims to accounts ending in 2006, 4606, 5306, 5235, 6980, and 9024
(the "Accounts") in the name of Buckley Towers Condominium, Inc. (the "Association")
maintained at City National Bank of Florida
dated 7/23/21

30

**From:** Mary Ann Chandler, Esq. <MChandler@KatzmanChandler.com>
**Sent:** Thursday, July 15, 2021 6:00 PM
**To:** Ortega, Sabrina <Sabrina.Ortega@citynational.com>; Garcia, Richard A <Richard.Garcia@citynational.com>; Mariluce de Souza <msttours@gmail.com>; Leigh C. Katzman, Esq. <LKatzman@KatzmanChandler.com>
**Cc:** Montiel, Sergio <Sergio.Montiel@citynational.com>; Alex Nikitins <speedyal2018@gmail.com>
**Subject:** RE: [EXTERNAL] RE: Buckley Towers Accounts

⚠ EXTERNAL MESSAGE – Think Before You Click

Sabrina:

Pursuant to your prior email, our client has advised that the following Officers/Board Members will be authorized signers on the Association's accounts:

**Mariluce de Souza, President**

**Aleksejs Nikitins, First Vice President**

**Magda Pineda, West Director**



CONVERSION by
Assisted by KC

Kindly advise if any additional information is required to prepare and execute new signature cards reflecting the foregoing.

Warmest Regards,

*Mary Ann Chandler, Esq.*

Founding Partner
**Katzman Chandler**
6535 Nova Drive, Suite 109
Fort Lauderdale, FL 33317
Tel 954.486.7774 | Fax 954.486.7782
MChandler@KatzmanChandler.com
www.KatzmanChandler.com

KATZMAN
CHANDLER
COMMITTED TO COMMUNITY

NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or telephone at 954.486.7774 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Katzman Chandler. This law firm is a "debt collector" under the Fair Debt Collection Practices Act. We are attempting to collect a debt, and any information obtained will be used for that purpose.

Enclosures Page 4 of 7
Re: Conflicting claims to accounts ending in 2006, 4606, 5306, 5235, 6980, and 9024
(the "Accounts") in the name of Buckley Towers Condominium, Inc. (the "Association")
maintained at City National Bank of Florida
dated 7/23/21

31

**Exhibit C**
**Email to Directors and Members**
**interested in daily reports from the Admnisitration**

3/17/22, 12:33 PM                              Gmail - OPERATIONS: The EAST trash shoot compactor is damaged

 Gmail                                             Janvier Villars <janvier269@gmail.com>

## OPERATIONS: The EAST trash shoot compactor is damaged
4 messages

**Janvier Villars** <janvier269@gmail.com>                                Mon, Mar 8, 2021 at 2:05 PM
To: Alex Nikitins <speedyal2018@gmail.com>, Mo Movla <smovla@gmx.com>, Libe <libegrinberg@gmail.com>, rosa vicente
<rosavida2003@yahoo.com>, Mariluce de Souza <msttours@gmail.com>, andyjoratt@hotmail.com, Flor Garuz-Cornejo
<florgaruz@hotmail.com>, carmenceci011958 <carmenceci011958@gmail.com>, "rebeccaross2007@gmail.com"
<rebeccaross2007@gmail.com>, magda pineda <magda.epineda@hotmail.com>, galan3001@gmail.com, lulo63@live.com,
shaulmichael@gmail.com

Directors,
I will try to get you guys involved in the day to day, as much as I can.  BUT that DOES NOT mean I have to, nor do you
have to be involved in the operations.
I will see how to create a forum to post whenever I can, on issues as they occur.
IF you want to participate in making decisions, either come to office and learn all the details or respect the directors with
first hand experience and dedication to resolve the issues.
I sincerely do not have additional time or assistance to be reporting on a constant basis to the directors.
The temporary receptionist is barely learning how to do her job in front.
You may be able to review all emergency decisions and the invoices paid to resolve the issues.
What you cannot do is, DEMAND for me to do more than I can, to please your interests in participating in the operations.
That is NOT my duty as president.  That is of a CAM which currently we do not have a budget for.  I have requested for,
but all are asking for more than we can afford.
Unlike other presidents in the past, the office and records are available to all and each of you who want to collaborate.
Nothing has been hidden or locked out from your.  Those who come into the office showing interest in more work, get
more responsibilities.
If you cannot collaborate, the least you can do is support our decisions based on the circumstances: lack of administrative
support, legal support, accounting support, funds....

Here is the issue of the day, which we must decide by tonight before the trash ends in every hallway in the East Building.
The EAST trash chute is broken and needs repairs.
I have consulted with Yuri and Alex and both have agreed to have it fixed immediately.
The cost is around $4,900 including a quarterly hygienic maintenance necessary to keep the chutes working properly.
The proposal is attached.
I have already contacted the owner of this company, and had him agree to receive installments of $200 per month instead
of the full amount.
If you have an alternative solution, or better proposal, this is the time to provide SOLUTIONS for the community.


--
Janvier Villars
TOGETHER WE CAN DO BETTER
786 609 1269

 **ecolo.pdf**
129K

**rosavida2003** <rosavida2003@yahoo.com>                               Mon, Mar 8, 2021 at 2:55 PM
To: Janvier Villars <janvier269@gmail.com>, Alex Nikitins <speedyal2018@gmail.com>, Mo Movla <smovla@gmx.com>,
Libe <libegrinberg@gmail.com>, Mariluce de Souza <msttours@gmail.com>, andyjoratt@hotmail.com, Flor Garuz-Cornejo
<florgaruz@hotmail.com>, carmenceci011958 <carmenceci011958@gmail.com>, "rebeccaross2007@gmail.com"
<rebeccaross2007@gmail.com>, magda pineda <magda.epineda@hotmail.com>, galan3001@gmail.com, lulo63@live.com,
shaulmichael@gmail.com

Hi, Janvie

There is another company Southern Chute. They did the Job at Wilshire. We can ask for a estimate.

33

April 2, 2021

## March 29th 'Blue Pill or Red Pill' Board Meeting Minute.

*Buckley Towers* Attended in person by:  Janvier Villars, Libe Gringberg, Andres Jorratt, Norma Torrez, Sayed Movla.
Attended by Zoom by:  Alex Nikitin, Mariluce de Souza, Carmen Gomez, Rebecca Ross, Flor Garuz, Walter Restrepo and Osvaldo Fructoso.
Absent Directors: Yuri Zamoshchik and Shaul Michael.

AGENDA ITEMS Conclusions:

1. **Buckley Towers financial turmoil.**  Presented by Board Treasurer Libe Gringberg and collaborated by President Janvier Villars. The Accounts Payable reached close to 80% (~$190.000.00) collected, while the 20% are now confirmed to be delinquent in their monthly dues. Affording confirmed debts for our Collections Committee, led by the Treasurer and Directors Rosa Vicente, Flor Garuz and volunteer members.

   Providing the actual Accounts <u>Payable</u> in three sections: **a) The Essential and Required** payables such as electricity, water… and services such as fire alarm, elevators, trash collections, basically shows we are in deficit even if we collect 100% of the monthly dues. **b) The Extraordinary Emergency Expenses** which include A/C repairs, Elevator vandalism, flooding… summing to $53K in debt. **c) The Inherited Debt** or disregarded work by prior board which include: Abuse of association funds used to pay for attorneys to defend lawsuits brought for their criminal acts, the Comcast non payments… summing around $467,622.55.

   President Janvier explained how the association has been able to sustain; by being extremely frugal, cutting all costs, reducing service providers including maintenance team, office staff, the association attorney costs… Making sure the association has the funds necessary to cover, by the 5th of each month, the $167.000 required to cover Insurance + $3.5M loan + FPL + Elevator Service…
   AND how  the operations can be financed further with the sale of ONE of the association owned condo units. Affording the Association with more time, to execute whatever the majority of the owners preferred as a solution, to resolve our inherited financial circumstances.

2. **Ratification of the past Meeting Minutes.** Approved by the majority of the board. Except for Ms. Mariluce de Souza and Ms. Magda Pineda. They claimed they did not get a chance to review the minutes, although posted around Buckley since the day after the meeting.  Magda was upset that in that meeting minute her name was not mentioned as 'present'. Although she was mentioned and recorded opposing the President's decision to give the Membership options on how to resolve the Financial crisis. The clear mistake of not mentioning her as 'present' during that meeting was obviously corrected by naming, at her opposing the agenda item.  Mariluce made a motion and second by Magda to postpone the agenda items for another meeting… <u>yet again</u>.  They did not get enough support from the rest of the directors.  Therefore, that meeting minute ratification was passed.

3. **The 40 yr. And 50 yr. Recertification information** was tabled for the April 1st meeting.

**The President closing Statement:**
The prior boards have made terrible decisions favoring their interest; while placing the Membership further in debt. This Board was elected to end that abusive, decision-making methodology. By giving the Property Owners a Right to Vote on their Property Interests, thus limiting the Board to only Direct the solutions made by the true majority.  Unfortunately, there are Directors who refuse to collaborate in the necessary work, rather constantly delay the progress by interrupting the meetings with relatively insignificant claims.  Persuading the board to favor or to disregard the prior board illegal decisions.  Those are the Directors who you will find discrediting the information provided by the Directors working in the office.  They are owners who became Directors, only to use the Meetings to accuse and slander publicly, to discredit and harm the work being done, instead of dedicating ONE HOUR to resolve the association's ongoing issues.

34

**Exhibit D**
**Committee Commitment**
**Signup Form created and distributed**
**by President Janvier Villars**

3/17/22, 12:39 PM                           Gmail - Committee Commitment Form

 **Gmail**                                    Janvier Villars <janvier269@gmail.com>

## Committee Commitment Form
7 messages

---

**Janvier Villars** <janvier269@gmail.com>                      Sat, Feb 6, 2021 at 5:00 PM
Bcc: "rebeccaross2007@gmail.com'" <rebeccaross2007@gmail.com>, badgertransport badgertransport
<badgertransport@hotmail.com>, mia b <newmiab@hotmail.com>, carmenceci011958 <carmenceci011958@gmail.com>,
Mariluce de Souza <msttours@gmail.com>, Luz Delia Moscoso Sáenz <luzdeliam22@hotmail.com>, Iliana Davidov
<lda@cohenjaffe.com>, florgaruz@hotmail.com, galan3001@gmail.com, Ruben Gallardo <rubengallardog@gmail.com>,
henrique henares <henareshenrique@gmail.com>, Josh Ivann Salomon <joshivannsalomon@gmail.com>, Jim Olavarria
<jolavarria@yahoo.com>, Libe <libegrinberg@gmail.com>, Silvia Linares <silvialinares503@hotmail.com>, magda pineda
<magda.epineda@hotmail.com>, Mara Pacheco <mprubia2003@yahoo.com>, André Mutchnik
<andre_mutchnik2@yahoo.com>, Polita Aylwin <pvrl.khi@hotmail.com>, Zaida Rivera <zdriverasantiago@gmail.com>,
smovla@gmx.com, Tosheta Webb <tosheta.webb@gmail.com>, ulises marrocchi <Ulises.Marrocchi@audiocodes.com>,
Andru Vergara <andruvergara90@gmail.com>, lulo63@live.com

Please take the time now to select on which Committees you want to participate.
Please remember:
1. Your application will need to be approved by the board majority
2. You must sign the Good Faith Covenant to participate
3. ONLY TWO committees maximum
4. ONLY participate in those committees on activities that YOU REALLY LIKE TO DO or enjoy doing.
5. If you do not participate at least 2 hours per week to assist the committee or you will be removed to allow someone
who can participate.
https://www.esigngenie.com/esign/onlineforms/fillOnlineForm?encformnumber=kf%2BL9QP2oNxe4LwSHqvy9A%3D%
3D&type=link

Thank you for participating.
We look forward to working with all of you.

--
Janvier Villars
TOGETHER WE CAN DO BETTER
786 609 1269

---

**Mo Movla** <smovla@gmx.com>                                   Wed, Feb 10, 2021 at 10:47 PM
To: Janvier Villars <janvier269@gmail.com>

Hello Dear Don Janvier,

Did you create all 1-5  & e-signing by yourself? They are great ideas. just, it is good to have some consulting with people
to make sure having engh participants and support.

Regards,

Seyed Movla


[Quoted text hidden]

---

**André Mutchnik** <andre_mutchnik2@yahoo.ca>                   Wed, Feb 10, 2021 at 11:33 PM
To: Janvier Villars <janvier269@gmail.com>

Good evening Janvier,

*36*

I can be useful in legal matters, accounting matters, and to some extent in addressing technological issues. After a brief review of the BT Committee applications and having given the matter some thought, I might be interested in Administration support Committee (number 7) and in the Legal Matters Committee (number 10). Do you guys still have positions to fill for those committees?

As the new board starts its duties, I believe that we need to distinguish between what's nice to have but can wait and what is time-sensitive and needs to be addressed now.

For example, are there any contracts that must be renewed (or not) by a certain date (I heard Comcast is coming for renewal in a couple of months)? Are there any correspondences from the government that need to be addressed before a certain deadline?

If I may start off with some suggestions:

1) That the Board of Directors implement a calendar (could be GMAIL, could be something provided by Frontsteps, could be a calendar app that comes with a reasonable fee) where the various meetings, deadlines etc are noted. BOD members could modify / edit the calendar as appropriate; unit owners could view the calendar. Ideally, the calendar would not be 100% public and could only be viewed by BT residents.

2) Electronic sending of correspondence (e.g. meeting notices, documents, etc.): residents should have the option to be notified electronically, in order to save mailing costs to BT. It would also make sense to give residents the option to receive materials in the mailbox, without going through US POST.

As things currently go, BT is wasting money mailing things ($12,000). This is not a major amount, but it seems to me as an item that can be easily optimized.

3) I was unable to find a section in the Frontsteps profile with material contracts (such as management contract, loan contract, security contract, etc). It would be nice to have this section.


P.S. How much do Frontsteps charge? By the hour?

Best regards,

Andrey


[Quoted text hidden]

---

**Janvier Villars** <janvier269@gmail.com>                                    Thu, Feb 11, 2021 at 2:54 PM
To: Mo Movla <smovla@gmx.com>

None of he committees are created per se.  All are open still until we have actually interested parties signing up.
[Quoted text hidden]

---

**Janvier Villars** <janvier269@gmail.com>                                    Thu, Feb 11, 2021 at 3:01 PM
To: André Mutchnik <andre_mutchnik2@yahoo.ca>

Andre,
Hey thank you for getting involved.

37

Yes we still have positions for those committees. Please fill out the form and Initial ONLY the two committees that you can put in at least 2 hours per week. Preferably more being we need to get soo much in a short period of time.

We are addressing the contracts, but we could use more people involved to find better solutions for BT

Yes, the Gmail calendar is a great idea, that could be implemented eventually. Right now we are puting out fires and organizing ourselves in the office.

Yes, the members will always have an option to vote in writing.

The profiles in frontsteps is also pending until we can put away the urgent matters left behind for us to catch up.

Frontsteps charges per month. We will address all contracts and find more economical yet as efficient or more practicable solutions.

Best Regards,
[Quoted text hidden]

---

**André Mutchnik** <andre_mutchnik2@yahoo.ca>                     Tue, Feb 16, 2021 at 12:29 PM
To: Janvier Villars <janvier269@gmail.com>

Good day Janvier,

Sent you the completed form. Changed my choices slightly to Audit Committee and Legal Matters Committee.

Imho there's a lot of overlapping between the Audit Committee and the Administration Support Committee.

I can't assist you in scanning contract (not being on the premises), but I can review them and make comments. Hence the point number 3 regarding material contracts involving BT.

Best regards,

Andrey

[Quoted text hidden]

---

**Janvier Villars** <janvier269@gmail.com>                        Tue, Feb 16, 2021 at 1:09 PM
To: André Mutchnik <andre_mutchnik2@yahoo.ca>

That's great. Let me start coordinating this.
[Quoted text hidden]

$3\beta$

## Buckley Towers Committee Commitment Form

Please be honest with yourselves and with your new team, so we can all be more effective.
As you all know by now, we are neck deep in pending work.  There is some work for each of us.
Everything from administrative organization and accounting to Community and structure rebuilding.
Together we can be the historical team that made it ALL possible within one year.

### Your Personal Information

Name _____ Spouse Name:_____ UNIT# _____

Birth Month and Day (only):_____Current Employment:_____

Your Native Language:_____Read:_____ Write:_____ Other:_____

Your Governmental Connections in Florida:_____

Your Phone Nos.:_____Email:_____

EMERGENCY CODE - ONLY used on true emergencies to get your immediate response:  **911**

### TELL US about Your Personal Education, Experience, Certifications, Abilities, Talents:

| | | | |
|---|---|---|---|
| ☐ | Accounting and Auditing | ☐ | Legal Expertise or knowledge |
| ☐ | Administration and Office Applications | ☐ | Writing or Public Presentations |
| ☐ | Cleaning and General Maintenance | ☐ | Creative and Artistic Ability |
| ☐ | Industrial/Structural Upkeeping | ☐ | Computer and Network |
| ☐ | Electrical Upkeeping | ☐ | Mechanical Expertise |
| ☐ | Plumbing Upkeeping | ☐ | Event Management |

### When and What Hours can we Count on You - <u>FOR SURE</u>- at least 90% of the time:

| Day | AM | PM | Only | LIMITATIONS - Up to what Hour or for Exception of When |
|---|---|---|---|---|
| Monday | | | | |
| Tuesday | | | | |
| Wednesday | | | | |
| Thursday | | | | |
| Friday | | | | |
| Saturday | | | | |
| Sunday | | | | |

39

**Please Initial <u>ONLY TWO</u> of the Committees you are interested in participating.** Offering to volunteer at least 2 hours per week or be removed automatically from that committee, so to allow other members to participate. Hence each committee is limited to 7 members, unless specifically approved.

**_____1. Covenants and Laws Compliance Committee. ( C&LCC)**
Enforcing the Buckley Bylaws- officially. According to procedures; which NEED to be written by this committee and Approved by the Auditing Committee and Board Directors.
This committee is OPEN to all association members interested with aptitude in laws, rules, regulations.
IT WON'T be open to members, known violators of this community. The key interest is Equal Compliance.

**_____2. Community Building Committee ( CBC)**
Responsible for coordinating between the Board and the members of Buckley. To develop and educate a new culture, a new democratic process of property ownership. The committee holding personal responsibility to address the community disorder to avoid legal costs or further police involvement. But most importantly, to build relationships and help Buckley flourish through our multinational, multicultural community.
This will require ongoing organization and execution of events, videos, contests, and other means of collaborating with the community. The key interest is Education + Participation= Community.

**_____3. Property Maintenance Committee ( PMC)**
This committee will be addressing the Structural and Industrial issues of Buckley. It will not address directly the Maintenance employees, but rather to write reports on how to redress the issues formally with the companies. It will also attend calls or emails from the owners complaints regarding those issues.

**_____4. Parking Enforcement Committee (PEC)**
This committee will need to understand well how to handle the members without creating animosity. Procedures must be written, approved by the board, the Grievance and Penalties Committee (GPC) and then posted everywhere before enforcing it.
Buckley will NO longer be involved in towing cars. We need to afford the membership a more reasonable and considerate form of enforcement. Where the violation can actually make money for Buckley and the membership. Once this form is approved by the owners.

**_____5. Grievance and Penalties Committees (GPC)**
The first task for this committee is to establish a well balanced team. To help create the Penalties procedures. Which must be according to our bylaws, state laws and common laws; while protecting the property owners rights. As well as the procedures how those will be enforced. And the presentation to the community in an easily understandable manner.

**_____6. Auditing Committee ( AC)**
This committee will be responsible for reviewing and verifying everything being FORMALLY claimed. That includes from the G&PC, C&LCC, BDC, ASC, and PMC. Either by self initiative or as requested by the alleged harmed parties or by any committee.
Having full unrestricted and immediate access to all records on the claim at hand, from all parties involved. This Committee resolution will need to be Formal and in writing. Signed by the Committee Chairperson and every committee member who participated in the resolution.
Their resolution will be presented along with the supportive findings. So together they can be considered by the membership and the board, to obtain the final decision.

40

### 7. Administration Support Committee (ASC)

Because much of the mess originates from the abusive directors, we need a strong ASC team. This will includes: going over all of the Association records.  Sanning, verifying for legitimacy before posting them online. Writing and sending (with pre-approved template) collections letters to owners and setting up zoom meetings, to help owners catch up, and avoid their account from ending in collections with our attorney. For this committee needs a good understanding of the condo laws to avoid lawsuits. Letters need an F.S language/ attorney language template.

### 8. Business Development Committee (BDC)

Janvier Villars will chair this committee.  Since he has been diligently working on this since 2016.  As the only logical solution to bring Buckley into its true potential.
By collaborating with those who are interested in investing in Buckley →to do so ethically for the benefit of everyone.  Revamping the possibilities Buckley had of being the jewel between Miami-Dade and Broward. While Upholding every legal rights or benefits afforded to the owners and expanding on those.

### 9. Preventive Practices Committee (PPC)

This committee will need to start with a report on the current physical and fiscal situation of Buckley and WHY it continues to harm our units or our common areas.
Create the procedures necessary to prevent the issues.  Approved by the C&LCC, ASC, and AC Committee BEFORE having the general membership voting on it.  And once approved, then it can be executed with the collaboration of the owners.

### 10. Legal Matters Committee (LMC)

This committee is going to have to be limited to only those directors with actual legal expertise. To avoid having to spend time educating, and explaining doctrines, legal procedure, limitations, liabilities, etc.
Only regarding legal matters with the Association attorney.  Then it must create a comprehensive report on what was decided, with common explanation. So to have the rest of the Board approval on how to proceed. Unless the final decision will affect the whole association, or a small group of owners, the decisions will be handled only by the board of directors.
HOWEVER - When a property owner is going to be severely affected by a legal decision, the owner MUST be afforded a meeting and collaboration with the GPC, AC and C&LCC.

### 11. Curve Appeal and Upkeeping Committee (CAUC)

A committee for the artistically inclined or well connected in this endeavor.  For those who are Interested in improving the outside beauty of Buckley.  While complying with the bylaws, in coordination with all other committees that may be affected or that are responsible for safekeeping the present and future interests of the community.

### 12. Purchase and Rental Approval Committee ( hereafter: **The Welcoming Committee** )

A revolving committee that will alternate on a monthly basis.  So to make sure there is no favoritism nor nepotism  is being practiced in our approval process.
The owner, throughout the sale or rental approval process, will have a right to petition the Auditing Committee and any other committee for abuse of discretion at any time and at any part of the process.
The Welcoming Committee will be required to write a report on the reasoning for their disqualification or denial of the purchase or rental. Which must be supported by our bylaws, approved process or state laws. The approval process must not take more than ONE week.  So if any member of this committee responsible to help in this task cannot handle that urgency, please reconsider participating in some other task of this committee. This committee will also create a Welcoming and Departure Procedures that every resident and owner must comply with.  That includes placing the Security Deposit of $XXX. Which will be reduced at every violation.

41

Create the reasonable penalties for violation at entering and leaving our buildings. Which includes, using our elevators for large items, and leaving their unwanted furniture or electronics for Buckley to take it to the dumpster.

Create a welcoming package and formal introduction of the new residents on each building. In collaboration with the Community Building Committee (CBC).

Lastly, create the aforementioned welcoming package in each language. So all rules agreed are well understood by every person in Buckley.

### _____ 13. Community Pets Committee (CPC)

This committee MUST start by making the 2021 Rules, Regulations and Penalties on Pets. This new set of rules will need to be approved by the appropriate committees such as the C&LCC, LMC, PMC and ASC.

Organize a Pet Registration Drive that will need to be a week long vigilance at the lobbies to catch and write up those who have sneaked in their large pets without any board approval, certifications, vaccinations or insurance.

Coordinate a Community Pet insurance drive. Buckley MUST BE waived of all responsibility by any wrongful or neglect by the pet owner. That includes the pet being harmed or harming anyone or causing an accident by other uncontrolled pets.

Petition the amendment to our bylaws. Otherwise, dogs over 15 Lbs may be voted out by the majority of the owners. Whereby the board would then need to enforce all bylaws that promise the safety, security and reduction of nuisance to our members… That is if this amendment to accept large dogs is not passed.

---

**Your Signature**                                                     **Date**

At participating in the above Committees, and once I have signed the Good Faith Covenant, I promise to uphold and respect my fiduciary duties and respect my team. If I ever feel I am not actually contributing, i will not wait to be removed, but rather, as my service to the association, I will remove myself. The community interest will always take higher concern over my personal interests.

42

**Exhibit E**
**Email from City National to**
**Libe Gringber, Treasurer of Buckley Towers**

7/9/2021                                              City National Bank of Florida



Good Morning, Libe Grinberg

# Manage Users

🔍 Search Users                              Add User

| User ▲ | Email Address ▲ | Role | Status ▲ | Last login ▲ | |
|---|---|---|---|---|---|
| **Alex Nikitins** | speedyal2018@gmail.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Flor Garuz** | florgaruz@hotmail.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Janvier Villars** | janvier269@gmail.com | Comp Admin (unsafe:javascript://) | Active | a month ago | ✏️ |
| **Libe Grinberg** | libegrinberg@gmail.com | Comp Admin (unsafe:javascript://) | Active | 2 minutes ago | ✏️ |
| **Magda Pineda** | magda.epineda@hotmail.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Mariluce DeSouza** | msttours@gmail.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Norma Torres** | ntlindita@live.com | Directors (unsafe:javascript://) | Active | a month ago | ✏️ |
| **Rebecca Ross** | rebeccaross2007@gmail.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Rosa Vicente** | rosavida2003@yahoo.com | Directors (unsafe:javascript://) | Active | | ✏️ |
| **Sayed Movla** | smovla@gmx.com | Directors (unsafe:javascript://) | Active | | ✏️ |

7/9/2021                                             City National Bank of Florida

| User ▲ | Email Address ▲ | Role | Status ▲ | Last login ▲ |
|---|---|---|---|---|
| **Yuriy Zam** | yuriyzam@hotmail.com | Directors (unsafe:javascript://) | Active | ✎ |

7/20/2021                                              City National Bank of Florida



Good Afternoon, Libe Grinberg

## ACCOUNTS

⋮

City National Bank of Florida CITYSMART ULTIMATE SMALL BUSINESS 115306
Available Balance
Current Balance
**$62,970.40**
$62,970.40

City National Bank of Florida Association Non-Interest Checking II 146980
Available Balance
Current Balance
**$110,517.80**
$110,517.80

City National Bank of Florida COMMERCIAL TERM LOAN- US ADDRESSEE 785060
Next Payment Amount
Current Balance
**$46,584.94**
$1,825,682.54

City National Bank of Florida Association Non-Interest Checking II 229024
Available Balance
Current Balance
**$91,469.96**
$91,469.96

City National Bank of Florida CITYSMART ULTIMATE SMALL BUSINESS 112006
Available Balance
Current Balance
**$59,483.88**
$59,483.88

City National Bank of Florida CITYSMART ULTIMATE SMALL BUSINESS 114606
Available Balance
Current Balance
**$30,372.67**
$30,372.67

7/20/2021                                    City National Bank of Florida

City National Bank of Florida CITYSMART ULTIMATE SMALL BUSINESS 045235
Available Balance                                                  **$49,005.04**
Current Balance                                                    $48,535.04

## ASSET SUMMARY                                                    ∧



$403,820
Total Assets

### Association Non-Inter...
30000146980
                                                                   **27.37%**

Available Balance                                                  $110,517.80
Current Balance                                                    $110,517.80

## LOCKED LOGINS                                                    ∧



No locked logins

View all users

*47*

# EXHIBIT
# X4b

# The illicit Enterprise Original Complaint for Injunction

Filing # 130873321 E-Filed 07/16/2021 11:34:48 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.,
a Florida not-for-profit corporation,

                    Plaintiff,
v.                                                                          CASE NO.:

JANVIER VILLARS,

                    Defendant.
_____

## VERIFIED COMPLAINT

Plaintiff, **Buckley Towers Condominium, Inc.**, (the "Association") by and through its undersigned attorneys, hereby files this action against **Janvier Villars** (the "Defendant") for breach of contract and injunctive relief, and in support thereof states as follows:

1. Jurisdiction is appropriate pursuant to section 26.012(2)(c) granting circuit courts exclusive original jurisdiction "[i]n all cases in equity."

2. The Association is a Florida not-for-profit corporation operating and administering a condominium association located in North Miami Beach, Miami-Dade County, Florida, pursuant to Chapter 718, Florida Statutes.

1. The Defendant is the owner of a condominium unit located within the Association at 1301 NE Miami Gardens Dr. #322W, North Miami Beach, FL 33179 ("Unit 322W"). A true and correct copy of the Certificate of Title for Unit 322W is attached hereto as Exhibit "A."

2. The Defendant holds or held a one percent (1%) ownership interest in a condominium unit located within the Association at 1351 NE Miami Gardens Dr. #1412E, Miami, FL 33179 ("Unit 1412E") (Unit 322W and Unit 1412E shall be referred to collectively as the

1

"Units").  A true and correct copy of the Quitclaim Deed for Unit 1412E is attached hereto as Exhibit "B."

3.    Venue is proper as the causes of action set forth herein occurred in Miami-Dade County, Florida.

4.    All conditions precedent to bringing this action have occurred, been satisfied, or been waived.

## **FACTS**

5.    The Declaration of Condominium of Buckley Towers (the "Declaration") is recorded in Miami-Dade County Official Records Book 6210, Page 329, et. seq., pursuant to Chapter 718, Florida Statutes, and contains permanent covenants and restrictions governing the rights, liabilities, and obligations of unit owners and their families, guests, and/or tenants. A copy of the Declaration, as amended, is attached hereto as Exhibit "B."

6.    The Bylaws of Buckley Towers (the "Bylaws") are recorded in Miami-Dade County Official Records Book 6210, Page 367, et. seq., and contain provisions regarding the operation of the Association and additional obligations of unit owners.  A copy of the Bylaws, as amended, is attached hereto as Exhibit "C."

7.    While holding record title to the Units, the Defendant is contractually bound to comply with the terms, restrictions, covenants, and obligations set forth in the Governing Documents of the Association consisting of the Declaration, the Bylaws, the Articles of Incorporation, and Rules and Regulations of Buckley Towers.

8.    While holding record title to the Units, the Defendant is bound to comply with the provisions set forth in Florida Statutes Chapter 718, the Condominium Act.

9.     Article VI(1) of the Declaration requires that all unit owners are responsible for the payment of assessments representing their "proportionate share of the common expenses."

10.    The Defendant, as the sole titleholder of Unit 322W, is responsible for the timely payment of all assessments coming due on such unit.

11.    The Defendant, as a joint titleholder of Unit 1412E, is/was responsible for the timely payment of all assessments coming due on such unit while holding title.

12.    The Association held its Annual Meeting and Election on or about January 28, 2021.

13.    The Association is operated by seventeen (17) Board Members.

14.    The Defendant ran as a candidate for the Board of Directors and was elected as the President of the Board.

15.    At the time of the Defendant submitting his notice of intent to run for the Board, the Units were more than ninety (90) days delinquent in the payment of assessments to the Association.  A copy of the Association Aging Report is attached hereto as Exhibit "E."

16.    At the time the Defendant was elected to office, the Units' assessments were delinquent by more than ninety (90) days. *See* Exhibit "E"

17.    The Units presently remain delinquent in the payment of assessments.

18.    Section 718.112(2)(d)(2), Florida Statutes, requires that a candidate for the condominium board "must be eligible to be a candidate to serve on the board of directors at the time of the deadline for submitting a notice of intent to run . . . . **A person . . . who is delinquent in the payment of any assessment to the association[] is not eligible to be a candidate for board membership**." (emphasis added).

3

19.    The Defendant was ineligible to run for the Board due to the delinquent assessments owed on the Units.

20.    By virtue of his ineligibility to run for the Board, the Defendant had no authority to serve as a member of the Board.

21.    Section 718.112(2)(n), Florida Statutes, states that "**[a] director or officer more than 90 days delinquent in the payment of any monetary obligation due to the association shall be deemed to have *abandoned* the office**, creating a vacancy in the office to be filled according to law." (emphasis added).

22.    As of the date of taking office on or about January 28, 2021, the Defendant was more than ninety (90) days delinquent in the payment of assessments on the Units.

23.    The Defendant was deemed to have abandoned his office on the Board upon being seated due to the delinquency.

24.    By virtue of his abandonment of office, the Defendant had no authority to continue acting as a member of the Board.

25.    The Defendant has unilaterally seized control of the Association's management office and will not allow other Board members in good standing or other members of the Association to view the Association's financial records.

26.    The Defendant has seized control over the collection and crediting of assessments to the corresponding unit ledgers.

27.    The Defendant will not provide the Association current copies of any unit ledgers.

28.    On June 21, 2021, at a duly-noticed meeting of the Association's Board of Directors, a majority of the Board voted to name a replacement President due to the Defendant's

abandonment of office due to delinquent assessments. A copy of the June 21, 2021 Meeting Minutes are attached hereto as Exhibit "F."

29. Despite a majority of the Board voting on a replacement President, the Defendant continues to hold himself out as a member of the Board of Directors and the President of the Board.

30. Despite not being a member of the Board, the Defendant continues to commandeer control over the Association's on-site office, finances, and records.

31. To comport with the Board's vote at the June 21, 2021 meeting, the Association filed a Not for Profit Corporation Amended Annual Report with the Secretary of State on July 12, 2021, to remove the Defendant as an officer, Board member, and agent of the Association. A copy of the July 12, 2021 Not for Profit Corporation Amended Annual Report is attached hereto as Exhibit "G."

32. On July 13, 2021, the Association, through its retained legal counsel, sent the Defendant a Demand to Cease and Desist directing the Defendant to cease acting on behalf of the Association. A copy of the Demand to Cease and Desist is attached hereto as Exhibit "H."

33. The Demand to Cease and Desist notified the Defendant that he was not eligible to run for the Board at the January 28, 2021 election.

34. The Demand to Cease and Desist notified the Defendant that to the extent he was voted onto the Board, he had immediately abandoned office due to the assessments owed on the Units being delinquent more than ninety (90) days.

35. The Demand to Cease and Desist notified the Defendant that he not a member of the Board of Directors or held any capacity to act on behalf of the Association.

5

36.    The Demand to Cease and Desist demanded that the Defendant stop acting on behalf of the Association and turn over possession of all Association property and records.

37.    The Demand to Cease and Desist notified the Defendant that he, while unlicensed to practice law, had communicated his own personal legal analysis, advice, and conclusions to the Association membership.

38.    The Demand to Cease and Desist demanded that the Defendant cease issuing legal advice to the Association membership.

39.    The Demand to Cease and Desist notified the Defendant that the July 12, 2021 Not for Profit Corporation Amended Annual Report removed him as an officer, Board member, and agent of the Association given his ineligibility for and abandonment of office.

40.    The Demand to Cease and Desist was personally served upon the Defendant at 4:00 p.m. on July 13, 2021.  A copy of the Return of Service is attached hereto as Exhibit "I."

41.    As non-Board member the Defendant is merely a unit owner and member of the Association.

42.    Section 718.111(1)(c), Florida Statutes, provides,  "A unit owner does not have any authority to act for the association by reason of being a unit owner."

43.    The Defendant, as a non-Board member, has no present authority to act on behalf of the Association.

44.    On July 13, 2021, the Defendant unilaterally filed another Not for Profit Corporation Amended Annual Report renaming himself as the registered agent and President of the Association.  A copy of the July 13, 2021 Not for Profit Corporation Amended Annual Report is attached hereto as Exhibit "J."

45.    The Defendant also unilaterally removed Board members in good standing in filing the Amended Annual Report.

46.    The Amended Annual Report filed by the Defendant does not comport with the vote of the Board.

47.    The Defendant had no authority to file an Amended Annual Report on behalf of the Association.

48.    The Defendant is supplanting his own will for that of a majority of the seventeen (17) member Board.

49.    The Defendant sent a response to the Demand to Cease and Desist (the "Response Letter") on July 14, 2021.  A copy of the Response Letter is attached hereto at Exhibit "K."

50.    The Response Letter sets forth the Defendant's refusal to relinquish control of the operations and property of the Association.

51.    The Response Letter alleges that Unit 322W is not delinquent in the payment of assessments.

52.    The Response Letter does not deny that Unit 1412E is delinquent in the payment of assessments.

53.    The Response Letter attached a Quitclaim Deed recorded on July 13, 2021, transferring the Defendant's interest in Unit 1412E.

54.    The Defendant's actions ignore the directives and will of the Association.

55.    The Defendant's actions are in violation of the Governing Documents of the Association and the Condominium Act.

7

56.     Article XIV(3) of the Declaration permits the Association to bring this action due to the Defendant's failure to comply with the Governing Documents.

57.     Article XIV(3) of the Declaration and section 718.303, Florida Statutes, entitle the Association to the recovery of prevailing party attorneys' fees and costs for bringing this action.

## COUNT I – INJUNCTIVE RELIEF

58.     The Association restates and re-alleges Paragraphs 1 through 56 above as if fully set forth herein.

59.     Section 718.303(1), Florida Statutes, permits the Association to file an action for injunctive relief for a unit owner's failure to comply with the Condominium Act and/or the Governing Documents of the Association.

60.     In accordance with the terms of the Declaration and Chapter 718, Florida Statutes, the Association is charged with the administration and enforcement of the Declaration governing Buckley Towers Condominium.

61.     The Association uniformly enforces the provisions of the Declaration cited herein.

62.     Based upon the foregoing allegations, the Association has no adequate remedy at law for the actions taken by the Defendant, and money damages alone are insufficient to address the harm cause by the Defendant.

63.     The Association, as entity organized pursuant to its Governing Documents and subject to the Condominium Act, has a clear legal right to seek enforcement of the Governing Documents and the Condominium Act.

64.     There is a substantial likelihood that the Association will be successful on the merits of the claim alleged herein.

8

65.     The unjustified and unauthorized actions of the Defendant have and will continue to cause the Association irreparable harm by virtue of the following consequences:

66.     If the actions of the Defendant are not enjoined, the Association will be unable to uniformly enforce the provisions of the Governing Documents.

67.     If the actions the Defendant are not enjoined, the Association will be compromised in its ability to act in the best interests of the Buckley Towers community.

68.     If the actions of the Defendant are not enjoined, confusion and doubt will be created among the membership of the Association and other parties as to the authority of the Association to enforce the Governing Documents.

69.     If the actions of the Defendant are not enjoined, confusion, doubt, and misinformation will pervade that the Defendant is a member of the Board of Directors, the Board President, the authorized agent for the Association, and otherwise retains authority to act on behalf of and bind the Association.

70.     If the actions of the Defendant are not enjoined, the Defendant will continue to assert unauthorized authority over the operations, finances, and physical control of the Association property.

71.     The foregoing instances of irreparable harm caused by the Defendant are continuing in nature and there exists a reasonable probability of such harm continuing in the future.

72.     An injunction, if granted, will serve the public interest by requiring the Defendant to take actions consistent with his legal obligations set forth in the Governing Documents and the Condominium Act.

**WHEREFORE**, Plaintiff, BUCKLEY TOWERS CONDOMINIUM, INC., respectfully requests that this Court issue preliminary and permanent injunctions in favor of the Association and ordering the following against Defendant, JANVIER VILLARS:

A. Finding that the Defendant is not the Board President, a member of the Board of Directors, or the authorized agent of the Association.

B. Finding that the Defendant is in violation of the Declaration the Condominium Act by acting on behalf of the Association without any authority.

C. Finding that the Defendant is in violation of the Declaration and the Condominium Act for interfering with and seizing control of the operations, finances, and property of the Association.

D. Entering a preliminary injunction enjoining the Defendant from further violations of the Declaration and the Condominium Act.

E. Entering a preliminary injunction ordering the Defendant to turn over control of the Association, including physical access to all Association property, bank accounts, and communication methods.

F. Entering a preliminary injunction ordering the Defendant to turn over all books, records, ledgers, and financial information belonging to the Association.

G. Entering a preliminary injunction enjoining the Defendant from taking any actions on behalf of the Association and holding himself out as a representative, agent, director, or officer of the Association.

H. Entering a preliminary injunction enjoining the Defendant from being re-elected to the Board until the Units are brought in good financial standing with the Association.

10

I. Entering a preliminary injunction enjoining the Defendant from interfering with the Association and its agents and Board members from carrying out their duties to operate the Buckley Towers Condominium Association.

J. Permanently enjoining the Defendant from further violations of the Declaration and the Condominium Act.

K. Permanently enjoining the Defendant from taking any actions on behalf of the Association and holding himself out as a representative, agent, director, or officer of the Association.

L. Permanently enjoining the Defendant being re-elected to the Board until the Units are brought in good financial standing with the Association.

M. Permanently enjoining the Defendant from interfering with the Association and its agents from carrying out their duties to operate the Buckley Towers Condominium Association.

N. Awarding the Association attorneys' fees and costs as the prevailing party pursuant to the Declaration and Chapter 718, Florida Statutes.

O. Granting Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

73. The Association restates and re-alleges Paragraphs 1 through 56 as if fully set forth herein.

74. A declaration of condominium is a contract among unit owners and a condominium association, and possesses attributes of a covenant running with the land spelling out the mutual rights and obligations of the parties. *See Cohn v. Grand Condo. Ass'n*, 62 So. 3d 1120, 1121 (Fla. 2011); *Woodside Vill. Condo. Ass'n v. Jahren*, 806 So. 2d 452, 455-56

(Fla. 2002) (quoting *Pepe v. Whispering Sands Condo. Ass'n*, 351 So. 2d 755, 757 (Fla. 2d DCA 1977)).

75. The Declaration is contract between the Association and the Defendant.

76. The Defendant is obligated to comply with the terms of the Declaration.

77. The Defendant is in violation of the terms of the Declaration.

78. Article XIV of the Declaration obligates all unit owners to "be governed by and shall comply with the terms of the Declaration, the By-Laws and the rules and regulations."

79. Article IV(1)(a) of the Bylaws provides that "[t]he affairs of the Association shall be managed by a Board of Directors."

80. Article V of the Bylaws requires that, "[u]nless otherwise specified, **all the powers and duties of the Association** existing under the Condominium Act, Declaration of Condominium, and these By-Laws, **shall be exercised by majority vote of the board of directors**." (emphasis added).

81. Article V(3) of the Bylaws provides that the Board's powers and duties include operating the condominium property.

82. Article V(11) of the Bylaws provides that the Board's powers and duties include "enforc[ing] by legal means the provisions of the Condominium Act, the Declaration of Condominium, the Articles of Incorporation, the By-Laws and the regulations for the use of the property in the condominium."

83. Article X(5) of the Declaration states that "[n]o nuisances shall be allowed upon the condominium property nor any use or practice which is the source of nuisances to residents or which interferes with the peaceful possession and proper use of the property by its residents."

84. The Defendant is not a member of the Board of Directors.

85. The Defendant is in violation of the Bylaws and the Declaration for acting on behalf of the Association without any authority.

86. The Defendant is in violation of the Bylaws and the Declaration for operating the condominium property without any authority.

87. The Defendant is in violation of the Bylaws and the Declaration for regulating the use of the condominium property without any authority.

88. The Defendant is in violation of the Declaration for causing a nuisance by virtue of seizing control of the condominium property and the Association's operations.

89. The Association cannot properly operate with the Defendant's unauthorized interferences.

90. The Defendant's breach of the Governing Documents has damaged the Association.

91. The Defendant's breach of the Governing Documents jeopardizes the Buckley Towers Condominium community.

92. The Defendant's breach of the Governing Documents impedes the Association's Board of Directors from fulfilling their obligations and duties as agents for the Association.

**WHEREFORE**, Plaintiff, BUCKLEY TOWERS CONDOMINIUM, INC., respectfully requests that this Court enter Judgment awarding the following relief:

A. Finding that the Defendant, JANVIER VILLARS, is in breach of the Declaration.

B. Finding that the Defendant, JANVIER VILLARS, is in breach of the Bylaws.

C. Awarding the Association its attorneys' fees and costs in bringing this action.

DocuSign Envelope ID: A1ACE7EB-19FA-4F93-A296-36CDDDF729F8

D.  Granting the Association such other and further relief as the Court deems just and proper.

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint, and that the facts stated herein are true.

Signed on _____   7/16/2021

MARILUCE DE SOUZA, President
Buckley Towers Condominium, Inc.

DATED this 16th day of July, 2021.

Katzman Chandler
6535 Nova Drive, Suite 109
Davie, FL 33317
Phone No.: (954) 486-7774
Telefax: (954) 486-7782

BY: /s/ Justin M. Smith
Justin M. Smith, Esq.
Fla. Bar No.:  112738
Primary email address: Pleadings@KatzmanChandler.com
Secondary email address: JSmith@KatzmanChandler.com

14

# EXHIBIT
# X6

# Kaufman
# Language, Supra
# "As amended
# from time to time"
### THAT ALL COURTS
### REFUSE TO RESPECT

Filing # 143185625 E-Filed 02/02/2022 06:12:12 PM 

IN THE CIRCUIT COURT FOR THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.

A Private Non-Profit Corporation and Association

Plaintiff,

V.                                          CASE NO: 2021-017383-CA-01

JANVIER VILLARS

Duly Elected President of Buckley Towers

Defendant

_____/

## <u>Memorandum of Controlling Case laws</u>

Mr. Villars hereby records for the court easiness and practicability the case law
that keeps being ignored and denied Declaratory Judgment because it is the
controlling case law now affirmed by the Supreme Court.

Susan Cohn v. The Grand Condominium Association Inc NC10-430
Decided by the Supreme Court on March 31, 2011

The Kaufman v. Shere 347 So.2d 627 (1977)
Decided by District Court of Appeal of Florida, Third District on May 3, 1977

Referring to Buckley Towers Condominium Declaration and Amendments.
Also attached for your convenience.

Sincerely,
/s/Janvier Villars

_____

Janvier Villars
Property Owners Elected Board President for Buckley Towers Condominium
Association

CERTIFICATE OF NOTIFICATION
To all parties involved via the electronic court system

**BK: 6210 PAGE 366**

# BY-LAWS
## OF
## BUCKLEY TOWERS CONDOMINIUM, INC.

I. **IDENTITY.** These are the By-Laws of Buckley Towers Condominium, Inc. a condominium, herein called the "Association", a non-profit Florida corporation, organized pursuant to Chapter 617, Florida Statutes, 1967, and Section 711.12, Florida Statutes, 1967, for the purpose of administering Buckley Towers, a condominium of lands lying and being situate in Dade County, Florida.

1. **Office.** The office of the Association shall be at the administrative offices of Buckley Towers situate upon portions of the recreation facilities.

2. **Fiscal Year.** The fiscal year of the Association shall be the calendar year.

3. **Seal.** The seal of the corporation shall bear the name of the corporation, the word "Florida" the words "Corporation Not for Profit" and the year of incorporation.

II. **MEMBERS.**

1. **Qualification.** The members of the Association shall consist of all of the record owners of apartment units,   shop units, and recreation units.

2. **Change of Membership.** After receiving the approval of the Association elsewhere required, change of membership in the Association shall be established by recording in the Public Records of Dade County, Florida, a deed or other instrument establishing a record title to an apartment unit or shop unit in the condominium and the delivery to the Association of a certified copy of such instrument, the owner designated by such instrument thereby becoming a member of the Association. The membership of the prior owner shall be thereby terminated.

3. **Voting Rights.** The members of the Association shall be entitled to cast one vote for each apartment unit or shop unit owned by them.

4. **Designation of Voting Representative.** If an apartment unit or shop unit is owned by one person, his right to vote shall be established by the record title to his apartment unit or shop unit. If an apartment unit or shop unit is owned by more than one person, the person entitled to cast the vote for the apartment unit or shop unit shall be designated by a certificate signed by all of the record owners of the apartment unit or shop unit and filed with the Secretary of the Association. If an apartment unit or shop unit is owned by a corporation, the person entitled to cast the vote for the apartment unit or shop unit shall be

- 1 -

**DECLARATION OF CONDOMINIUM**

**OF**

**BUCKLEY TOWERS, A CONDOMINIUM**

**DADE COUNTY, FLORIDA**

MADE THIS 17th day of _____December_____, 1968 by Herbert Buchwald, Trustee, for himself, his successors, grantees and assigns, herein called "Developer",

WHEREIN, the Developer makes the following declarations:

I.  PURPOSE.  The purpose of this Declaration is to submit the lands described and improvements described and to be constructed thereon to the condominium form of ownership and use in the manner provided in Chapter 711 of the Florida Statutes herein called the "Condominium Act."

1.  Name.  The name by which this condominium is to be identified is Buckley Towers, a Condominium.

2.  Property Submitted to Condominium Form of Ownership.  The following property is hereby submitted to the condominium form of ownership:

(a)  The Land.  The lands, owned by the Developer, lying and being situate in Dade County, Florida, as more particularly set forth in Exhibit A-1 attached hereto, which lands are herein called "The land."

II.  DEFINITIONS.  The terms used herein and in the By-Laws shall have the meanings stated in the Condominium Act and as follows unless the context otherwise requires:

1.  Apartment.  Apartment means a unit as defined by the Condominium Act which is intended for residential purposes.

2.  Apartment Owner.  Apartment Owner means a person, individual or corporate, who owns an apartment.

3.  The Association.  The Association means Buckley Towers Condominium, Inc., a non-profit Florida corporation, and its successors.

4.  Common Elements.  Common Elements shall include:

(a)  Condominium property not included in the apartment units, recreation units and shop units.

- 1 -

This Instrument Was Prepared By:
Elliott Harris, 1399 Miami Gardens Drive, Miami, Florida  33162

# $\mathfrak{Supreme\ Court\ of\ Florida}$

---

No. SC10-430

---

**SUSAN COHN,**
Appellant,

vs.

**THE GRAND CONDOMINIUM ASSOCIATION, INC., et al,**
Appellees.

[March 31, 2011]

PER CURIAM.

This case is before the Court on appeal from a decision of the Third District Court of Appeal, Cohn v. Grand Condominium Ass'n, 26 So. 3d 8 (Fla. 3d DCA 2009), which held a state statute unconstitutionally applied to impair the parties' contract in violation of article I, section 10 of the Florida Constitution.[1] We affirm.

Organized in 1986, The Grand Condominium is a mixed-use condominium comprising 810 residential units, 259 commercial units, and 141 retail units. The Grand's articles of incorporation, declaration of condominium, and bylaws provide for a seven-member board of directors governing the association, with two

---

1. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

members each elected by the residential unit owners, the commercial unit owners, and the retail unit owners, and the seventh member elected at-large.

In 1995, the Legislature enacted section 718.404, Florida Statutes, regulating mixed-use condominiums. Ch. 95-274, § 38, Laws of Fla. Section 718.404(2) established that in mixed-use condominiums with fifty percent or greater residential composition, the residential unit owners must be entitled to vote for a majority of seats on the board of directors. In 2007, the Legislature amended section 718.404(2) to make it retroactive, adding, "This subsection shall apply retroactively as a remedial measure." Ch. 2007-173, § 5, Laws of Fla.

Susan Cohn, a residential unit owner at The Grand, then requested that The Grand change its voting system accordingly. The Grand filed a declaratory judgment action, seeking a declaration that subsection 718.404(2) constituted an unconstitutional impairment of contract as applied to The Grand. The trial court granted summary judgment in The Grand's favor, holding that the retroactivity provision was unconstitutional under article I, section 10 of the Florida Constitution, and the Third District affirmed.

In Florida, a condominium regime may be created only under chapter 718, the Condominium Act. § 718.104, Fla. Stat. (1985). A condominium is established by recording a declaration of condominium, which is the document that governs the condominium and is binding on all unit owners. See §§ 718.104(2)-

- 2 -

(7), Fla. Stat. (1985).  A declaration of condominium possesses "attributes of a covenant running with the land" and operates as a contract among unit owners and the association, "spelling out mutual rights and obligations of the parties thereto." Woodside Vill. Condo. Ass'n v. Jahren, 806 So. 2d 452, 456 (Fla. 2002) (quoting Pepe v. Whispering Sands Condo. Ass'n, 351 So. 2d 755, 757 (Fla. 2d DCA 1977)).

Here, The Grand's declaration establishes that the retail and commercial unit owners, collectively, shall have majority vote control over the board of the directors.  The Grand's declaration, which was filed in 1986, adopts the terms of "the Condominium Act of the State of Florida (Florida Statute 718, et seq.) in effect as of the date of recording this Declaration" and does not contain "as amended from time to time" language subjecting it to future statutory changes to the Condominium Act.  See Angora Enters., Inc. v. Condo. Ass'n of Lakeside Vill., 796 F.2d 384, 386 (11th Cir. 1986) (noting that express agreement by parties in the declaration of condominium regarding application of future statutes to the association may determine whether parties have a "constitutional protection against future amendments to the Florida Condominium Act which, absent such an agreement, might arguably impair a party's contract obligation"); Sans Souci v. Div. of Fla. Land Sales & Condos., 421 So. 2d 623, 628 (Fla. 1st DCA 1982) ("[F]or purposes of considering whether there has been an unconstitutional

- 3 -

impairment of a contractual obligation by statutes regulating condominiums. . . . there must be determined the date of filing of the superior declaration of condominium and its subordinate documents, such as the master sublease, since such date controls for purposes of fixing the parties' rights and obligations."). Therefore, by changing the distribution of voting power, the retroactive application of section 718.404(2) would alter the rights of The Grand's unit owners in contravention of their contractual agreement.

Article I, section 10 of the Florida Constitution prohibits the enactment of any "law impairing the obligation of contracts." Accordingly, because section 718.404(2) impairs the obligation of contract as applied to The Grand, we affirm the holding of the Third District below. See Pomponio v. Claridge of Pompano Condo., Inc., 378 So. 2d 774, 776 (Fla. 1979) (discussing "the principle that all laws impairing the obligations of contract are constitutionally prohibited"); Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1080 (Fla. 1978) ("It is axiomatic that subsequent legislation which diminishes the value of a contract is repugnant to our Constitution.")

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

- 4 -

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

     Third District - Case No. 3D08-3051

     (Dade County)

Eric M. Glazer of Glazer & Associates, P.A., Hollywood, Florida

     for Appellant

Daniel S. Rosenbaum, Joseph William Janssen, III, Richard Chambers Valuntas, and Mark Gerald Keegan of Rosenbaum Mollengarden Janssen & Siracusa, PLLC, West Palm Beach, Florida; and H. Hugh McConnell of Siegfried, Rivera, Lerner, De La Torre & Sobel, P.A., Coral Gables, Florida,

     for Appellees

- 5 -

Kaufman v. Shere, 347 So. 2d 627 (Fla. Dist. Ct. App. 1977)
District Court of Appeal of Florida
Filed: May 3rd, 1977

Precedential Status: Precedential
Citations: 347 So. 2d 627
Docket Number: 76-1429
Panel: Thomas H. Barkdull Jr., Raymond G. Nathan, Tillman Pearson
Judges: Pearson, Barkdull and Nathan
347 So. 2d 627 (1977)
Sam KAUFMAN et al., Appellants,
v.
Ralph H. SHERE and Inez Shere, His Wife, Appellees.
No. 76-1429.
District Court of Appeal of Florida, Third District.

May 3, 1977.
Rehearing Denied July 27, 1977.
Becker & Poliakoff and George I. Platt, Miami Beach, for appellants.
Patton, Kanner, Nadeau, Segal, Zeller & LaPorte, Miami, for appellees.
Before PEARSON, BARKDULL and NATHAN, JJ.

NATHAN, Judge.

This is an interlocutory appeal and cross appeal from a partial summary judgment in a class action challenging the validity of a Rent Adjustment or "escalation" clause in a condominium recreation lease. The plaintiff Kaufmans are unit owners in Fifth Moorings Condominium and plaintiff Fifth Moorings Condominium, Inc., is the condominium association. Defendants Ralph Shere and the late Inez Shere, his wife, were officers and directors of the corporation which developed the Fifth Moorings Condominium, which is part of a complex that includes seven other condominiums. Defendants were also the lessors of the recreational facilities, which serve the entire Moorings complex.

The lease was assumed by all unit owners as a mandatory condition for purchasing their condominiums. In May of 1974, defendants demanded an increase in rent pursuant to the escalation clause, which calls for periodic rent adjustments in accordance with the Consumer Price Index. Plaintiffs initiated this action on July 1, 1975, seeking, inter alia, declaratory relief with respect to their rights and obligations under Florida Statutes § 711.236, which became law on June 5, 1975. Essentially, that section of the Condominium Act declares escalation clauses in condominium recreation leases void for public policy and prohibits their enforcement.

The trial judge did not pass on the constitutionality of retroactive application of Section 711.236, since he found that the legislature had declared escalation clauses to be *628 unenforceable prospectively only. He also ruled that the Declaration of Condominium by which Fifth Moorings Condominium was created and governed had provided for the adoption of future legislative acts as amendments to the Declaration and that Section 711.236 should therefore be given prospective operation and effect with respect to the Fifth Moorings Condominium.

In accordance with these findings, the trial court granted a partial summary judgment allowing the rent increase of May 21, 1974, but prohibiting any further rent escalations after June 4, 1975. Plaintiffs appealed the upholding of the May, 1974 increase, arguing that Section 711.236 should be applied retroactively. Defendants have cross appealed, asserting that Section 711.236 is unconstitutional and that the Declaration of Condominium should not be interpreted as incorporating the provisions of Section 711.236.

With regard to plaintiffs' argument that Section 711.236 should be applied retroactively, we find that the Florida Supreme Court's recent ruling in Fleeman v. Case, 342 So. 2d 815 (Fla. 1977), is completely dispositive of this question. The Court there ruled that Section 711.236 is inapplicable to contracts which antedate its enactment. Thus, the trial judge properly refused to invalidate the rent increase of May 21, 1974, which occurred before the effective date of the statute.

The only remaining question is whether the Declaration of Condominium of Fifth Moorings was properly interpreted as including the prospective invalidation of escalation clauses mandated by Section 711.236.

The critical contested provision of the Declaration reads as follows:

"1. Except where variances permitted by law appear in this Declaration or in the annexed By-Laws or in the annexed Charter of FIFTH MOORINGS CONDOMINIUM, INC., or in lawful amendments thereto, the provisions of the Condominium Act as presently existing, or as it may be amended from time to time, including the definitions therein contained, are adopted and included herein by express reference." Plaintiffs argue that this language clearly provides for the incorporation of Section 711.236 as part of the Declaration of Condominium,[1] while defendants contend that the quoted provision was applicable only where the Declaration was at variance with the Condominium Act at the time that the Declaration was filed. We do not find this latter argument persuasive.

The contested clause unequivocally states that provisions of the Condominium Act are adopted "as it may be amended from time to time." (Emphasis added.) We perceive no ambiguity in this language, and thus find that it was the express intention of all parties concerned that the provisions of the Condominium Act were to become a part of the controlling document of Fifth Moorings whenever they were enacted.[2] Even if we were to find an ambiguity, we would be forced to construe it against the defendant developer/lessors as authors of the Declaration of Condominium. See Bouden v. Walker, 266 So. 2d 353 (2d DCA 1972); see generally 49 Am.Jur.2d, Landlord and Tenant, § 143.

We hold that the trial judge properly ruled as a matter of law that Florida Statutes § 711.236 was incorporated into the Fifth Moorings Declaration of Condominium by virtue of the express wording of the Declaration itself. In light of this holding, the prohibition against further rent increases subsequent to the effective date of Section 711.236 was also proper.

Affirmed.
NOTES
[1] Section 711.236 comes within Chapter 711, Florida Statutes (1975); Chapter 711 was known as the Condominium Act. Section 711.236 was created by Ch. 75-61, Laws of Florida and codified as § 711.231, Fla. Stat.

[2] Of course, such provisions would only be incorporated to the extent that they were valid, and thus Section 711.236 could only be adopted prospectively.

# EXHIBIT
# X6b

# Mr. Villars Motion to Set Aside Receivership based on Rule 1.540 "FRAUD"

Filing # 137037946 E-Filed 10/21/2021 03:48:35 PM

1

IN THE CIRCUIT COURT FOR THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.
A Private Non-Profit Corporation and Association
Plaintiff,
V.                                                    CASE NO: 2021-017383-CA-01
JANVIER VILLARS
Duly Elected President of Buckley Towers
Defendant Pro se
_____/

**DEFENDANT Motion OPPOSING PAYMENT OF LEGAL FEES.**
**MOTION to COMPEL DISCOVERY.**
**MOTION TO SET ASIDE ORDER for RECEIVERSHIP per Fla.R.Civ.Pro. 1.540(b)**
**Plead for these Motions to be heard on Oct. 25, 2021**

COME NOW, Mr. Villars acting pro se until an adequate attorney is retained. Coincidentally, this is exactly how dozens of Buckley Towers owners will be facing the courts, as a result of this coerced Receivership. Because it places the owners of this association in danger of insolvency, foreclosures, or bankruptcy. A Receivership requested SOLELY by the EX-directors Mr. Alex Nikitins, Ms. Mariluce de Souza, Ms. Magda Pineda, Ms. Norma Torres, Mr. Walter Restrepo... Simply because those ex-directors refused to let go of their illegally obtained personal benefits. Such as the **FOUR parking spaces** that **Mr. Nikitins is STILL keeping**. D i s r e g a r d i n g bylaws, for his self-interests. NIGHTLY depriving the enjoyment of property of three owners; who have to sleep in the parking lot waiting for ONE parking space to become available. That is the abusive entitlement mentality that provoked and led the division in our Board. As it is evident, it was never about the interest of a community. There is NO evidence of those

ex-directors ever caring for anyone else before becoming part of the board. It has been always

clear that to them "Fiduciary Duty" is French for *daily bowel movement*.

## OPPOSING PAYMENT FOR UNVERIFIED LEGAL FEES

This lawsuit has permitted the billing attorneys to rack up costs on their alleged emails, drafts,

meetings records in preparation for their filed Motions.  While never recording in court ACTUAL

EVIDENCE on any of their claims; neither to pursuit the case nor to coerce[1] the Receivership

Equitable Servitude Contract on 560 Property Owners.

Making their legal fees <u>a Material conflict of interest against</u> → <u>Justice in a court of law</u>.

Because those payoffs play a detrimental reason in filing and maintaining frivolous lawsuits.  As

well as **serving attorneys as their well-known, strategic-legal-threat to deter** any other

owner who may be considering defending their property rights.

**A COLLABORATION: To Financially choke Property Owners into oppression**.

Take for instance, the ex-association attorney, Mr. Guy Shir, Esq., who have failed to sumit a

billing statement before. Even after Mr. Villars continuously requested from him.  But then,

<u>Immediately</u> after being fired, and before presenting anything to Mr. Villars, Mr. Shir rushed to

file a Motion for a LIEN against Mr. Villars' home → for still UNKNOWN pending legal fees!

A subtle yet effective way for practicing "*association attorneys*" to collaboratively say,

***"You DO NOT GET IT! <u>The courts are against you, owners</u>! FORGET about your***

***Constitutional blah, blah.  There is no way for you to ever have justice."***

***"So, I will make sure I set apart my piece of this ordeal."***


***It is About $100,000 against BUCKLEY Owners!***

These attorneys alleged legal costs (about $100,000 ) placing a steep financial burden against

Buckley owners; who were purposely NEVER NOTIFIED as Adverse Parties, by attorney Mr.

---

[1] Fla.R.Civ.Pro. 1.120 (b) Fraud. In **ALL averments of fraud** the circumstances constituting fraud <u>shall be stated with such particularity as the circumstances may permit</u>.

Justin Smith of Katzman Chandler law firm. Rather those ex-directors were legally assisted to ILLEGALLY represent Buckley Towers Association <u>WITHOUT even holding a Board Meeting</u> to approve the Receivership, on behalf of Buckley Towers Association.  Deceitfully Taking from 560 Owners Property Rights without Due Process. Intendfully violating the 14th Amendment, **"No State shall   *make or enforce → any law ←*   which shall abridge the privileges or immunities of citizens of the United States; nor shall any State <u>deprive any person</u> of life, <u>liberty</u>, <u>or property</u>,   → <u>without due process</u> of law;"**


**Especially now, that it is evident how,** Buckley Towers elected Executives (President and Treasurer) <u>did not commit any wrong</u>: did not self-serve any benefits from the association, did not commit any fraud, did not steal, DID NOT open any secret bank accounts to put away association funds... Instead, the Executives <u>DEDICATED more than 12 hours per day, six days a week, for the past five months.</u> Accomplishing →  FOR FREE ← for what the Receiver will be doing just as effectively but for $60,000 per month, while indebting more the association.
So, based on Mr. Villars' efforts, it is undeniable that Buckley was finally improving; paying its bills, significantly reducing the inherited debt, repairing and upkeeping properly the property, obtaining the neglected and urgently needed city certifications, and all other duties listed under the Receivers requirements for Buckley…
**BUT WITHOUT NEEDING A SPECIAL ASSESSMENT** ← Because  **IT   CAN   BE   DONE!**
Which further proves the ex-directors frivolous claims were in bad faith. Undeniably disregarding bylaws, state laws, and the private lives of Buckley Towers owners, for their personal interest.


**UNDENIABLY the Plaintiffs failed to provide,** the required **<u>EVIDENCE</u>** to file for Receiver under The State Law - Receivership Act " **(2)(a)**... motion that <u>immediate and irreparable injury</u>, loss, or damage will result to the movant or that waste, dissipation, impairment, or substantial

diminution in value will result to the subject real estate before any adverse party can be heard in opposition **[16 hours after filing the Motion]**; and **(b)**The [plaintiffs] attorney **certifies in writing** all efforts that have been made to give notice **to ALL known Adverse Parties**…" [ALL includes ALL Owners- Not even by email or postage around the association property.]

"**(3)** Only an affidavit, a declaration or a verified pleading, or a motion may be used to support the application for the appointment of a receiver **UNLESS** **the adverse party appears [ALL Owners since the Receivership is not only on Mr. Villars property]** at the hearing or **has received reasonable (more than 16 hrs) prior notice** of the hearing.

So, basically, the Receivership was justified by the Court because of the frozen-bank-accounts fiasco. Which was **deliberately caused** by Mrs. Mariluce de Souza and Mr. Alex Nikitins with the help of Mr. Katzman. By illegally changing in Sunbiz.org, Buckley Towers official Records. Causing the non-payments to service providers including AT&T, the elevator service company that helped us obtain the certificates, and the payments to our maintenance and cleaning crew. A wanton disregard of life and property by Mr. Nikitins and Ms. De Souza against our community. Which should serve as EVIDENCE of bad faith for self-serving purposes.

**So, WHY exactly are these attorneys maintaining the case without merits [2] ?**
Candidly, none of these attorneys CARES for anyone in Buckley. Their business of 'legal' representation is for PROFIT.  That is logical. So, let's skip the good samaritan reasoning for intervening in a Private Association Business and violating Privacy.  It's an insult to those who know the history of the harmful activities by Association attorneys in Buckley. Their interest is to

---

[2] Factors for determining whether prosecution was brought in bad faith or to harass include: (1) whether it was frivolous or undertaken with no objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for exercise of constitutional rights; and (3) whether it was conducted in manner to harass or to constitute abuse of prosecutorial discretion, typically through unjustified and oppressive use of multiple prosecutions). *Phelps v. Hamilton*, 59 F.3d 1058, 1064-65 (10th Cir. 1995)

keep control of the PROPERTY of our Association. So the Association attorney can gradually (one owner at a time) take PROPERTY by filing false debt claims. As it is EVIDENT with this frivolous lawsuit.    Here coined as "The Katzman Special." Since Mr. Katzman has been rehired by Mr. Nikitins and Mrs. De Souza, as the association attorney.

### MOTION to COMPEL DISCOVERY per Fla.R.Civ.Pro 1.280 and 1.350

However, being that their claimed legal costs are directly related to information regarding this particular case; pursuant to FRCP Rule 1.280; all that information must be available for inspection, without redaction, to Mr. Villars, the Defendant. And until all the facts are known and verified, the court should treat all entities equally, in the court of law.

In addition, being that none of the billing attorneys comply with the Florida Rule of Civil Procedure 1.280(b)(5) to claim any privilege information and the failure to comply by not providing a privilege log constitute a waiver of privilege. See *Metabokfe International. Inc. v. Holster*, 888 So.2d 140(Fla 4th DCA 2002), citing *General Motors Corp. v. McGee*, 837 So.2d 1010, 1032 (Fla. 4th DCA 2002); see also *Nationwide Mutual Fire Ins. Co. v. Hess*, 814 So.2d 1240 (Fla. 5th DCA 2002)

Mr. Villars moves this Court, pursuant to Rule 1.350(b) of the Florida Rules of Civil Procedure, to compel a proper, unredacted attorney's fees computation, as well as allowance of a proper and accurate evaluation of the subject matter information, billed to the particular details that relate to the case.  All information should be readily available for inspection in its natural state, now that the bill summary has been verified by the corresponding law firms and duly recorded.


**WHEREFORE Mr. Villars pleads for EQUITABLE RELIEF,**

Being that this court favors withholding legal rights, privileges, and benefits until this court makes its final ruling on the case, Mr. Villars pleads, **in equity**, to bar any type of financial benefit to any of the entities who are profiting from this frivolous lawsuit → Equally depriving them until the case is properly adjudicated and finalized.

Alternatively, this Court would be condoning and promoting frivolous lawsuits to be filed against any legally unprotected class of property owners, as an acceptable legal practice. Thereby, judicially facilitating a constant impediment to Constitutional Rights, through the intimidation of and imposition of UNVERIFIED legal costs. Whereby any common person would be deterred from defending any frivolous suit, like this one.  By the court restricting his or her legal rights through a choice between being a victim of this known 'legal' corruption or being railroaded into bankruptcy for seeking equal justice.

1.  Inspection according to FS 1.280 of every claimed cost for this suit, including that of the Defendant attorney Mr. Shir and the Receivers' attorney.

2.  For any information claimed as "qualified privileged information" to comply with Fla.R.Civ.Pro 1.280(6) specifically

3.  An unrestricted and full discovery of Mr. Hoffman's and Mr. Abadin, Esq. Receiver reports on Buckley Towers. Since they were contracted as "Experts" on the issues of this case.

4.  INSPECTION OF ALL MERITS HELD against Mr. Villars and any other ex-director.

5.  Inspection of all bank-related information with City National Bank, including the $3.5MM.

6.  Restrain from paying any of the profiting parties until Mr. Villars has confirmed that indeed the information billed was regarding this suit and the claimed time-cost is fair.

7.  Restrict any Motions for liens against Defendant until the case has been made final.


## MOTION TO SET ASIDE the RECEIVERSHIP ORDER per Fla.R.Civ.Pro. 1.540(b)

### (1)... inadvertence, surprise, or excusable neglect;

This case was mishandled ab inition by the recently fired association attorney Mr. Guy Shir.  For refusing to file the Motions to Show Cause of the EVIDENCE claimed on the case. Refusing to address the LACK OF JURISDICTION of the Court. Refusing to

challenge the court over the required elements on the Motion for Injunction. But most importantly, at REFUSING to oppose the INSUFFICIENT NOTICE and the lack of MANDATORY EVIDENCE to invalidate the Motion for Receivership.  Rather automatically accepting it without consulting first with Mr. Villars.  Mr. Shir's fear of upsetting the Court Judge was, for some <u>unexplained</u> reason, far more important than zealously protecting this private community's interests and its duly elected president. Although he was adequately informed on what exactly was expected from him. He continuously failed to even file motions before the opposing party, when he had a time advantage.  Including failing to inform Mr. Villars, after receiving his retainer fee, that he was going on vacation and that he was not going to file any opposition to the pleading, until after he came back.  This was among the many surprises that harmed Mr. Villars' case.  Because from the beginning he afforded the opposing party time to file a Motion for Receivership. When the case could have been dismissed for LACKING JURISDICTION ab initio.

## (3) fraud

The Kaufman Supra estoppel, which serves as Extrinsic Evidence of Fraud on the Court. Whereby the Court's Jurisdiction is challenged[3] **by** the operation of the Association's bylaws and the 14th Amendment Contract Clause. Where the ex-directors, claiming to represent Buckley Towers, were already <u>Automatically Removed</u> from the Board of Directors, prior to them filing their frivolous suit.  They were Disqualified, by operation of the Association bylaws, for failing to comply with their Fiduciary Duties. For deliberately refusing to attend three Board Meetings, <u>in a year</u>. Keep in mind, we held office only

---

[3] **"Once jurisdiction is challenged**, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but rather dismiss the action." Melo v. U.S. 505 F2d 1026. Also Main v. Thiboutot, 100 S. Ct. 2502 (1980), and Stuck v. Medical Examiners 94 Ca 2d 751. 211 P2d 389.  "There is no discretion to ignore lack of jurisdiction." Joyce v. U.S. 474 2D 215

from February to July 2021.   However, the profiting attorneys attending the case collaborated to omit the litigation of this evidence and Constitutional infringement. *"An impairment [of contract] occurs…when a contract is made worse or is diminished in quantity, value, excellence or strength."* Lawnwood Medical Center, Inc. v. Seeger, 959 So.2d 1222 (Fla. 1st DCA 2007).

## Misrepresentation

Mr. Shir's legal misrepresentation, on what is acceptable to legally challenge in court, has caused both of the Receivership Orders to go → UNCHALLENGED against the Association's interests!   He convinced Mr. Villars, that he had to permit the Court to place the Receiver against the association.  To avoid upsetting the Judge, because he has discretionary power to rule against anyone's case; regardless of whatever facts, evidence, contractual privileges, or constitutional rights. Thus limiting his legal defense to challenging Mr. Hoffman's credentials and past experience as a Receiver.

## Misconduct of an adverse party

At the Plaintiff filing a frivolous claim that they knew they couldn't uphold in court. To coerce a motion for Receivership WITHOUT EVIDENCE or a "Reasonable Prior Notice" - By filing that motion at the very last minute, to prevent adequate litigation of their allegations. Only shows malice intent to defraud the opposing party IN COURT. Coercing acceptance of the Receiver for a → **"temporary term"** ← *"of 40 days"* → *"to produce a Receiver Report"* for the court.  Just so a week later, to record an UNOPPOSED (by Mr. Shir)   "Adjudged Order" of a **Permanent** Receiver, naming Mr. Hoffman.  That is a set of completely different dynamics of what was agreed upon in court. Thus falsely claiming Adjudication when the matter was NEVER afforded an

opportunity to fully litigate the MISSING EVIDENCE.  An OVERT deceitful legal practice that does not constitute a reasonable or fair treatment in the court. To deprive → by Katzman Chandler law firm COMMON fraudulent means → 560 Property Owners of their Constitutionally protected property right of Due Process.

**Plead for Judicial Notice on:  The Plaintiff FAILURE to present EVIDENCE**

**(1)** *the moving party* **[EX-DIRECTORS]** *has clear legal title to or a lien or other right in the subject property* ← [Because the Plaintiffs claiming to represent Buckley were previously disqualified as directors by their own breach of fiduciary duty to attend board meetings.]

**(2)** *receivership is necessary* **to prevent** *fraud or self-dealing, or keep the property from being lost, removed, or destroyed;* [NO EVIDENCE was presented to support their allegations. Only NONaffidavit hearsay = does not comply with FS714 requirement]

 **(3)** *there is no alternative remedy that adequately protects the property.* [As above, NO evidence of danger on the property. Rather the Ex-directors complained that Mr. Villars was handling numerous tasks, dedicated to resolving the pending issues including the city mandated 40-50 yr. Certification and the Elevator Inspections which were neglected since 2018!]  See Granada Lakes. 125 So. 3d at 759; Apalachicola N. R. Co. v. Sommers, 85 So. 361 (Fla. 1920); Recarey v. Rader, 320 So. 2d 28 (Fla. 3d DCA 1975).


**IN CONCLUSION:**

**The Court DID NOT RECEIVE 1.** Reasonable Prior Notice on the Motion for Receivership before placing the "temporary receiver". **2.** The Adverse Parties were INTENTIONALLY NOT NOTIFIED and therefore deprived of Due Process. **3.** The Court LACKS Jurisdiction by Operation of the Private Association Governing Documents, The Kauffman Supra, and the 14th Amendment. **4.** The EX-Directors LACK "Clear Legal Title" and Legal Standing to represent the Association for being Disqualified before filing

the suit. **5.** NO Director can make Association detrimental decisions without NOTICE, Board Meeting, and while denying owners' Participation. In accord with the 14th Amendment. **6.** ANY detrimental decision to Private Property, for which the OWNERS have a Right to VOTE, according to the Association Governing Documents MUST be respected as a Fiduciary Duty. **7.** Katzman Chandler firm duly intended to defraud the court at filing a suit without having proof of wrong and without the <u>Required EVIDENCE</u> of Fraud, theft, misappropriation of funds, Neglect or danger of loss of the property, or danger to the owners lives to move the court for Receivership. **8.** This Case was legally misrepresented ab initio by Mr. Shir's refusal to file what Mr. Villars asked from him, as his client representing the best interests of the Association.

**WHEREFORE, Mr. Villars prays for the court to SET ASIDE the Receivership Order** and pursuant to the Status Quo doctrine, respecting this Private Association Covenants, place back the <u>Duly Elected</u> Executives.  Who were accomplishing for this community what most believe was impossible → To do for others without illegally taking anything in return.

Sincerely,
<u>/s/Janvier Villars</u>
Janvier Villars
Property Owners Elected Board President for Buckley Towers Condominium Association

## CERTIFICATE OF NOTIFICATION

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using Court's CM/ECF System on this 20th day of October 2021, which will generate a notification to all parties involved in this case.

# EXHIBIT
# X8

# Order Granting
# the '*Neutral*'
# Receiver's
# Motion for Stay

Filing # 143415016 E-Filed 02/07/2022 01:38:31 PM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: <u>2021-017383-CA-01</u>
SECTION: <u>CA04</u>
JUDGE: <u>Carlos Guzman</u>

**Buckley Towers Condominium, Inc.**

Plaintiff(s)

vs.

**Janvier Villars**

Defendant(s)

_____/

### <u>ORDER GRANTING RECEIVER'S MOTION TO STAY</u>

This matter, having come before the Court upon the Receiver's Motion to Stay, and the Court having reviewed the motion, heard argument, and being otherwise full advised, it is:

ORDERED that the Receiver's motion is respectfully **granted**. The litigation of the merits of this case is stayed for a period of ninety (90) days from the date of this order. The Receiver's activities and duties as ordered by the Court, and matters incident and related thereto, shall go forward.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>7th day of February, 2022</u>.

<u>2021-017383-CA-01 02-07-2022 1:25 PM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2021-017383-CA-01

Filing # 141125149 E-Filed 12/30/2021 10:03:48 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2021-017383-CA-01

BUCKLEY TOWERS CONDOMINIUM, INC.,

      Plaintiff,

vs.

JANVIERS VILLARS,

      Defendant.

_____/

## **RECEIVER'S MOTION TO STAY**

      Ramon Abadin, the court-appointed receiver for Buckley Towers Condominium, Inc. (the "Association"), moves to stay the litigation of the merits of this action, and states:

### **I. Procedural Background**

      The underlying issue in this case centered around the control of the Association. The Association's Verified Complaint states that on January 28, 2021, the Association held its annual meeting and election where Mr. Villars was allegedly elected as President of the Association. Verified Complaint, at ¶ 12. On July 16, 2021, the Association filed this action against Mr. Villars, challenging his election, and alleging that at the time Mr. Villars submitted his notice of intent to run for the board of directors, he was more than ninety days delinquent in the payment of assessments to the Association. *Id.* at ¶ 15. Accordingly, the Association alleged that Mr. Villars was not eligible to be a candidate for board membership. *Id.* at ¶ 19. *See* Section 718.112(2)(d)(2), Florida Statutes ("A person … who is delinquent in the payment of any assessment to the association is not eligible to be a candidate for board membership.").

CASE NO. 2021-017383-CA-01

The Association alleged that Mr. Villars unilaterally seized control of the Association's management office and prevented other board members in good standing from viewing the Association's financial records. *Id.* at ¶ 25. Furthermore, the Association alleged that Mr. Villars seized control over the collection and crediting of assessments to unit ledgers and refused to provide copies of unit ledgers to the members of the Association. *Id.* at ¶ 26-27. Mr. Villars, for his part, denies the allegations of the Association's Verified Complaint and maintains that he was properly elected president of the Association.

On August 3, 2021, City National Bank of Florida ("CNB") filed a Complaint for Interpleader and Other Relief in the matter styled: *City National Bank of Florida v. Buckley Towers Condominium, Inc.*, Case No. 2021-018531-CA-01. In its Complaint, CNB alleged that it had received various email correspondence with conflicting instructions from Mariluce de Souza and Janvier Villars regarding the authorized signatories of the Association's accounts held at CNB. CNB sought an order to interplead the funds in the Association's account into the Court registry pending the proper disposition of the case. That matter was transferred to this division and appears to have been resolved by the appointment of the Receiver.

On August 30, 2021, the Court entered an Order Appointing Receiver and appointed Leigh Hoffman as receiver for the Association. *See* Order Appointing Receiver. Later, on October 8, 2021, the Court appointed Ramon Abadin as successor receiver for the Association. *See* Order Appointing Successor Receiver. Since October 8, 2021, the Receiver has maintained uninterrupted control over the Association pursuant to the Court's Order Appointing Successor Receiver, and he will continue to perform the duties charged to him by the Court.

2

CASE NO. 2021-017383-CA-01

## II. The Court Should Stay the Litigation of the Merits of This Action Because the Court has Appointed a Receiver

The Court should stay the litigation of the merits of this action because the appointment of the Receiver has mooted the underlying dispute, and it is not in the best interest of the Association to engage in expensive litigation.[1]

Due to the dispute regarding Mr. Villars's candidacy for President of the Association, and the CNB interpleader action concerning control of the Association's bank accounts, the Court appointed a receiver to control the Association. As the Court has already made the determination that a receiver is appropriate to resolve the dispute over control, continuing to litigate the merits of this case would be a waste of the Court's time and resources, and those of the Association. The Court has broad discretion to stay the underlying litigation. *See REWJB Gas Invs. v. Land O'Sun Realty*, 643 So. 2d 1107, 1108 (Fla. 4th DCA 1994). And, the Court would be justified to stay this litigation because the primary underlying dispute – control of the Association – is moot.[2]

---

[1] Florida courts have the power to appoint a receiver in cases involving non-profit condominium association pursuant to section 718.1124(1), Florida Statutes (if the association fails to fill vacancies on the board); § 718.117(7)(a) (if there is a natural disaster and the members of the condominium association's board of directors cannot be found); and § 617.1432 (for the purpose of liquidating and winding up the affairs of a non-profit corporation). However, "nothing in the statutory language of these sections expressly prohibits or even implies that these enumerated circumstances are the only instances in which a court may appoint a receiver in cases involving a non-profit condominium association." *Grenada Lakes Villas Condo. Ass'n v. Metro-Dade Invs. Co.*, 125 So. 3d 756, 759 (Fla. 2013). The Court has the authority to make such appointment under any of the common law grounds for the appointment of an equitable receiver. *Id.* The Court may appoint a receiver to manage the affairs of a condominium association due to allegations of mismanagement, neglect, fraud, and dishonesty. *Id., citing Inverrary Gardens Condo. I Ass'n, Inc. v. Spender*, 939 So. 2d 1159, 1160 (Fla. 4th DCA 2006). The Court may also appoint a receiver to manage and distribute funds held by the association where the association refuse to pay monies owed despite court order to do so. *Buckley Towers Condo., Inc. v. Buchwald*, 340 So. 2d 1206, 1207 (Fla. 3d DCA 1979).

[2] A case is moot when it presents no actual controversy or when the issues ceased to exist. *Synergy Contr. Grp., Inc. v. Fednat Ins. Co.*, Case No. 2D21-144, at *9 (Fla. 2d DCA 2021), *citing Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992).

CASE NO. 2021-017383-CA-01

Further, it is not in the best interest of the Association to continue to litigate this case as the Association is not in a stable financial condition. For example, as detailed in the Receiver's report, the Association owes significant sums to various vendors totaling over $400,000, and faces may challenges related to the need for repairs to the physical plant of the condominium, resolution of code violations, the need to complete 40- and 50-year certifications, and other pending litigation. The limited resources of the Association should be used to address these various urgent matters, and not to litigate the now-resolved dispute in this case.

As such, the Court should stay this action to allow the Receiver to continue to stabilize the Association until such time that the Receiver will recommend and the Court determines that it is appropriate to hold an election and turn over control of the Association to a new board of directors, and grant such further relief as the Court deems just and proper. The Receiver anticipates that such an election can be held in 2022, with a potential advisory board election in conjunction with the Association's ordinary annual meeting.

WHEREFORE, Ramon Abadin, as Receiver for Buckley Towers Condominium, Inc., requests that the Court grant the foregoing relief, and such other relief as the Court deems proper.

Respectfully submitted,

DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Primary - rlandy@dvllp.com
Primary - mpierre@dvllp.com
Secondary – jflores@dvllp.com

By: s/Russell Landy
      Russell Landy
      Florida Bar No. 444417
      Markenson Pierre
      Florida Bar No. 1012174

4

EXHIBIT
X8b

Buckley Towers
1991
Amendment
3-strikes
Automatic
disqualification of
Board Directors

8b

REC. 14793PG1593

3 strikes automatic board disqualification

2. If an election for recall and removal of an Officer or Director shall be for cause, a bill of particulars shall be mailed to the Officer or Director in question ten (10) days prior to the meeting.

3. Concurrence of two-thirds (2/3) of the members of the Board of Directors voting by closed ballot shall be necessary to initiate action for recall and removal of an Officer or Director.

4. Recall and removal is subject to concurrence of a majority of the voting membership of the Association by closed ballot. The vote of the membership shall be held not later than thirty (30) days after the Board of Directors has taken action to recall and remove.

Addendum to Section 2 - Removal of Officer or Director from office

Any Officer or Director who fails to attend three (3) Board meetings during the year, unless such absences are due to sickness or a death in the family, will automatically be removed from the Board.

Article 3, Section 5, Regular Meetings

Regular monthly meetings of the Board of Directors must be held on the third Thursday of each month at 7:00 P.M.

---

2. If an election for recall and removal of an Officer or Director shall be for cause, a bill of particulars shall be mailed to the Officer or Director in question ten (10) days prior to the meeting.

3. Concurrence of two-thirds (2/3) of the members of the Board of Directors voting by closed ballot shall be necessary to initiate action for recall and removal of an Officer or Director.

4. Recall and removal is subject to concurrence of a majority of the voting membership of the Association by closed ballot. The vote of the membership shall be held not later than thirty (30) days after the Board of Directors has taken action to recall and remove.

Article 3, Section 5, Regular Meetings

Regular monthly meetings of the Board of Directors must be held on the third Sunday of each month.

RECORDED IN OFFICIAL RECORDS BOOK OF DADE COUNTY, FLORIDA.
RECORD VERIFIED
Clerk of Circuit & County Courts

EXHIBIT
X11

The Court
Receiver only
'*Quarterly* Report'
after eight
months

Filing # 144204331 E-Filed 02/18/2022 12:58:25 PM

IN THE CIRCUIT COURT FOR THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS CONDOMINIUM,
INC,

       Plaintiff,

CASE NO. 2021-017383-CA-01

v.

JANVIER VILLAS,

       Defendant.

_____/

## RECEIVER'S FIRST QUARTERLY REPORT

Ramon Abadin, the court-appointed Receiver in the above-captioned action, submits his first quarterly report setting forth his activities and efforts to fulfill his duties under the Order Appointing Successor Receiver from November 22, 2021 to February 15, 2022 (the "Reporting Period").

## I.    INTRODUCTION

Since his appointment, the Receiver has worked diligently with his professionals to efficiently operate Buckley Towers Condominium, Inc. (the "Association") for the benefit of the Condominium's residents and the creditors of the Association by identifying and reviewing all known assets and records of the Association, including without limitation funds held in multiple bank accounts, bank records, and physical data comprised of files stored on the Association's property. Specifically, the Receiver has taken over all business operations of the Association, including management of the day-to-day operations at the Association, has taken over exclusive control of the Association's bank accounts.

Unfortunately, the books and records of the Association have not been properly maintained. Certain construction began but was not completed. The Association was substantially

behind in paying bills as they became due, and several lawsuits are pending for nonpayment of debts. The property was not well maintained and was partially in disrepair. To put it bluntly, the situation was and remains difficult. In addition, as set forth in the Recover's Urgent Motion to Show Cause, the Defendant in this proceeding has attempted to interfere with the Receivership, taking time and expense from the task at hand.

The Receiver continues to assess many open issues with the operations, assets, liabilities, and physical plant of the Association and is working on a plan to address those issues in compliance with his obligations under the Order Appointing Successor Receiver. The Receiver has entered appearances in various claims against and/or on behalf of the Association. The Receiver is in the process of investigating the Association's other potential claims.

The Receiver does believe that the association can be returned to its membership this year and will propose a process for doing so within the next quarter.

## II.   THE APPOINTMENT AND DUTIES OF RECEIVER

On July 18, 2021, the Association sued its former President, Janvier Villars, for breach of contract and injunctive relief regarding his position as President of the Association. Because issues existed regarding who had authority to act on behalf of the Association, to protect the association and its members, on August 30, 2021, the Court appointed Leigh Hoffman as Receiver for the Association. *See* Order Appointing Receiver.

To avoid even the appearance of a conflict of interest, on October 8, 2021, the Court entered an Order Appointing Successor Receiver (the "Appointment Order"). Pursuant to the Appointment Order, Ramon Abadin was appointed as successor Receiver of all assets of the Association.

The Receiver's mandate was to, *inter alia*, take possession and control of the Association and its property, conduct an investigation and review of the Association's outstanding bills and expenses to determine priority of items to be paid, and preserve, protect, and maintain the Receivership Property and the Association. *See* Appointment Order at p. 2-3.

## III.     THE RECEIVER'S ACTIVITIES AND EFFORTS TO DATE

### A.     Employment of Professionals

Immediately upon his appointment and review of relevant documents, the Receiver conducted the necessary planning and determined his need to employ certain professionals to assist him in carrying out his duties and responsibilities under the Appointment Order.  Pursuant to the Appointment Order, the Receiver was provided with authority to "[e]mploy legal counsel or other professionals on behalf of the Receiver or the Association as deemed by and in the sole discretion of the Receiver." *See* Appointment Order ¶ 7.

Accordingly, the Receiver engaged Damian & Valori Culmo Trial Attorneys ("Lead Counsel") as his lead counsel and retained Properties Solutions, FL Corp. (the "Bookkeepers") as his bookkeepers.   Further, the Receiver retained Accounts It, LLC, who like the Bookkeepers had been retained by the predecessor Receiver to provide CPA services to the Association.  And, the Receiver retained Gerstle, Rosen & Goldenberg, P.A. ("Gerstle") to perform the Association's audit function. The books and records of the association had not been maintained and the 2020 financials and audit had not been performed.

The Receiver also retained the services of Florida Skyline Management, Inc., a licensed community association manager to perform such duties as are customarily performed by a community association manager.  The duties include, but are not limited to, financial services

3

relating to collection of assessments, budget preparation, administrative services, negotiating vendor contracts, and unit owner and resident service.

The foregoing professionals have been instrumental to the Receiver's success in this case thus far, helping him to secure the Association's assets, communicating with financial institutions and the prior property managers to obtain information and records, investigating and pursuing Association claims, and effectively operating the Association on an interim basis.

**B.      Efforts Obtaining Financial Records and Securing Assets**

Following his appointment, the Receiver and his professionals coordinated with the predecessor Receiver to transfer control of the Association and to understand the efforts taken up to that time to secure the assets of the Association. Further, the Receiver sought to review all available documents associated with the Association for the purpose of identifying and investigating its assets and liabilities. As mentioned above, the Association's financial records were incomplete and unreliable. Together with the Bookkeepers, the Property Manager, and Accountant, the Receiver has consolidated and reconciled the Association's bank accounts for 2020 and 2021[1] and is performing an audit for both years.

The auditors are still performing their review, the Receiver is not yet able to present the Court with audited financial records, but will continue to work to complete those records and will submit them to the Court and make them available to the members as soon as possible.

**C.      Taking Over the Association's Business Operations**

Pursuant to the Appointment Order, the Receiver and the Property Manager assumed the Association's business operations, including the collection of fees, handling necessary maintenance, construction, and repairs to Association property, and maintaining owner and

---

[1] The Receiver will also reconcile the Association's financials for 2018 and 2019.

4

resident relations, processing of rental applications, transfer of units, and the maintenance of the landscaping, fire alarms, elevators, and trash collection. The Receiver's initial investigation revealed that the Board of Directors of the Association had failed to cause the necessary maintenance and repair of the common elements of the Condominium, failed to maintain a budget or proper books and records, and permitted mismanagement and waste of association funds and assets.

1. <u>Maintenance and Repairs</u>

The property is due for its mandatory 40-Year Recertification, which has not been completed. The Receiver determined that some work had been completed towards the 40-Year Recertification and that the East tower may have already obtained structural recertification pending confirmation from engineers. The Receiver retained the services of the engineering firm for the Association, Pistorino & Alam Consulting Engineers, Inc. ("Pistorino & Alam"), to assess the work necessary to obtain full recertification for all structures on the premises.

The Receiver identified several issues that required immediate attention. For example, the Receiver determined that the equipment pump room had been condemned due to concern that it would collapse, and there was a major leak in the east tower that could not be addressed until the pump room was repaired. The Receiver approved the shoring-up of the pump room, which work was recently completed. Upon completion of the shoring-up, Pyke Mechanical repaired the major pipe leak in the east tower break room in late November 2021.

On February 9, 2022, Pistorino & Alam issued 40 Year Building Recertification Reports for the two towers deeming the buildings "structurally and electrically 'safe with qualifications'

5

pending remediation of defects identified in the attached report. Additional investigation and testing are required for electrical certification." *See* **Exhibits A and B**.[2]

Further, Pistorino & Alam, has stated that the swimming pool and pool deck do not require a 40 Year Recertification reports, but that there are certain repairs which are necessary to those structures which were previously identified in 2017. As the Association never performed those repairs, the repair documents require update and re-bidding.

The Receiver determined that the Association had failed the Miami-Dade County Fire Inspection and had violations and fines dating back to 2017, which prevented the Association from obtaining the necessary Life Safety Permit. Violations identified in the Fire Inspection Report includes, *inter alia*, failure to provide emergency lights throughout common areas, failure to provide generator inspection report clear of deficiencies, failure to provide self-closing laundry room doors, failure to pay outstanding fees, and failure to provide self-closing trash chute doors. On June 14, 2021, prior to the Receiver's appointment, the Association entered into a Consent Agreement with Miami-Dade County Code Enforcement Bureau which provided the Association nine (9) months to address the violations identified in the Fire Inspection Report. The Receiver has advised code enforcement of his appointment and has begun addressing the violations.

On October 25, 2021, the County Health Department closed the Association pool due to, *inter alia*, excessive algae growth at the bottom of the pool, a missing drain grate, chlorine levels which were out of acceptable range, and other issues. It was determined that the Association had operated the pool for years without a proper permit. The Property Manager and Receiver retained a pool vendor to address the violations pertaining to the algae growth, chlorine levels, and life /

---

[2] **Exhibit A** also identifies required repairs to the structure of the mechanical rooms on the ground level.

safety rings.  Although there remain other violations to be addressed, the pool passed re-inspection and was reopened on November 23, 2021.

At any given time, at least one of the elevators in the east and west tower has been inoperable.  Each time, the Receiver has engaged an elevator vendor to make repairs; however, the elevators require major repairs.   Near the end of the Reporting Period, the Receiver approved significant repairs to several of the elevators.

Building 1321, which was the clubhouse that formerly housed the management office was damaged during Hurricane Irma.  The building was not repaired and has since been abandoned. The Receiver is investigating whether an insurance claim was made to repair the damages to the clubhouse, and if so, how any funds disbursed were spent.  At present, the building appears to be beyond repair and likely need to be demolished for safety purposes.

2.  Finances, Budget, and Operations

The Receiver identified the Association's service providers and various vendors, determined the performance of each to decide whether to continue their services, and determined if any were owed money.  The Receiver has received numerous outstanding invoices from vendors. – some more than a year old.  The Receiver has been in communication with many vendors who submitted invoices and has prioritized the invoices and corresponding services for payment.  Since the filing of the Initial Report, the Receiver has commenced making payments to some of the Association's vendors where appropriate.

During the reporting period, the Property Manager and Receiver have worked diligently to help the Association save costs and increase services provided to the residents.  The efforts include *inter alia*: negotiating a 20% reduction off the past due balance for the laundry services; securing

a credit of $8,683.98 in the Association's account with AT&T; establishing courtesy bulk furniture pick up with Waste Management; re-introducing the use of security cameras throughout the property and re-instituting fob access in the west tower with no service fee to the Association. Additionally, the Property Manager has established a 24-hour emergency line that all residents can call during non-duty hours, and enabled web updates that allow residents to communicate with the management team through various forms of internet communications. Lastly, the Receiver also brought back services such landscaping and pest control, which had been previously discontinued.

Also, since the filing of the Initial Report, the Property Manager and Receiver coordinated for and alleviated many of the laundry machine issues at the property.

Parking at the Association appears to also be an issue. The condominium documents provide for the assignment to each unit owner of one parking space. The Association has done very little to enforce the one-parking-space-per-unit rule, which has led to many residents occupying 2-3 parking spaces. The Receiver is exploring ways to resolve this issue. Additionally, the Receiver has assessed the deteriorated state of the parking lot surface and is assessing options for its repair and parking space reassignment.

Furthermore, the Receiver determined there has been an absence of proper enforcement of the condominium rules. For example, residents and unit owners leave shopping carts in the hallways; throw bulk trash and boxes down the trash chutes; make capital improvements without first obtaining approval from the Association; have dogs on the property; and make prohibited short-term rentals. The foregoing are prohibited pursuant to the condominium documents, and the Receiver plans to recommence enforcement of the Rules.

The Receiver and his professionals have taken steps to maintain condominium resident and unit owner relations. Indeed, the Receiver provided notice to all residents by posting a letter that

included an explanation of the Receivers appointment and authority, and instructions for submitting future association and storage payments. On November 4, 2021, the Receiver held a townhall meeting via Zoom to formally introduce himself and his team of professionals to the residents and unit owners and answer questions. The Property Manager fields hundreds of calls and emails from residents and unit owners weekly – answering questions and/or providing requested information. Additionally, the Receiver's counsel has met with many unit who have voiced various concerns about the operation of the Association prior to the Receiver's appointment.

On December 16, 2021, the Receiver's representatives held a Zoom townhall meeting with the former board members to hear their concerns and gather any pertinent information which may assist the Receiver in performing his duties under the Order Appointing Successor Receiver.

Also, the Receiver has promptly responded to proper new and overdue statutory records request made by members of the Association in order to provide information and transparency to the unit owners. The Receiver's investigation indicates that the Association had, in some instances, previously failed to do so.

The Receiver has compiled a budget for 2022, which is attached hereto as **Exhibit C**. While, the budget does not increase the monthly assessment amount owed by unit owners at this time, it is anticipated that the monthly assessment amount will need to be increased in the future to meet the Associations operating needs. Further, as detailed below, the Receiver plans to use special assessment funds to cover many outstanding construction and maintenance costs, and to pay amounts owed by the Association. Accordingly, some expenses are not included in the 2022 budget, such as debt service which will be paid from the special assessment during 2022 to

alleviate pressure on the operations; however, there will be remaining debt and the 2023 budget will likely require an increase in monthly assessments to address that issue.

   3. Special Assessment

The Association faces many immediate challenges, including, but not limited to, an aged and failing infrastructure, a lack of reserves, large debts, and the large unit owner delinquency. As a direct result of the Association's current financial and physical condition, the Receiver has determined that the only viable option was to levy a special assessment. The purpose of the special assessment is to provide funds necessary for the continued operation, maintenance, serious life safety repairs, 40-year certification, and repayment of debt. The Receiver held a meeting on December 21, 2021 and informed the unit owners of the special assessment. The first unit owner payments on the special assessment were due on January 15, 2022, and the Association has begun to receive payments from unit owners regarding such amounts. The Receiver's proposed use of the special assessment funds is attached hereto as **Exhibit D.**

   **D.   Association Assets**

The Receiver continues to assess the Association's assets. As of the end of the Reporting Period, the following is a list of the assets of the Association:

   1.   Cash account balances of:

| Account Name | Account Number | Balance | |
|---|---|---|---|
| Operating | 5868 | $ | 219,594.34 [3] |
| Renters Security | 5832 | $ | 58,400.00 |
| Reserve Restricted | 5850 | $ | 75,423.14 |
| CSC Laundry | 5235 | $ | 36,157.38 |
| New CSC Laundry | 5859 | $ | 14,564.21 |
| Special Assessment 2022 | 8555 | $ | 293,672.39 |

---

[3] Due to the monthly insurance and loan obligations only $23,834.69 of this account balance is available for use by the Association for operating expenses.

2.    Five (5) Association-owned residential units and two (2) commercial units which collects $7,375 in rent monthly.   The Association-owned units are:

    a.    Unit 302E, Unit 325E, Unit 614E, Unit 1021E, Unit 1701W, Unit 1222W[4]

    b.    Grocery store space and lease

    c.    Beauty salon space and lease

3.    Accounts Receivable - $652,138.73.

4.    Special Assessment Receivable - $2,593,572.

5.    The Receiver has determined that it is in the best interest of the Association to explore the sale of the Association-owned residential units to bring immediate capital to the Association to address some of the financial shortfalls.  The Receiver has retained the services of a realtor to assist in listing the units for sale and ensure the Association receive market value on the transaction.  Four of the units (302E, 614E, 1222W, and 1701W) are encumbered with a mortgage, which will pose a significant hurdle in realizing substantial funds when sold.  Additionally, the tenants in several units owe several months of rent to the Association.  The Association has retained counsel to commence eviction proceedings and regain possession of the units where appropriate.

---

[4] This unit is the subject of pending litigation styled *Buckley Towers v. Citi Mortgage Financing Inc.*, Case No. 2020-25426-01.

E.     **Ongoing Legal Proceedings**

Pursuant to the Appointment Order, the Receiver may "appear and/or intervene in other matters or actions which relate to or effect the Association ... prosecute, maintain, defend, intervene, and otherwise participate in any legal proceeding by, or on behalf of, or against the Association..." *See* ¶ 20.

The Association is currently a party to several litigation matters.   The Receiver and his lead counsel have appeared in many of the matters, continues to assess the remaining matters and will take appropriate action.   The litigation of which the Receiver is aware is:

- *City National Bank v. Buckley Towers Condominium, Inc.*, Case No. 2021-018531-CA-01.   This matter was transferred to this Court on October 19, 2021, and subsequently resolved.

- *Buckley Towers Condominium v. Certain Underwriters at Lloyd's London*, Policy No. AWS191162 and AOP190341, Case No. 21-017612-CA-01.   The Receiver has authorized counsel previously hired by the Association to continue to litigate this claim against the Association's insurer regarding a loss suffered by the Association.

- *Gruber v. Buckley Towers Condominium, Inc.*, Case No. 21-015675-CA-01.   The Reciever is defending this action brought by a unit owner alleging property damage.

- *Loancare, LLC v. Buckley Towers Condominium, Inc.*, Case No. 015309-CA-01.   The Receiver has appeared in this lender foreclosure action matter and seeks repayment of unpaid assessments.

- *Buckley Towers Condominium, Inc. v. Citi Mortgage Financing Inc. 2020*, Case No. 20-025426-CA-01.   The Receiver is working to obtain service of process in this quiet title action filed prior to the Appointment Order, as an improper deed was

12

reordered purporting to convey a unit owned by the Association to an entity named Citi Mortgage Financing Inc. 2020.

- *Buckley Towers Condominium, Inc. v. Certain Underwriters at Lloyd's of London*, Case No. 19-026711-CA-01. The Receiver has authorized the counsel previously hired by the Association to continue to litigate this claim against the Association's insurer regarding a loss suffered by the Association.

- *Florida Lemark Corp. v. Buckley Towers Condominium, Inc.*, Case No. 19-006775-CA-01. On December 20, 2021, the Receiver has resolved this matter, and the case was dismissed with prejudice on December 30, 2021. Subsequently, the Association complied with its obligations under the settlement agreement between the parties.

- *Buckley Towers Condominium, Inc. v. Estate of Stephen Hicks*, Case No. 2020-009690-CC-23.

- *Weinkoff v. Buckley Towers Condominium, Inc.*, Case No. 029328-SP-05. The Receiver has moved to dismiss this case, as it was filed in violation of the Court's Appointment Order.

The Receiver is also investigating other claims the Association may pursue.

At this time, other than the above, and the claims he is investigating, the Receiver is unaware of any further proceedings (other than this action) to which the Association is a party or by which their rights, interests or assets may be affected. In the event the Receiver learns of any such proceeding, he will take any and all actions that are appropriate and necessary to preserve the interests of the Receivership Estate.

IV.     **PLAN FOR MOVING FORWARD**

As stated above, the Association appears to have been mismanaged for years. Many unit owners failed to pay their monthly association dues and the Receiver has determined that the Association failed to take any steps to remedy the matter. In addition to the significant account receivable, the Association owes $191,000 on an SBA loan and $1,700,000 on a loan from City National Bank. As such, the failure to collect amounts due has cost the Association thousands of dollars in interest, late fees, and penalties. The Receiver will do everything possible to collect as much of the past due amount as possible, which will go a long way in helping the Association pay the Association's vendors and make necessary life safety and capital improvement to the property.

To date, the Receiver has not received professional fees; however, the state of the Association requires the expenditure of substantial funds. The Receiver is filing an application for payment of fees and costs simultaneously with the report, consistent with the terms of the Appointment Order, following the special assessment.

The Receiver is hopeful that in the next quarter he will be able to present a plan to the Court for an orderly election of a new board and turnover of the property back to the Association members during 2022.

IV.     **CONCLUSION**

The Receiver and his professionals appreciate the opportunity to assist the Court in this matter. Significant efforts have already yielded progress, and, the Receiver and his professionals will continue their efforts, as discussed herein, to fulfill the Receiver's duties under the Court's Orders, with the focus on affording the most cost-effective business operations to ultimately

resolve the open financial, building and creditor issues as quickly as possible to turn the Association back over to the owners.

Respectfully submitted this 18th day of February 2022.

DAMIAN & VALORI LLP
*Counsel for the Receiver, Ramon Abadin*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

By: */s/Russell Landy*
Russell Landy
Florida Bar No. 44417
Primary Email: rlandy@dvllp.com
Markenson Pierre
Florida Bar No. 1012174
Primary Email: mpierre@dvllp.com
Secondary Email: jflores@dvllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via an automatic email generated by the Florida Courts E-Filing Portal to those parties of record, on this 18th day of February 2022.

*/s/Russell Landy*
Russell Landy

15

# EXHIBIT
# X13

# The Association vested powers to the elected President as the Chief Officer.

# EXHIBIT
# X13

# The Association immunity and privilege over new contractual obligations

*13*

REC **9323** PG **32**

**9. Acquire Interests.** To acquire and enter into agreements whereby it acquires leaseholds, memberships, and other possessory or use interests in lands or facilities whether or not contiguous to the lands of the condominium and whether or not contained within the condominium property itself, intended to provide for the enjoyment, recreation or other use and benefit of the apartment unit and shop unit owners and to declare expenses in connection therewith to be common expenses.

**10. Borrow.** To make contracts, incur liabilities, and borrow money for Association purposes at such rates of interest as the Board of Directors may determine, issue notes of the Association, bonds and other obligations, and secure any Association obligation by mortgage and pledge of all or any of its property or income.

**VI. OFFICERS.**

1. **Officers and Election.** The executive officers of the Association shall be a President, who shall be a director, a Vice-President, who shall be a director; a Treasurer and an Assistant Treasurer, a Secretary and an Assistant Secretary, all of whom shall be elected annually by the board of directors and who may be peremptorily removed by vote of the directors at any meeting. Any

**9. Acquire Interests.** To acquire and enter into agreements whereby it acquires leaseholds, memberships, and other possessory or use interests in lands or facilities whether or not contiguous to the lands of the condominium, and whether or not contained within the condominium property itself, intended to provide for the enjoyment, recreation or other use and benefit of the apartment unit owners and to declare expenses in connection therewith to be common expenses. Any agreement entered into pursuant to this provision must be approved by the vote cast by two-thirds of the membership votes cast.

**10. Borrow.** To make contracts, incur liabilities, and borrow money for Association purposes at such rates of interest as the board of directors may determine, issue notes of the Association, bonds and other obligations, and secure any Association obligation by mortgage and pledge all or any of its property or income. Any contract or obligation in excess of $50,000, or for a period of more than three (3) years must be approved by two-thirds of the Association membership vote cast.

**VI. POWERS AND DUTIES OF THE OFFICERS.**

1. **President.** The President shall be the chief executive officer of the Association. He shall have all the powers and duties of the Association as set forth in its Declaration of Condominium and those By-Laws (except those powers which are reserved for the directors or members). Among such powers, the President shall:

-6-

BUCKLEY TOWERS CONDOMINIUM, INC

OFF REC 9323 PG 33

person may hold two or more offices except that the President shall not also be the Secretary or an Assistant Secretary. The board of directors shall from time to time elect such other officers and designate their powers and duties as the board shall find to be required to manage the affairs of the Association.

2. **President.** The President shall be the chief executive officer of the Association. He shall have all of the powers and duties which are usually vested in the office of the President of an Association, including but not limited to the power to appoint committees from among the members from time to time, as he may in his discretion determine appropriate, to assist in the conduct of the affairs of the Association. He shall serve as chairman of all board and members' meetings.

(a) **Confer.** Confer freely and fully with the Association directors when so requested by them in connection with the performance of his and their duties.

(b) **Employees.** Select, employ supervise, direct and discharge, in his discretion in the name of the Association as he shall determine, such persons as may be required to fulfill the duties hereunder, providing the cost of said employment is within the fiscal budget prescribed by the board of directors. The President may under the provisions of this paragraph enter into an employment contract without the prior approval of the board of directors, subject to the limitations of the budget.

(c) **Repairs and Maintenance.** Cause the grounds, lands, appurtenances, and those portions of the common elements of the Condominium to be maintained and repaired as may be necessary. Emergency repairs involving manifest danger to person or property, or immediately necessary for the preservation and safety of the property, or for the safety of person, or required to avoid suspension of any necessary service to the condominium, may be made by the President. Notwithstanding this authority as to emergency repairs, it is understood that the President will call an immediate emergency meeting of the board of directors, waiving the quorum requirements, (as previously stated) in order to confer with them regarding these emergency expenditures.

(d) **Laws.** Take such action as may be necessary to comply with all laws, statutes, ordinances, rules, and of all appropriate governmental authority, and the rules and regulations of the National Board of Fire Underwriters, or successor organization. The President, however, shall not take any action so long as the Association is contesting, or has affirmed its intention to contest any such law, statute, ordinance, rule, regulation, order or requirement.

(d) **Purchase.** Purchase equipment, tools, appliances, goods, supplies and materials as shall be reasonably necessary for the maintenance, upkeep, repair, replacement, and preservation of the Condominium, as aforesaid. Purchases shall be made in the name of the Association and within the budget prescribed by the board of directors.

- 7 -

BUCKLEY TOWERS CONDOMINIUM, INC

REC 9323 PG 34

(f) **Insurance.** Cause to be placed or kept in force all insurance required or permitted, in the Declaration of Condominium to be kept or placed by the Association; to act as agent for the Association and each apartment owner; in regard to common property to adjust all claims, in collaboration with the standing insurance committee, arising under insurance policies purchased by the Association; to bring suit thereon in the name of the Association in collaboration with the Insurance Committee, and deliver releases upon payment of claims; to otherwise exercise all of the rights, powers and privileges of the Association in the condominium property as an insured under such insurance policies. The President's authorization under this paragraph is subject to Subd. 4 of Paragraph V of these By-Laws relating to the Powers and Duties of the board of directors which provides that all agreements to purchase insurance upon the condominium property and insurance for the protection of the Association and its members shall require the approval of the board of directors.

(g) **Committees.** President shall have the power to appoint committees from among the directors and members, as he may in his discretion determine to be appropriate. However, the President must at all times have the following standing committees functioning; and have at least one or more board members assigned thereto, and every director shall be appointed to a standing committee.

    (1)   Budget
    (2)   Revisions, Rules & Regulations
    (3)   House, Building & Planning
    (4)   Purchase
    (5)   Insurance
    (6)   Sales and Rentals.

(h) **Access.** Obtain access to the common elements of the condominium at all times, and further, obtain access to each apartment unit during reasonable hours, as may be necessary for the maintenance, repair or replacement of any common element contained therein, or accessible therefrom, or for the making of emergency repairs therein necessary to prevent damage to the common elements or any other apartment unit or units, or for the purpose of enforcing the provisions contained in the Declaration of Condominium Facility Lease, these By-Laws, and the rules and regulations of the Association.

-6-

BUCKLEY TOWERS CONDOMINIUM, INC

OFF
REC 9323 PG 35

**3. Vice-President.** The Vice-President shall in the absence or disability of the President exercise the powers and perform the duties of the President. He shall also generally assist the President and exercise such other powers and perform such other duties as shall be prescribed by the directors.

**4. Secretary.** The Secretary shall keep the minutes of all proceedings of the directors and other members. He shall attend to the giving and serving of all notices to the members and directors and other notices required by law. He shall keep the records of the Association, except those of the Treasurer, and shall perform all other duties incident to the office of secretary of an association and as may be required by the directors or the President. The Assistant Secretary shall perform the duties of the Secretary when the Secretary is absent. The duties of the Secretary or Assistant Secretary may be fulfilled by a manager employed by the Association.

**5. Treasurer.** The Treasurer shall have custody of all property of the Association, including funds, securities and evidence of indebtedness. He shall keep the books of the Association in accordance with good accounting practices; and he shall perform all other duties incident to the office of Treasurer. The duties of the Treasurer or Assistant Treasurer may be fulfilled by a manager employed by the Association.

(5)

**2. Vice-Presidents.**

(a) The First Vice-President shall in the absence or disability of the President exercise the powers and perform the duties of President. He shall also generally assist the President and exercise such other powers and perform such other duties as assigned by the President.

(b) The Second Vice-President shall in the absence of both the President and First Vice-President exercise the powers and perform the duties of the President. He shall also generally assist the President and exercise such other powers as assigned by the President.

**3. Secretary.** The Secretary shall record the minutes of all meetings of the board of directors, and shall be responsible for preparing and serving all notices to the directors and members, and any other notices required by law. The Secretary shall keep the records of the Association, and shall perform all other duties as may be required by the President and/or directors, incident to that office. The Secretary shall conduct the election of officers and board of directors in accordance with the terms outlined in Section IV Par. 2.

**4. Treasurer.** The Treasurer shall have custody of all property of the Association, including funds, securities and evidences of indebtedness. He shall cause the books of the Association to be kept in accordance with good accounting practice, and shall perform all other duties incident to the office of Treasurer, such as, establish reserves, both funded and unfunded for the payment of any and all costs and expenses of the Association. Should the Association decide to refund special reserve accounts, the Treasurer shall collect for such funds and disburse same at the direction of the Association. The Treasurer shall deposit all funds collected from the Association's members, or otherwise accruing to the Association, in banks and/or savings and loan associations. The Treasurer shall make a monthly financial report to the board of directors, prepared by a certified public accountant. A copy of this report shall be

-5-

BUCKLEY TOWERS CONDOMINIUM, INC

OFF REC 9323 PG 36

distributed to each board member not less than five (5) days prior to this meeting.

(a) Collect Assessments. The Treasurer shall collect all regular and special assessments from the Association's members. The Association hereby authorizes the Treasurer to request, demand, collect, receive, and receipt for any and all assessments and charges which may be due the Association and to take such action in the name of the Association with prior approval of the board of directors, foreclosing the Association's lien therefor, or by way of other legal process or otherwise as may be required for the collection of such assessments. Whenever the overall total amount of owner's delinquent payments exceed $500.00, an item to this effect should be included in the Treasurer's monthly report.

(b) Records. The Treasurer shall identify the source of all funds collected by him, and the disbursements thereof, in accordance with good accounting practices. The records shall be kept at the office of the Association and shall be available for inspection by a committee of the board of directors. The Treasurer shall maintain a continual internal audit of the financial records. It shall be mandatory for the Treasurer to submit to each unit owner, no later than ninety (90) days after each calendar year, a financial statement prepared by a certified public accountant.

Respectfully submitted by the Revisions Committee.

William Kaplan, Chairman
Irving Stone, Asso. Chairman
Elaine Miller, Secretary
Phil Breitman
Norman Geller
Jack Loeb
Sol Stieglitz
Ben Stern

ADDENDUM: Any part of these revised By-Laws and Declarations shall become null and void if same is in conflict with any State or Federal Law.

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA
RECORD VERIFIED
RICHARD P. BRINKER,
CLERK CIRCUIT COURT

BUCKLEY TOWERS CONDOMINIUM, INC

EXHIBIT
X20

Sample of 152
petitions for
Government
Grievance filed
by POWER filed
with the trial
court

Filing # 144730144 E-Filed 02/28/2022 02:12:11 PM

# Property Owners Wanting Equal Rights Democratic Solutions

## I VOTE FOR ALTERANTIVE SOLUTIONS to resolve Buckley Towers Financial and Property Necessary Repairs or Improvements

Considering this is my property, not of the states. I was not convicted or indicted of any criminal act. Nor have I given my rights to the state to administer it. Being that until now, I have been denied, by prior to 2021 boards, the right to participate in how to solve our inherited issues. And the 2021 Board passed the Electronic Vote, as Mr. Janvier Villars promised to do.

**As it is My Contractual Right** *"on any obligation over $50,000".* I vote to repair and improve Buckley by the following alternative less intrusive and confiscating means. Officially refusing the state planned forced Special Assessments. The Receiver's first $3 million or the next covert $20 million that later maybe coerced as: *"because Buckley is in worst condition than estimated," "due to last-minute incidents," and "for the best interest of the Association."*

**1.** **To respect our democratic and contractual Rights** and elected president and Treasurer  So they can continue improving my property. Hence they were cleared, by the Receiver report. They did not commit any crime, nor abuse, or neglect their fiduciary duties. So my TRUST goes to them.  NOT to the ex-directors. Who lied and manipulate us into accepting the receiver at $100,000 per month. Forcing on us into Special Assessment without ever providing alternative solutions.

**2.** **For our elected officers to hire an independent management company,** accountable to the owners - NOT exclusive to the Board - in any breach of our association contract.  Paying them only $5,000 per month - NOT $60K p/m as currently to the management. Plus, requiring them to provide us with constant transparency, online, on all administrative endeavors.

**3.** **To end discriminatory and deceitful rental practices** that actually hurt our property value.  By removing Peggy's amendment of the 3-year-waiting period for rental on our units. Which many (ex-directors included) have been violating openly and made it impractical to enforce, like the dog restrictions. Buckley potential depends on us evolving and recognizing what has been hurting in our progress. The value of our property WILL increase, when we make the changes that increase the demand for the purchase of our units. So the banks can then lend us, INDIVIDUALLY, alot more IF we borrow against our units.

**4.** **Collect all pending debt from delinquent owners.** Which, in the last report produced by our treasurer, was around $1,200,000.  Setting THEM in an extra payment plan at 5% interest rate, so they can save their unit. Rather than Buckley spending $100,000 per unit paying lawyer legal fees.

**5.** **Fine $200 per violation - per day** - on any bulk trash dumping, taking of extra parking spaces, and for the pets' waste in our common areas.  Any accrued violation over $1000 is to be enforced in court against the violators, within 20 days of the fine.  Having them pay for the legal fees and any accidents their negligence caused.

**6.** **File a lawsuit against the Association ex-directors. For negligence on the upkeep of our property.**  Damages should include the failure to pass the 40yr certification after coercing on us the $3.5 million loan in 2015, the loss of our pool clubhouse/office after receiving the insurance proceeds to repair it, the plumbing upkeeping after receiving insurance proceeds on every flood damages reported, and the parking lot repairs when Buckley keeps being sued for this negligence.  Demanding $10 million against the association insurance. Now that we have the State Receiver report to support it.  This will be a lawsuit to recover for the damages caused against us. Instead of collecting from us, for the work promised and defrauded.

**7.** **Amend the description of the abandoned amenities rooms**; which only benefit 0.0005% of the 550 owners, and are only used about 20 days out of the year. That includes the library, the social/pool rooms, extra storage rooms,... Converting them into light commercial spaces, which should produce, by the end of 2022, a least $70,000 per month. This is how I prefer for Buckley to pay for the $3.5million ($46K per month). Saving those operational funds to actually repair and upgrade our common areas.

**8.** **Let Mr. Villars and our resident Engineer in Construction, Dr. Shukrie finish the 40 yr certification WITHIN our budget.**  THEN if funds need to be borrowed to fix or replace the boiler, etc., we can get a loan at a much lower rate with the 40/50 yr certification in hand. This time allowing NO ONE to profit a percentage, for initiating that new multi-million dollar loan against our property.

EXHIBIT
X20b

Vacancies to be
"filled by the
remaining
directors"
Pursuant to the
Association
bylaws.

20b

DPL
RLC 9323 PG 29

(a). Except as to vacancies provided by removal of directors by members, vacancies in the board of directors occurring between annual meetings of members shall be filled by the remaining directors, except that as to the ground floor, in the event a vacancy occurs a special meeting of the shop unit owners shall be held for the purpose of electing a new director.

(b) Any director may be removed by concurrence of two-thirds of the members of the Association at a special meeting of the members called for that purpose. The vacancy in the board of directors so created shall be filled by the members of the Association at the same meeting, except that this provision shall not apply to the directors representing the ground floors.

(b) Any director may be removed at a special meeting called for that purpose by concurrence of two-thirds of the members of the Board of Directors by closed ballot. Unreasonable and unexplained absences from Board meetings for three consecutive meetings shall be one of the reasons for preferring charges for removal. A bill of particulars shall be mailed to the member in question ten (10) days prior to the meeting. Removal is subject to concurrence of 2/3 of the membership of the Association. The vote of the membership shall be held not later than thirty (30) days after the board of directors' recommendation for removal.

(c) An officer may be removed at a special meeting called for that purpose by concurrence of two-thirds of the members of the board of directors by closed ballot. A bill of particulars shall be mailed to the officer in question ten (10) days prior to the meeting. Removal is subject to concurrence of two-thirds of the membership of the Association. The vote of the membership shall be held not later than thirty (30) days after the board of directors'. recommendation for removal.

(d). Vacancies on the board of directors occurring between annual meetings of members shall be filled by the remaining directors of the building in which the vacancy occurred for the balance of the unexpired term.

(d) Vacancies by officers occurring between terms shall be filled in the following manner:

(1) First Vice-President shall succeed the President;
(2) Second Vice-President shall succeed the First Vice-President.
(3) A Second Vice-President shall be proposed by the President with the approval of the board members of the building due to appoint a Second Vice-President.
(4) Secretary or Treasurer shall be proposed by the President with the approval of the board of directors.

-3-

BUCKLEY TOWERS CONDOMINIUM, INC

Vacancies shall be filled by remaining directors

## Memorandum of Laws

|  |  | On Brief Page | Page |
|---|---|---|---|
| A} | **Fed.R.Civ.Pro 1.620 (a) Notice. Pursuant to 1.610** | 1 & 2 | 1 |
| B} | **Fla. Statute 90.105, 90.201, and Rule 1.140(b)** | 2 | 1 |
| C} | **U.S. Constitution  Article  III §2**<br>Over Federal juridiction on all cases in law and in equity | 3 | 1 |
| D} | **Florida Rules of Judicial Admnistration 2.160**<br>Requiring determination of legal sufficiency to Recuse | 4 | 1 |
| E} | **Fed.R.Civ.Pro. 19**<br>Prohibiting the court from proceeding without indispensible parties | 6 | 3 |
| F} | **Fed.Rule Civ.Proc. 12(h)(3)**<br>Where the trial court lacking jurisdiction shall have dismissed the action. | 6 | 4 |
| G} | **Rule FS 90.201 Judicial Notice, on statutory Laws and the Stare Decisis**<br>Suppressing the Kaufman, Supra Equittable Estoppel | 9 | 4 |
| H} | **FS 718.112(2)(d)(4)(c)**<br>Disregarding this afforded Laches because it voids the elections claims. | 10 | 5 |
| I} | **Fed. R.Civ.Pro 62(c)**<br>Regarding Stay on Receivership under the discretion of this Federal Court. | 10 | 5 |
| J} | **Strategic Lawsuits Against Public Participation FS 718.1224**<br>SLAPP -  Protected under the U.S. 1st Amendment | 11 | 5 |
| K} | **42 U.S.C. §1983 and §1985.**<br>Over the judcial conspiracy depriving of Constitutional Rights | 11 | 7 |
| L} | **Fed.Rule 12(b)(4),(5),(6) & (7)**<br>For impeding these defenses at immediately granting a receivership. | 12 | 7 |
| M} | **Florida Statute 90.501**<br>Excempting privilege to conceal any material fact in court. | 12 | 7 |
| N} | **FS 718.1255** |  |  |

Affording only the DBPR with jurisdiction over the Enterprise claims.     14     8

O} **FS 714 The Receivership Act**
Addressing pre-requirements and prohibitions of application.     14     8

P} **FS 718.111(7) "718.114,**
Specifying the Association is limited to convey real property per bylaws.     14     10

Q} **FS 718.116(g)(3)**
Specifying how payments received must be applied. Inconsistent with order     15     11

R} **42 USC §1985(2)**
Finding ANY two or more persons, regardless of titles, accountable.     18     11

S} **Fed.R.Civ.Pro. 55**
Entering default on the pleadings the opposing party failed to respond.     18     12

T} **Fed.R.App 9.130(3)(D)**
Federal Court with authority to terminate a receivership.     19     12

U} **28 USC § 2106**
On the Federal Court Broad Authority to vacate the Receivership     19     12

W} **5 U.S. Code § 706**
Interpret Constitutional and statutory provision and determine Agency action.     13

## A} <u>**Fla. R. Civ. P. 1.620 -- RECEIVER**</u>

1.620(a) Notice. The provisions of rule 1.610 as to notice shall apply to applications for the appointment of receivers.

## B} <u>**Fla. R. Civ. P. 1.610-- INJUNCTIONS**</u>

(1) A temporary injunction **may be granted without written or oral notice** to the adverse party **only if:** (

A) it appears **from the specific facts shown** by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

(2) No evidence other than the affidavit or verified pleading shall be used to support the application for a temporary injunction unless the adverse party appears at the hearing or has received reasonable notice of the hearing.

Every temporary injunction **granted without notice** shall be endorsed with the date and hour of entry and shall be filed forthwith in the clerk's office and **shall define the injury, state findings by the court why the injury may be irreparable and give the reasons why the order was granted without notice if notice was not given.**

## <u>**Rule 1.610 (2)(C) Scope**</u> "shall be binding on the parties to the action, **and on those persons in active concert or participation with them** <u>**who receive actual notice**</u> of the injunction."

## C} <u>**U.S. Constitution  Article  III §2**</u>

The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;

## D} <u>**Rule 2.160. Florida Rules of Judicial Admnistration**</u>
## <u>**FOR Disqualification Of Trial Judges**</u>

PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

**[amendements affecting Judge Carlos Guzman are under Rule 1.180 ]**
(a) Application. This rule applies only to county and circuit judges in all matters in all divisions of court.  (b) Parties. Any party, including the state, may move to disqualify the trial judge assigned to the case on grounds provided by rule, by statute, or by the Code of Judicial Conduct.

(c) Motion. A motion to disqualify shall:

(1) be in writing and ; (2) specifically allege specifically the facts and reasons relied on to show upon which the movant relies as the grounds for disqualification; and

(3) shall be sworn to by the party by signing the motion under oath or by a separate affidavit.

The attorney for the party shall also separately certify that the motion and the client's statements are made in good faith. In addition to filing with the clerk, the movant shall immediately send serve a copy of the motion to the subject judge as set forth in

### Florida Rule of Civil Procedure 1.080

(d) Grounds. A motion to disqualify shall show:

(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or

(e) Time. A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. **Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record, provided that it is also promptly reduced to writing in compliance with subdivision (c), and promptly filed. <u>A motion made during a hearing or trial shall be ruled on immediately.</u>**

(f) Determination — Initial Motion. The judge against whom an initial motion to disqualify under subdivision **(d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally**

2

**insufficient, an order denying the motion shall immediately be entered**. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.

(i) Judge's Initiative. Nothing in this rule limits the judge's authority to enter an order of disqualification on the judge's own initiative.

**(j) Time for Determination. The judge shall rule on a motion to disqualify immediately, but no later than 30 days after the service of the motion** as set forth in subdivision **(c). If not ruled on within 30 days of service, the motion shall be deemed granted and the moving party may seek an order from the court directing the clerk to reassign the case.**

## E} Rule 19. Required Joinder of Parties

(a) Persons Required to Be Joined if Feasible.

(1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order*. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) *Venue*. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. **The factors for the court to consider include:**

3

(1) the extent to which **a judgment rendered in the person's absence might prejudice that person or the existing parties;**

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; **[limiting it to only the named Defendant ]** or

(C) other measures; **[available in equity and in law that are less oppressive]**

**(3) whether a judgment rendered in the person's absence <u>would be adequate</u>; [ NOT AT ALL ] and**

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

(d) Exception for Class Actions. This rule is subject to Rule 23.


# F} <u>Fed.Rule Civ.Pro. 12(h)(3)</u>

(3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, **the court must dismiss the action**.


# G} <u>FS 90.201   Matters which must be judicially noticed</u>.

A court shall take judicial notice of:

**(1)   Decisional, constitutional, and public statutory law and resolutions of the Florida Legislature and the Congress of the United States.**

(2)   Florida rules of court that have statewide application, its own rules, and the rules of United States courts adopted by the United States Supreme Court.

4

(3)   Rules of court of the United States Supreme Court and of the United States Courts of Appeal.

## H} <u>FS 718.112(2)(d)(4)(c)</u>

c.   Any challenge to the election process must be commenced within 60 days after the election results are announced.

## I} <u>Fed. R.Civ.Pro 62(c)</u>

(a) Automatic Stay. Except as provided in Rule 62(c) and (d)...
(c) Stay of an Injunction, Receivership, or Patent Accounting Order. Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:
(1) an interlocutory or final judgment in an action for an injunction or receivership;

## J} <u>718.1224   Prohibition against SLAPP suits</u>,

**(1)   It is the intent of the Legislature to protect the right of condominium unit owners to exercise their rights to instruct their representatives and petition for redress of grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.** The Legislature recognizes that strategic lawsuits against public participation, or "SLAPP suits," as they are typically referred to, have occurred when association members are sued by individuals, business entities, or governmental entities arising out of a condominium unit owner's appearance and presentation before a governmental entity on matters related to the condominium association. However, it is the **public policy of this state that governmental entities,** business organizations, and individuals **not engage in SLAPP suits, because such actions are inconsistent with the right of condominium unit owners to participate in the state's institutions of government.** Therefore, the Legislature finds and declares that prohibiting such lawsuits by governmental entities, business entities, and individuals against condominium unit owners who address matters concerning their condominium association will preserve this fundamental state policy, preserve the constitutional rights of condominium unit owners, and ensure the continuation of representative government in this state. It is the intent of

5

the Legislature that such lawsuits be expeditiously disposed of by the courts. As used in this subsection, **the term "governmental entity" means the state, including the executive, legislative, and judicial branches of government; the independent establishments of the state, counties, municipalities, districts, authorities, boards, or commissions; or any agencies of these branches that are subject to chapter 286.**

(2)    **A governmental entity**, business organization, or individual **in this state may not file or cause to be filed through its employees or agents any lawsuit, cause of action, claim, cross-claim, or counterclaim against a condominium unit owner without merit and solely because such condominium unit owner has exercised the right to instruct his or her representatives or the right to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.**

(3)    A condominium unit owner sued by a governmental entity, business organization, or individual in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section. A condominium unit owner may petition the court for an order dismissing the action or granting final judgment in favor of that condominium unit owner. The petitioner may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the governmental entity's, business organization's, or individual's lawsuit has been brought in violation of this section. The governmental entity, business organization, or individual shall thereafter file its response and any supplemental affidavits. As soon as practicable, the court shall set a hearing on the petitioner's motion, which shall be held at the earliest possible time after the filing of the governmental entity's, business organization's, or individual's response. The court may award the condominium unit owner sued by the governmental entity, business organization, or individual actual damages arising from the governmental entity's, individual's, or business organization's violation of this section. A court may treble the damages awarded to a prevailing condominium unit owner and shall state the basis for the treble damages award in its judgment. The court shall award the prevailing party reasonable attorney's fees and costs incurred in connection with a claim that an action was filed in violation of this section.

(4)    **Condominium associations may not expend association funds in prosecuting a SLAPP suit against a condominium unit owner.**

## K} <u>42 U.S.C. § 1983</u>

<u>**Every person who, under color of any statute, ordinance, regulation, custom, or usage,**</u> of any State or Territory or the District of Columbia, **subjects, or causes to be subjected, any citizen of the United States or other person** within the jurisdiction thereof **to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,** shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted **unless a declaratory decree was violated or declaratory relief was unavailable [by the trial court judge prejudicial determination].**

## L} <u>Fed.Rule 12(b)(4),(5),(6) & (7)</u>

(b) "a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19."

**[UNLESS the trial judge swindles a receivership tabling all these defenses indefinitely.]**

## M} <u>FS 90.501 Privileges recognized only as provided</u>

.Except as otherwise provided by this chapter, any other statute, or the Constitution of the United States or of the State of Florida, **no person in a legal proceeding has a privilege to:** (1) Refuse to be a witness. **(2) Refuse to disclose any matter. (3) Refuse to produce any object or writing.**

## N} <u>718.1255   Alternative dispute resolution;</u>
**voluntary mediation; mandatory nonbinding arbitration; legislative findings.—**

(1)   DEFINITIONS.—As used in this section, the term "dispute" means any disagreement between two or more parties that involves:

**(a)   The authority of the board of directors**, under this chapter or association document to:          [ where a declaratory relief would have sufficed this]

**1.   Require any owner to take any action, or not to take any action, involving that owner's unit or the appurtenances thereto.**

2.   Alter or add to a common area or element.

**(b)   The failure of a governing body,** when required by this chapter or an association document, to:          [ identical to the claims made in the original claim]

**1.   Properly conduct elections.**

**2.   Give adequate notice of meetings or other actions.**

3.   Properly conduct meetings.

**4.   Allow inspection of books and records.**

**[Katzman Chandler condominium association attorney discards this, but ONLY when he intends to defraud the court]**


## O} <u>FS 714. RECEIVERSHIP ACT</u>

**714.04   Scope; exclusions.**
**(2)   This chapter does not apply to:**
(c)   Real property improved by one or two dwelling units which includes the homestead of an individual owner or an affiliate of an individual owner;
(d)   Property of an individual exempt from forced sale, execution, or seizure under the laws of this state; or

(e)   Personal property of an individual which is used primarily for personal, family, or household purposes.

**714.14   Stay; injunction.**

(1)    Except as otherwise provided in subsection (5), after notice and opportunity for a hearing,

(3)    If the court grants injunctive relief, the injunction **must specify the reasons for entry and must describe in reasonable detail the act or acts restrained <u>without reference to a pleading or other document</u>**.

[congruent with Fla.R.Civ.Pro 1610 and 1.620]

The injunction **is binding on the parties to the action**; on the parties' officers, agents, servants, employees, and attorneys; **and on any person <u>who receives actual notice</u> of the injunction and is in active concert or participation with the parties.**

**(4)    A person whose act, action, or proceeding is stayed or enjoined under this section, or who is otherwise adversely affected by such stay or injunction, may apply to the court for relief from the stay or injunction. If a person moves for such relief, the motion must be heard within 5 days after the movant applies** for a hearing on the motion or at such time as the court determines is reasonable and appropriate under the circumstances after the movant applies for a hearing on the motion. After notice and a hearing, the court may grant relief for cause shown.

**(6)    The court <u>may void an act that violates a stay or injunction</u> under this section.**

## FS 714.06    Appointment of Receiver.

(1)    The court may appoint a receiver:

(a)    Before judgment, to protect a party that demonstrates an apparent right, title, or interest in real property that is the subject of the action, if the property or its revenue-producing potential:

1.    Is being subjected to or is in danger of waste, loss, substantial diminution in value, dissipation, or impairment; or

2.    Has been or is about to be the subject of a voidable transaction;

(b)    After judgment:

1.    To carry the judgment into effect; or

2.    To preserve nonexempt real property pending appeal or when an execution has been returned unsatisfied and the owner refuses to apply the property in satisfaction of the judgment;

(c)   In an action in which a receiver for real property may be appointed on equitable grounds, subject to the requirements of paragraphs (a) and (b); or

(d)   During the time allowed for redemption, to preserve real property sold in an execution or foreclosure sale and secure its rents to the person entitled to the rents.

(2)   In connection with the foreclosure or other enforcement of a mortgage, the court shall consider the following facts and circumstances, together with any other relevant facts, in deciding whether to appoint a receiver for the mortgaged property:

(a)   Appointment is necessary to protect the property from waste, loss, substantial diminution in value, transfer, dissipation, or impairment;

(b)   The mortgagor agreed in a signed record to the appointment of a receiver on default;

(c)   The owner agreed, after default and in a signed record, to appointment of a receiver;

(d)   The property and any other collateral held by the mortgagee are not sufficient to satisfy the secured obligation;

(e)   The owner fails to turn over to the mortgagee proceeds or rents the mortgagee was entitled to collect; or

(f)   The holder of a subordinate lien obtains appointment of a receiver for the property.

**714.07   Disqualification from appointment as receiver; disclosure of interest.**

(1)   The court may not appoint a person as receiver unless the person submits to the court a statement under penalty of perjury that the person is not disqualified.

(2)   Except as otherwise provided in subsection (3), a person is disqualified from appointment as receiver if the person:

(a)   Is an affiliate of a party;

**(b)   Has an interest materially adverse to an interest of a party;**

**[see Docket opposing every pleading and motion for discovery]**


**P} FS 718.114 Receivership Is Only Available Under:**

**718.1124   Failure to fill vacancies on board of administration sufficient to constitute a quorum**; appointment of receiver upon petition of unit owner.—

(1)   If an association fails to fill vacancies on the board of administration sufficient to constitute a quorum in accordance with the bylaws, any unit owner may give notice of his or her intent to apply to the circuit court within whose jurisdiction the condominium lies for the appointment of a receiver to manage the affairs of the association. The form of the notice shall be as follows:

**(2)   The notice required by subsection (1) must be provided by the unit owner to the association by certified mail or personal delivery, must be posted in a conspicuous place on the condominium property, and must be provided by the unit owner to every other unit owner of the association by certified mail or personal delivery. <u>The notice must be posted and mailed or delivered at least 30 days prior to the filing of a petition seeking receivership</u>.** Notice by mail to a unit owner shall be sent to the address used by the county property appraiser for notice to the unit owner, except that where a unit owner's address is not publicly available the notice shall be mailed to the unit.

(3)   If the association fails to fill the vacancies within 30 days after the notice required by subsection (1) is posted and mailed or delivered, the unit owner may proceed with the petition.

(4)   If a receiver is appointed, all unit owners shall be given written notice of such appointment as provided in s. 718.127.

## Q} <u>FS718.116  Special Assessments</u> -

(10)**The specific purpose or purposes of any special assessment, including any contingent special assessment levied** in conjunction with the purchase of an insurance policy authorized by s. 718.111(11), **approved in accordance with the condominium documents shall be set forth in a written notice of such assessment sent or delivered to each unit owner.** The funds collected pursuant to a special assessment shall be used only for the specific purpose or purposes set forth in such notice.

## R} <u>42 U.S.C. § 1985(3). Conspiracy to Interfere with Civil Rights</u>

☑ "If two or more persons...for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…"

☑ "[o]r cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property or deprived of having and exercising any right of privilege of a citizen of the United States,"

☑ "The party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against ANY ONE or more of the Conspirators."

## S} Rule 55. Default; Default Judgment

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought **has failed to plead or otherwise defend,** and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of **default for good cause**, and it may set aside a final default **judgment under Rule 60**(b).

## T} Fed.R.App 9.130(3)(D)

(a) (1) This rule applies to appeals to the district courts of appeal of the nonfinal orders authorized herein and to appeals to the circuit court of nonfinal orders when provided by general law. Review of other nonfinal orders in such courts and nonfinal administrative action shall be by the method prescribed by rule 9.100.

**(C) determine:**

**(i) the jurisdiction of the person;**

**(ii) the right to immediate possession of the property,** including but not limited to orders that grant, modify, **dissolve,** or refuse to grant, modify, or dissolve writs of replevin, garnishment, or attachment;

**(D) grant or deny the appointment of a receiver, or terminate or refuse to terminate a receivership;**

## U} 28 U.S. Code § 2106 - Determination

The Supreme Court **or any other court of appellate jurisdiction may** affirm, modify, **vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review**, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.


## W}   <u>5 U.S. Code § 706:</u>

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

☑ (1)compel agency action unlawfully withheld or unreasonably delayed; and
(2)hold unlawful and set aside agency action, findings, and conclusions found to be—

☑ (A)arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

☑ (B)contrary to constitutional right, power, privilege, or immunity;

☑ (C)in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

☑ (D)without observance of procedure required by law;

☑ (F)unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

13